RANSOM, GILBERTSON, MARTIN &
RATLIFF, LLP
Jeffrey S. Ratliff
5441 S Macadam Ave, Suite 301
Portland, OR 97239
T: 503-226-3664

*[Proposed] Liaison Counsel for Lead Plaintiff and Class*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| CODY WILHITE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPENSIFY, INC., DAVID BARRETT, RYAN SCHAFFER, BLAKE BARTLETT, and ROBERT LENT,<br><br>Defendants. | CASE No.: 3:23-cv-01784-JR<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF LAW OF ANGEL CIFUENTES MORALES IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS**<br><br>**ORAL ARGUMENT REQUESTED** |

Lead Plaintiff Movant Angel Cifuentes Morales ("Morales" or "Movant") respectfully submits this opposition to the competing lead plaintiff motions. Dkt. Nos. 12 and 14.

Morales, as explained in his opening brief, has an educational background in Business Management and has been investing for over ten years. (Dkt. No. 10, at 8). Morales lost $8,767.46 in connection with his purchases of Expensify common stock. *Id.* at 6.

Two movants claim a larger financial interest than Morales:

- Aleem Kanji ($24,580 in losses) ("Kanji")—an individual investor who is inadequate.

- Rob Rosenfeld ($16,231 in losses) ("Rosenfeld")—an individual investor who is atypical and subject to unique defenses.

However, none of the competing movants have made the initial showing of Rule 23 adequacy and typicality required to trigger the most adequate plaintiff presumption under the PSLRA. 15 U.S.C. § 77z-1(a)(3)(B)(iii). It is critical to note that courts determining the most adequate lead plaintiff do not merely perform a rote mathematical calculation of comparing alleged losses. Numerical loss is only the first step in the process. *See In re Mersho*, 6 F.4th 891, 896 (9th Cir. 2021) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)-(cc)). The second step is analyzing a proposed lead plaintiff's typicality and adequacy under Rule 23. *See Id.* (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)).

## ARGUMENT

## I. KANJI IS INADEQUATE BECAUSE OF EXISTING OR POTENTIAL CONFLICTS WHICH MAY HARM THE CLASS.

Kanji admittedly has the greatest financial loss out of the three movants. However, the presumption in favor of appointing a movant with the greatest financial loss may be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).

The "test for adequacy is whether the presumptive lead plaintiff and its counsel have any conflicts of interest with other class members, and whether they will prosecute the action vigorously on behalf of the class." *Doherty v. Pivotal Software, Inc.*, 2019 WL 5864581 at *7 (Nov. 8, 2019) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)).

In his client declaration, Kanji states that "[f]or the past 4 years I have been self-employed, and a principal of a lobbying firm named Aleem Kanji and Associates." *See* Dkt. No. 13-4. He further states that he lives in Mississauga, Ontario, Canada, which is near Toronto. *See Id.*

A search of "Aleem Kanji" on the city of Toronto's lobbying portal shows that Kanji regularly lobbies in Toronto. *See* https://www.toronto.ca/city-government/accountability-operations-customer-service/accountabili ty-officers/lobbyist-registrar/search-the-registry-register-as-a-lobbyist/search-the-lobbyist-registr y/lobbyist-registry-online-search/.

Toronto's Lobbyist Code of Conduct § 140-44(A) states that "[l]obbyists shall not represent conflicting or competing interests without the written consent of those whose interests are involved." Further, Code of Conduct § 140-44(B) states that "[l]obbyists shall advise public office holders that they have informed their clients of any actual, potential or apparent conflict of

interest and obtained the informed consent of each client concerned before proceeding or continuing with the undertaking." https://secure.toronto.ca/LobbyistRegistrySystemWeb/codeOfConduct.htm.

Kanji did not address any existing or potential conflicts as a result of his lobbying work in his declaration, or whether he has received written consent regarding any affected parties. In addition, it is plausible that Kanji may face a conflict over the course of this litigation which would impact his ability to adequately serve the class's interests. Even if he does not currently have a potential conflict between representing the putative class in this action and any of his lobbying activities, he may face a conflict at a later stage of the litigation. The average securities class action takes over three years between the filing of the case and settlement. *See* Laarni T. Bulan & Laura E. Simmons, Securities Class Action Settlements, 2022 Review and Analysis, page 13. Cornerstone Research. https://securities.stanford.edu/research-reports/1996-2022/Securities-Class-Action-Settlements-2 022-Review-and-Analysis.pdf

## II. ROSENFELD IS ATYPICAL AND SUBJECT TO UNIQUE DEFENSES.

The movant with the next largest monetary loss is Rosenfeld. Rosenfeld's motion should be denied on the basis of atypicality and the unique defenses he faces. The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. See *Doherty, 2019 WL 5864581, at *7* (N.D. Cal. Nov. 8, 2019) (citing *Hanon v. Dataproducts Corp., 976 F.2d 497, 508* (9th Cir. 1992)).

While Rosenfeld has a greater financial loss than Morales, he is subject to unique defenses which render him atypical, and as a result, he likely lacks standing.

Rosenfeld is subject to a unique reliance defense, as well as a unique defense regarding his tracing his Expensify shares to the IPO. Indeed, the presumption in favor of appointing a movant with the greatest financial loss may be rebutted by proof that the presumptively most adequate plaintiff "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(bb). *See also Doherty, 2019 WL 5864581, at *7* (N.D. Cal. Nov. 8, 2019) (the "presumptive lead plaintiff may be atypical if it is subject to 'unique defenses which threaten to become the focus of the litigation.'") (internal citations omitted).

The complaint was filed on "behalf of all those who purchased or otherwise acquired Expensify common stock pursuant and/or traceable to the Offering Documents [comprised of the registration statement and accompanying prospectus] issued in connection with the Company's initial public offering conducted on or about November 11, 2021[.]" Dkt. No. 1, at 2.

Rosenfeld did not purchase Expensify common stock until August 1, 2023, more than *twenty months* after Expensify's IPO. *See* Dkt. No. 15-1. Because of the timing of his trades, Rosenfeld is subject to the unique reliance and tracing defenses.

According to <u>15 U.S.C.A. § 77k(a) (Securities Act § 11)</u>, "[i]f such person acquired the *security after the issuer has made generally available* to its security holders an earning statement *covering a period of at least twelve months* beginning after the effective date of the registration statement, then the right of recovery under this subsection *shall be conditioned on proof that such person acquired the security relying upon such untrue statement in the registration statement or relying upon the registration statement and not knowing of such omission*, but such reliance may be established without proof of the reading of the registration statement by such person." (Emphasis added).

Prior to Rosenfeld's purchases of Expensify common stock, Expensify filed an annual report on Form 10-K on March 8, 2023 for the year ending December 31, 2022 (the "2022 Annual Report"), which contained various financial statements, including an earning statement, covering twelve months after the registration statement's effective date. *See* https://www.sec.gov/Archives/edgar/data/1476840/000147684023000032/exfy-20221231.htm. The Registration Statement was declared effective on November 9, 2021, over twelve months prior to the 2022 Annual Report's filing.

Courts dismiss claims where, as here, the plaintiff bought the security at issue over twelve months after its issuance. "[D]efendants correctly note that plaintiffs cannot assert claims under § 11 of the Securities Act based on purchases after May 15, 2015 of the Notes initially offered on March 10, 2014 (the "2014 Notes"). Petrobras filed Forms 20–F and 6–K on May 15, 2015, covering the twelve-month period following the effective date of the 2014 Notes' offering. [. . .] A plaintiff bringing a § 11 claim must prove reliance on a misrepresentation in a registration statement if the plaintiff 'acquired the security after the issuer has made generally available to its security holders an earning statement covering a period of at least twelve months beginning after the effective date of the registration statement." *In re Petrobras Securities*

*Litigation*, 150 F.Supp.3d 337, 344 (S.D.N.Y. 2015) (citing 15 U.S.C. § 77k and dismissing Section 11 claims based on purchases made a year after the registration statement at issue).

Rosenfeld also faces a unique defense in that he cannot trace his shares to the IPO registration statement as required by Section 11. "To prove a violation of Section 11, a plaintiff must show that the securities it purchased were issued under the statement-i.e., that its securities can be traced to that statement." *Doherty v. Pivotal Software, Inc.*, 2019 WL 5864581 at *8 (N.D. Cal. Nov. 8, 2019) (internal citation omitted). It is Rosenfeld's burden to show that he purchased pursuant to the IPO. *See In re Lendingclub Securities Litigation*, 282 F.Supp.3d 1171, 1179 ("The burden of tracing shares to a particular public offering rests with the plaintiffs") (internal citation omitted).

After the IPO, the Company's directors and officers were subject to lock-up agreements that restricted their ability to transfer or sell their shares of capital stock for 180 days from the date of the November 12, 2021 prospectus. The 180-day lock-up period ended in May 2022, over a year before Rosenfeld's purchases.

As detailed in the Prospectus issued in connection with the IPO, "subject to certain limitations, approximately 64,739,010 shares of Class A common stock will become eligible for sale upon expiration of the 180-day lock-up period, or earlier, subject to earlier termination as described above. J.P. Morgan Securities LLC may, in their sole discretion, permit our stockholders who are subject to these lock-up agreements to sell shares prior to the expiration of the lock-up agreements." See Prospectus, at 60. https://www.sec.gov/Archives/edgar/data/1476840/000162828021022947/expensify424b4.htm.

As a result, once the 180-day lock-up period ended, additional Expensify shares entered the market which were not traceable to the IPO. Rosenfeld bought his shares over a year after the lock-up expired. Thus, Rosenfeld is subject to unique standing and tracing defenses.

In *Sundaram v. Freshworks Inc.*, 2023 WL 1819158 at *5 (N.D. Cal. Feb. 8, 2023), the court considered a lead plaintiff motion where the movant had, like Rosenfeld, purchased the securities at issue only after the lock-up period ended. The court explained that for a movant to show that his "shares are traceable to the registration statement at issue, the court requires a 'greater level of factual specificity' that his shares are traceable to the IPO and to confer statutory standing." *Id.* (internal citations omitted). Because the movant had not done so, the court appointed a competing movant as lead plaintiff. *Id.*

Independent of the unique reliance defense, as discussed earlier, Rosenfeld has provided no detail or analysis showing that his Expensify common stock can be traced to the IPO. *See generally* Dkt. No. 14, at 6-10. As such, as in *Sundaram*, his lead plaintiff motion should be denied.

## III. MORALES SHOULD BE APPOINTED LEAD PLAINTIFF AND THE COMPETING MOTIONS SHOULD BE DENIED

Morales should be appointed as lead plaintiff due to the unique issues facing the two competing movants, which could harm the class. Unlike Kanji, Morales' work will not create a conflict that might impede his ability to adequately represent the class. Morales works as a customer service manager. Dkt. No. 10, at 7. Unlike Kanji, he is not subject to ethical guidelines that could create a conflict between him and the class.

Unlike Rosenfeld, Morales is not subject to unique reliance and tracing defenses. Morales bought his expensify stock on November 11, 2021, February 1, 2022, and on March 31, 2022. Dkt. No. 10-3. Because he bought the majority of his position on November 11, 2021, the day of the IPO, there is no doubt whatsoever that he can trace his shares to the IPO. Further, his other shares were purchased before the 180-day lock-up period ended. *See Id.*

In addition, Morales lost $8,767.45 in connection with his purchases of Expensify stock, and is thus highly motivated to pursue claims in this litigation. *See* Dkt. No. 10 at 6, 8. Accordingly, Morales should be appointed lead plaintiff.

## IV. MORALES' CHOICE OF COUNSEL SHOULD BE APPROVED.

The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to approval by the Court. *See* 15 U.S.C. § 77z-4(a)(3)(B)(v); *Doherty v. Pivotal Software, Inc.*, 2019 WL 5864581 at *12 (N.D. Cal. Nov. 8, 2019) ("While the appointment of counsel is made subject to the approval of the court, the lead plaintiff gets to select counsel for the class.") (citing *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002)).

Here, Morales has selected The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel. Rosen Law has the resources and expertise to litigate this action efficiently and aggressively. As the firm's resume reflects, it is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. Dkt. No. 10-4. Indeed, Rosen Law is one of the preeminent securities class action law firms in the country. Rosen Law has served as sole and co-lead

counsel in numerous cases around the country has recovered hundreds of millions of dollars for investors. *Id.*

Thus, the Court may be assured that by approving Movant's selection of counsel, the members of the class will receive excellent legal representation.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court issue an Order: (1) appointing Movant as Lead Plaintiff of the Class; (2) approving Movant's selection of Rosen as Lead Counsel and RGMR as Liaison counsel; and (3) granting such other relief as the Court may deem to be just and proper.

Dated: February 12, 2024                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff*
*and Class*

RANSOM, GILBERTSON, MARTIN & RATLIFF, LLP
*/s/*
Jeffrey S. Ratliff
5441 S Macadam Ave, Suite 301
Portland, OR 97239
T: 503-226-3664

*[Proposed] Liaison Counsel for Lead Plaintiff*
*And Class*

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Phillip Kim