FOSTER GARVEY PC
Eryn Karpinski Hoerster, OSB #106126
121 SW Morrison Street, Eleventh Floor
Portland, Oregon 97204-3141
Telephone: +1.503.228.3939
Facsimile:  +1.503. 226.0259
*eryn.hoerster@foster.com*

LATHAM & WATKINS LLP
Matthew Rawlinson (*pro hac vice*)
Melanie M. Blunschi (*pro hac vice*)
Daniel R. Gherardi (*pro hac vice*)
140 Scott Drive
Menlo Park, California 94025
Telephone:  +1.650.328.4600
Facsimile:  +1.650.463.2600
*matt.rawlinson@lw.com*
*melanie.blunschi@lw.com*
*daniel.gherardi@lw.com*

*Attorneys for Defendants Expensify, Inc., David
Barrett, Ryan Schaffer, Blake Bartlett, Robert Lent,
Anu Muralidharan, Jason Mills, Daniel Vidal,
Timothy L. Christen, Ying (Vivian) Liu, and Ellen Pao*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| CODY WILHITE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPENSIFY, INC., DAVID BARRETT, RYAN SCHAFFER, BLAKE BARTLETT, ROBERT LENT, ANU MURALIDHARAN, JASON MILLS, DANIEL VIDAL, TIMOTHY L. CHRISTEN, YING (VIVIAN) LIU, ELLEN PAO, J.P. MORGAN SECURITIES, LLC, CITIGROUP GLOBAL MARKETS INC., BofA SECURITIES, INC., PIPER SANDLER & CO., JMP SECURITIES LLC, and LOOP CAPITAL MARKETS LLC,<br>Defendants. | Case No. 3:23-cv-01784-JR<br><br>**EXPENSIFY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT AND SUPPORTING MEMORANDUM OF LAW**<br><br>Pursuant to Fed. R. Civ. P. 8, 9(b), and 12(b)(6)<br><br>ORAL ARGUMENT REQUESTED |

**EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED
CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................................1

II.  ARGUMENT........................................................................................................2

    A.   Plaintiff Must Plead His Claims With Particularity................................................2

    B.   Plaintiff Fails To Plead Any False Or Misleading Statement..................................4

        1.   Plaintiff Still Cannot Explain How the Registration Statement's Discussion of the May 2020 Price Increase Was Misleading.......................4

            a.   Expensify Was Not Required to Disclose Exact Price Increase Amounts...............................................................................5

            b.   Plaintiff Still Fails to Plead Any Fact Showing a Material Adverse Impact From the Price Increase at the Time of the IPO. ....................................................................................................6

            c.   Plaintiff Has Not Rehabilitated His Deficient CW Allegations. ...................................................................................10

        2.   Plaintiff Still Alleges No Fact Suggesting The Registration Statement Was Misleading In Connection With The October 2020 Email. .........................................................................................................13

            a.   Plaintiff Fails to Allege a Customer Fallout Caused by the October 2020 Email at the Time of the IPO. ...............................13

            b.   The October 2020 Email and Customer Responses Were Publicly Available and Expensify Was Not Required to Copy the Email's Contents into the Registration Statement.........17

        3.   Plaintiff Still Fails to Allege That Statements About Expensify's Business Model Were False or Misleading. ............................................20

            a.   Plaintiff Pleads No Facts Demonstrating That Expensify Abandoned Its Bottom-Up Business Model at the Time of the IPO. .....................................................................................20

    C.   Regulation S-K Does Not Salvage Plaintiff's Deficient Section 11 Claims. ........21

        1.   Plaintiff Does Not Plead Any Omitted Material Change to Expensify's Business Model at the Time of the IPO................................22

2.      Plaintiff Fails to Plead Any Known But Omitted Risk at the Time of the IPO. ...................................................................................23

3.      Plaintiff Fails to Plead a Known, Material, and Adverse Trend That Existed as of the IPO. .................................................................24

D.      Plaintiff's Claims Fail Because He Has Not Rebutted That Any Purported Losses In 2023 Were Not Caused By The Challenged Statements. .....................27

III.    CONCLUSION.............................................................................................................29

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Air Tech Equip., Ltd. v. Humidity Ventilation Sys., Inc.*,
2006 WL 3193720 (E.D.N.Y. Nov. 2, 2006)................................................................ 5

*Avila v. LifeLock Inc.*,
2017 WL 3669615 (D. Ariz. Aug. 21, 2017)............................................................... 12

*Barilli v. Sky Solar Holdings, Ltd.*,
389 F. Supp. 3d 232 (S.D.N.Y. 2019)......................................................................... 17

*Boston Ret. Sys. v. Uber Techs., Inc.*,
2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) .......................................................... 3, 19

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ........................................................................................ 4

*Brown v. Ambow Educ. Holding Ltd.*,
2014 WL 523166 (C.D. Cal. Feb. 6, 2014)................................................................. 27

*Cai v. Switch, Inc.*,
2019 WL 3065591 (D. Nev. July 12, 2019) ............................................................... 26

*Citiline Holdings, Inc. v. iStar Fin. Inc.*,
701 F. Supp. 2d 506 (S.D.N.Y. 2010)........................................................................... 3

*Conn. Ret. Plans & Tr. Funds v. Amgen Inc.*,
660 F.3d 1170 (9th Cir. 2011), *aff'd*, 568 U.S. 455 (2013) ..................................... 19

*Franchi v. SmileDirectClub, Inc.*,
633 F. Supp. 3d 1046 (M.D. Tenn. 2022).................................................................. 25

*Glazer Capital Management LP v. Forescout Technologies, Inc.*,
63 F.4th 747 (9th Cir. 2023) ...................................................................................... 12

*Haping v. 17 Educ. & Tech. Grp. Inc.*,
2023 WL 8716895 (S.D.N.Y. July 20, 2023) ............................................................. 18

*Hawaii Structural Ironworkers Pension Trust Fund v. AMC Entertainment
Holdings, Inc.*,
422 F. Supp. 3d 821 (S.D.N.Y. 2019)......................................................................... 23

*Hoang v. ContextLogic, Inc.*,
2023 WL 8879263 (N.D. Cal. Dec. 22, 2023)............................................................. 3

*Hoang v. ContextLogic, Inc.*,
    2024 WL 4471316 (N.D. Cal. Aug. 22, 2024) ................................................................ 27, 28

*In re Amgen Securities Litigation*,
    2014 WL 12585809 (C.D. Cal. Aug. 4, 2014) ...................................................................... 19

*In re CarLotz, Inc. Securities Litigation*,
    2024 WL 1348749 (S.D.N.Y. Mar. 29, 2024) ...................................................................... 23

*In re China Intelligent Lighting & Elec., Inc. Sec. Litig.*,
    2012 WL 12893520 (C.D. Cal. Feb. 16, 2012) ...................................................................... 3

*In re Coty Inc. Sec. Litig.*,
    2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016) ...................................................................... 26

*In re Countrywide Financial Corp. Derivatives Litigation*,
    554 F. Supp. 2d 1044 (C.D. Cal. 2008) ........................................................................ 12, 13

*In re Daou Sys., Inc.*,
    411 F.3d 1006 (9th Cir. 2005) ..................................................................................... 2, 18

*In re Dropbox Sec. Litig.*,
    2020 WL 6161502 (N.D. Cal. Oct. 21, 2020) ........................................................................ 5

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    986 F. Supp. 2d 487 (S.D.N.Y. 2013) ............................................................................ 25, 26

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
    97 F.4th 1171 (9th Cir. 2024) ......................................................................................... 27

*In re Lucid Group, Inc. Securities Litigation*,
    2024 WL 3745605 (N.D. Cal. Aug. 8, 2024) ........................................................................ 8

*In re Lyft Inc. Securities Litigation*,
    484 F. Supp. 3d 758 (N.D. Cal. 2020) ............................................................................... 28

*In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*,
    272 F. Supp. 2d 243 (S.D.N.Y. 2003) ................................................................................. 17

*In re Nektar Therapeutics Sec. Litig.*,
    34 F.4th 828 (9th Cir. 2022) ........................................................................................... 16

*In re Netflix, Inc. Sec. Litig.*,
    2005 WL 1562858 (N.D. Cal. June 28, 2005) ...................................................................... 15

*In re Orange 21 Inc. Sec. Litig.*,
    2006 WL 8455352 (S.D. Cal. Mar. 30, 2006) ........................................................................ 3

*In re Pivotal Sec. Litig.*,
   2020 WL 4193384 (N.D. Cal. July 21, 2020).......................................................... 12

*In re Plantronics, Inc. Sec. Litig.*,
   2022 WL 3653333 (N.D. Cal. Aug. 17, 2022) ........................................................ 9

*In re Restoration Robotics, Inc. Sec. Litig.*,
   417 F. Supp. 3d 1242 (N.D. Cal. 2019) ........................................................... 25, 26

*In re Rigel Pharm., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) ................................................................................. 2

*In re Shoretel Inc. Sec. Litig.*,
   2009 WL 248326 (N.D. Cal. Feb. 2, 2009) ...................................................... 27, 28

*In re The Honest Co. Securities Litigation*,
   615 F. Supp. 3d 1149 56 (C.D. Cal. 2022) ......................................................... 8, 9

*In re Van Wagoner Funds, Inc. Sec. Litig.*,
   382 F. Supp. 2d 1173 (N.D. Cal. 2004) ............................................................... 17

*In re Violin Memory Sec. Litig.*,
   2014 WL 5525946 (N.D. Cal. Oct. 31, 2014)......................................................... 3

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ......................................................................... 3, 5, 6

*Lau v. Opera Ltd.*,
   527 F. Supp. 3d 537 (S.D.N.Y. 2021)................................................................... 23

*LexinFintech Holdings Ltd. Sec. Litig.*,
   2021 WL 5530949 (D. Or. Nov. 24, 2021)..................................................... passim

*Long Miao v. Fanhua, Inc.*,
   442 F. Supp. 3d 774 (S.D.N.Y. 2020).................................................................. 14

*Luong v. Subaru of America, Inc.*,
   2018 WL 2047646 (N.D. Cal. May 2, 2018)........................................................ 12

*McCalden v. Cal. Libr. Ass'n*,
   955 F.2d 1214 (9th Cir. 1990) ............................................................................. 27

*Miller v. Thane International, Inc.*,
   519 F.3d 879 (9th Cir. 2008) ............................................................................... 18

*Milman v. Box Hill Sys. Corp.*,
   72 F. Supp. 2d 220 (S.D.N.Y. 1999).................................................................... 25

*Murphy v. Precision Castparts Corp.*,
   2017 WL 3084274 (D. Or. June 27, 2017) ............................................................................ 9

*Oklahoma Police Pension & Retirement System v. LifeLock, Inc.*,
   780 F. App'x 480 (9th Cir. 2019) ........................................................................................ 12

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
   681 F.3d 114 (2d Cir. 2012) ................................................................................................ 25

*Pirani v. Slack Tech., Inc.*,
   445 F. Supp. 3d 367 (N.D. Cal. 2020), *vacated and remanded sub nom. Slack
   Techs., LLC v. Pirani*, 598 U.S. 759 (2023) ...................................................................... 26

*Provenz v. Miller*,
   102 F.3d 1478 (9th Cir. 1996) ............................................................................................. 19

*Redwen v. Sino Clean Energy, Inc.*,
   2012 WL 1991762 (C.D. Cal. June 4, 2012) ......................................................................... 3

*Rieckborn v. Jefferies LLC*,
   81 F. Supp. 3d 902 (N.D. Cal. 2015) ..................................................................................... 9

*Robb v. Fitbit Inc.*,
   216 F. Supp. 3d 1017 (N.D. Cal. 2016) ............................................................................... 12

*Rubenstein v. Credit Suisse Grp. AG*,
   457 F. Supp. 3d 289 (S.D.N.Y. 2020) .................................................................................. 26

*Rubke v. Capitol Bancorp Ltd.*,
   551 F.3d 1156 (9th Cir. 2009) .................................................................................. 6, 18, 19

*Rubke v. Capitol Bancorp*,
   2006 WL 1699569 (N.D. Cal. June 16, 2006) ..................................................................... 17

*Schuh v. HCA Holdings, Inc.*,
   947 F. Supp. 2d 882 (M.D. Tenn. 2013) .............................................................................. 25

*Schulein v. Petroleum Development Corp.*,
   2012 WL 12884851 (C.D. Cal. June 25, 2012) .............................................................. 18, 19

*Sgarlata v. PayPal Holdings, Inc.*,
   2018 WL 6592771 (N.D. Cal. Dec. 13, 2018) ..................................................................... 19

*Shenwick v. Twitter, Inc.*,
   282 F. Supp. 3d 1115 (N.D. Cal. 2017) ............................................................................... 10

*Stadnick v. Vivint Solar, Inc.*,
   861 F.3d 31 (2d Cir. 2017) ........................................................................................... 18, 19

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998) ................................................................ 24

*Sundaram v. Freshworks*, *Inc.*
  2023 WL 6390622 (N.D. Cal. Sept. 28, 2023) ........................................ 25

*Wallace v. IntraLinks*,
  2013 WL 1907685 (S.D.N.Y. May 8, 2013) ............................................... 3

*Walsh v. Nev. Dep't of Hum. Res.*,
  471 F.3d 1033 (9th Cir. 2006) ................................................................... 7

*Wong v. Arlo Techs., Inc.*,
  2019 WL 7834762 (N.D. Cal. Dec. 19, 2019)........................................... 11

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ................................................... 10, 11, 16

## STATUTES

15 U.S.C. § 78j(b)............................................................................................. 3

**GLOSSARY**

| Term | Definition |
|------|-----------|
| ¶ | Refers to the paragraphs of the Amended Complaint |
| Amended Complaint | Amended Class Action Complaint for Violations of Federal Securities Laws (Dkt. No. 32) |
| CW | Confidential Witness |
| Expensify or the Company | Expensify, Inc. |
| Ex. | Exhibits attached to the Declaration of Daniel R. Gherardi, filed concurrently with Defendants' Motion to Dismiss Plaintiff's Amended Complaint |
| IPO | Expensify's November 2021 initial public offering |
| Motion or Mot. | Expensify Defendants' Motion to Dismiss Plaintiff's Amended Complaint, Dkt. No. 53 |
| Opposition or Opp. | Plaintiff's Opposition to Expensify Defendants' Motion, Dkt. No. 59 |
| Plaintiff | Lead Plaintiff Aleem Kanji |
| Registration Statement | Expensify's registration statement on Form S-1 and prospectus on Form 424(b)(4), both as amended and filed with the SEC in October and November 2021 (Ex. 4) |
| Securities Act | Securities Act of 1933, 15 U.S.C. § 77k *et seq.* |

Page ix –**EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

I.      INTRODUCTION

Plaintiff's Opposition illustrates that Plaintiff has not stated a claim.  Plaintiff's efforts to invoke spurious allegations from anonymous sources and inapposite case law cannot obscure that (a) Plaintiff still identifies no material misstatement or omission and (b) the Amended Complaint and documents it incorporates by reference demonstrate that Plaintiff's alleged losses were not caused by the revelation of any purported misstatement.  Either is grounds for dismissal.

Plaintiff has not pled any actionable misstatement or omission because all of the material facts about the topics that Plaintiff claims were omitted were *disclosed* in the Registration Statement, to the extent those facts existed at the time of the IPO:

- The Registration Statement discussed the May 2020 price increase and warned of the risk the increase could have for customer retention and Expensify's business.  Ex. 4 at 22, 26, 27, 28, 85, 87, 91, 93, 96, 104; ¶¶ 121, 124.

- The Registration Statement disclosed the publicly reported and publicly available October 2020 election email and warned that the email might continue to have an impact on the Company, which supplemented the customer comments Plaintiff copies and pastes from Expensify's public website.  Ex. 4 at 3, 52, 128; ¶¶ 129, 148.

- The Registration Statement described Expensify's bottom-up business model and approach to marketing, as well as the Company's historical and ongoing investment in external marketing activities to support its business model.  Ex. 4 at 34, 84, 88, 96, 97; ¶ 135.

It is now clear that Plaintiff's real grievance is that the Registration Statement did not predict the future impact of these disclosed facts, and this grievance is based entirely on hindsight reliance on announcements made in 2023—two years after the IPO.  But Plaintiff's Securities Act claims can only concern whether the Registration Statement was materially false or misleading *at the time of the IPO*.  Section 11 claims cannot be based on facts and events arising only after the IPO, and Plaintiff makes no factual allegation suggesting any material misrepresentation or omission in the Registration Statement based on facts in existence at the time of the IPO.  Plaintiff pleads no facts suggesting there was *any* undisclosed, adverse impact from Expensify's May 2020 price increase,

Page 1 –    **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

October 2020 election email, or marketing strategy that was known (or even knowable) at the time of the Registration Statement, and Expensify had no obligation under the securities laws to speculate about possible future impacts in these areas.

Independently, Plaintiff's allegations demonstrate that the stock price declines in 2023 that he relies upon for his purported losses are untethered from any challenged statement and instead were attributable to facts that only existed *years after the IPO*. Where it is apparent on the face of the Amended Complaint that Plaintiff's alleged loss was not caused by any challenged statement itself, the Court may grant dismissal on this independent basis as well.

## II.    ARGUMENT

### A.    Plaintiff Must Plead His Claims With Particularity.

Notwithstanding Plaintiff's strained attempts to avoid using the word "fraud," his Section 11 claim is nonetheless "grounded in fraud" such that his allegations must meet the heightened pleading requirements of Rule 9(b)—requirements Plaintiff does not come close to meeting. *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 885-86 (9th Cir. 2012) (affirming application of Rule 9(b) to Section 11 claim that sounded in fraud). Plaintiff's theory depends on allegations of knowing deceit, not simple negligence, triggering Rule 9(b). *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1028 (9th Cir. 2005) (applying Rule 9(b) because Section 11 claim "sound[ed] in fraud" when it "allege[d] myriad misrepresentations made by defendants, of which defendants had full knowledge, which induced plaintiffs' reliance, and which caused plaintiffs damages"). With each category of challenged statement, Plaintiff alleges that Defendants "knew" about it "but did not disclose" it. *See, e.g.*, Opp. at 8; ¶ 140 ("these undisclosed facts were known"); ¶ 153 ("the statement was authorized and/or approved by an executive officer of Expensify who actually knew that such statement was false when made"). Whether Plaintiff chooses to use the word "fraud" does not determine whether Rule 9(b)'s heightened standards apply. *Rigel*, 697 F.3d at 885 ("We

Page 2 –  **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

have held that a plaintiff's nominal efforts to disclaim allegations of fraud with respect to its section 11 claims are unconvincing where the gravamen of the complaint is fraud").[1]

Plaintiff's alternative claim that Rule 9(b) only applies where Section 11 claims accompany claims under Section 10(b) of the Securities Exchange Act of 1934 (Opp. at 28-29) is simply not true, as demonstrated by the many courts that have dismissed Section 11 claims grounded in fraud even when plaintiffs did not plead a Section 10(b) claim. *See, e.g.*, *In re Orange 21 Inc. Sec. Litig.*, 2006 WL 8455352, at *2-3 (S.D. Cal. Mar. 30, 2006) (applying Rule 9(b) to a Section 11 claim without an accompanying Section 10(b) claim); *Redwen v. Sino Clean Energy, Inc.*, 2012 WL 1991762, at *3–4 (C.D. Cal. June 4, 2012) (same); *In re China Intelligent Lighting & Elec., Inc. Sec. Litig.*, 2012 WL 12893520, at *3 (C.D. Cal. Feb. 16, 2012) (same). Plaintiff's allegations come nowhere close to meeting his burden of pleading with particularity that any Defendant made any material and fraudulent misrepresentation or omission in the Registration Statement.

In any event, the Amended Complaint does not even pass muster under Rule 8's more lenient pleading standard either. Plaintiff's claims of material misstatements and omissions are conclusory and unsupported by any allegation of material fact that existed at the time of the IPO. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (courts need not "accept

---

[1] The cases Plaintiff cites (Opp. at 12, 28) to try to evade Rule 9(b) are inapposite. *See Wallace v. IntraLinks*, 2013 WL 1907685, at *12 (S.D.N.Y. May 8, 2013) (declining to apply Rule 9(b) to Section 11 claim based on alleged negligent failure to investigate, not knowing concealment); *Citiline Holdings, Inc. v. iStar Fin. Inc.*, 701 F. Supp. 2d 506, 512-13 (S.D.N.Y. 2010) (declining to apply Rule 9(b) to charges against certain defendants that sounded in negligence, but applying heightened pleading standard to claims against company defendants that sounded in fraud); *In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at *8 (N.D. Cal. Oct. 31, 2014) (declining to apply Rule 9(b) where "there is no allegation that defendants 'knowingly' or 'intentionally' concealed information or made misrepresentations"); *Boston Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *4 (N.D. Cal. Aug. 7, 2020) (declining to apply Rule 9(b) where plaintiff "made an effort to plead a non-fraudulent basis for Section 11 liability"); *Hoang v. ContextLogic, Inc.*, 2023 WL 8879263, at *6 (N.D. Cal. Dec. 22, 2023) (not addressing Rule 9(b) where defendants did not argue that it should apply).

Page 3 –  **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

**B.    Plaintiff Fails To Plead Any False Or Misleading Statement.**

**1.    Plaintiff Still Cannot Explain How the Registration Statement's Discussion of the May 2020 Price Increase Was Misleading.**

Plaintiff argues in his Opposition that Expensify's statements referencing the May 2020 price increase were false or misleading because they did not disclose (1) the exact amount of price increases (Opp. at 12; ¶ 57); and (2) that the price increase had already resulted in a loss of customers before the IPO (Opp. at 4-5, 12-13).  Plaintiff claims that through these omissions, Expensify "portrayed the price increase as a positive" when, in reality, the price increase had "prompted an immediate decline in customers . . . in advance of the IPO."  Opp. at 4, 13.  But Plaintiff still does not—as he must—identify any statement in the Registration Statement that was materially false or misleading *at the time of the IPO*.  Plaintiff ignores that the Registration Statement disclosed the May 2020 price increase (Ex. 4 at 85), explained that customers were being charged either the rates disclosed on its website or negotiated rates (Ex. 4 at 87), disclosed that the price increase was a key driver of increased revenues in the first half of 2021 (Ex. 4 at 91), disclosed that the number of customers and paid members on its platform declined in the second quarter of 2020 (Ex. 4 at 85), and expressly warned that the price increase might have adverse effects that were unknown at the time of the IPO (*id.* at 27).  *See* Mot. at 11-12.  In light of these disclosures, Plaintiff still fails to plead that the omission of the exact dollar amount of the price increase "create[d] an impression of a state of affairs that differs in a material way from the one that actually exist[ed]" at the time of the IPO.  *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).  And Plaintiff still offers no factual allegation to support his conclusory

Page 4 –   **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

assertion that the May 2020 price increase caused even a single customer to leave Expensify at the time of the IPO. *Khoja*, 899 F.3d at 1008.

          a.      *Expensify Was Not Required to Disclose Exact Price Increase Amounts.*

Plaintiff still has no support for his argument that Expensify had to disclose "actual per member prices . . . from before or after the May 2020 price increase." ¶ 57; Opp. at 13-14. Section 11 does not impose a duty on companies to disclose every detail about everything in the Registration Statement, even if those details are "relevant or material." *In re Dropbox Sec. Litig.*, 2020 WL 6161502, at *6 (N.D. Cal. Oct. 21, 2020); Mot. at 11. Expensify disclosed that price increases in May 2020 led to revenue increases, and also disclosed that customer pricing was based on negotiated fees or on prices listed on Expensify's public website. Ex. 4 at 87, 91. That is, each customer's pricing could be different, and Expensify is not required to disclose customer-specific pricing. *See Air Tech Equip., Ltd. v. Humidity Ventilation Sys., Inc.*, 2006 WL 3193720, at *1 (E.D.N.Y. Nov. 2, 2006) (holding that a company need not disclose "customers and their specific unit pricing"). Plaintiff fails to plead that the omission of "actual per-member prices" on a customer-by-customer basis was materially misleading to Expensify's shareholders.

Plaintiff has no meaningful response to the cases Defendants cite that reject securities claims based on the purported omission of details underlying public statements and information. Mot. at 11-12; Opp. at 14.[2] Plaintiff instead argues that his allegations are similar to those in

---

[2] Plaintiff argues that *Dropbox* is different from the instant case because Dropbox "regularly disclosed" information needed to calculate allegedly omitted data. Opp. at 14. But that is of no moment. The *Dropbox* court concluded that the plaintiffs failed to explain "why [Dropbox's disclosures] are so insufficient as to create a materially different impression of Dropbox's financial health." 2020 WL 6161502, at *7. Similarly here, Plaintiff does not explain why Expensify's disclosures that the May 2020 price increase was substantial and could have an impact on customer retention were "so insufficient as to create a materially different impression of" Expensify's business at the time of the IPO. *Id.*

Page 5 – **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

*Khoja*.  Opp. at 14.  But in *Khoja*, defendants publicly "tout[ed] the apparently positive 25 percent interim results" of a drug trial without disclosing that the data was unreliable, including because the FDA had warned defendants specifically not to publicly announce the interim results since they have a "high degree of uncertainty and were likely to change with the accumulation of additional data."  899 F.3d at 1010.  That is, the alleged omission directly undermined the positive statements made by the company.  Here, the omission of the exact amounts each customer paid following the May 2020 price increase does not undermine Expensify's disclosure that customer costs were either the prices on Expensify's website or negotiated rates, that prices increased in May 2020, that the price increase was one of the driving factors for increased revenues, or that it posed a risk to Expensify's customer base.

        b.       *Plaintiff Still Fails to Plead Any Fact Showing a Material Adverse Impact From the Price Increase at the Time of the IPO.*

Plaintiff claims that the May 2020 price increase materially adversely affected Expensify's business by causing customer loss before the IPO.  Opp. at 12, 14 (citing ¶¶ 58-62); *see also* ¶ 3.  But Plaintiff does not plead a single fact to support that conclusory assertion.  *See Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1164 (9th Cir. 2009) ("A claim under section 11 based on the omission of information must demonstrate that the omitted information existed at the time the registration statement became effective."); Mot. at 13-14.  On the contrary, Plaintiff separately claims that the "effects [of the price increase] were not felt until well after the IPO."  Opp. at 10.  Plaintiff's say-so—again, without any factual allegation to support it—is insufficient to adequately allege that the Registration Statement was materially false or misleading when made.

Plaintiff does not plead a material misrepresentation related to the May 2020 price increase because (1) all material facts about the May 2020 price increase that existed at the time of the IPO were disclosed in the Registration Statement; (2) Expensify disclosed the fact that Expensify user

Page 6 –  **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

numbers declined in the second quarter of 2020, (3) Expensify warned of potential impacts from the price increase, and Plaintiff alleges no fact suggesting this risk had materialized as of the IPO; and (4) Plaintiff's reliance on competitor offerings years after the IPO says nothing about a price increase that occurred over three years earlier. In light of these robust disclosures, Plaintiff alleges no fact suggesting there was an undisclosed material fact that had materialized as of the IPO.

*First*, Plaintiff seeks to avoid the disclosures in the Registration Statement, which he concedes (by not opposing) are incorporated by reference into the Amended Complaint, and which fundamentally contradict Plaintiff's claims of falsity. *See* Opp. at 14-15; Dkt. 55 (Defendants' request for judicial notice); *LexinFintech Holdings Ltd. Sec. Litig.*, 2021 WL 5530949, at *2 (D. Or. Nov. 24, 2021) ("A plaintiff who 'makes a claim' in a complaint 'but fails to raise the issue in response to a defendant's motion to dismiss' that claim, 'has effectively abandoned [that] claim.'") (quoting *Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006)). But Plaintiff cannot avoid the fact that the Registration Statement discloses (1) a decline in paid membership in the first quarter after the onset of the COVID-19 pandemic halted essentially all business travel and normal expenses; and (2) a subsequent *increase* in paid users following the initial temporary dip (along with subsequent increases and decreases not alleged to be triggered by anything discussed in the Registration Statement). Ex. 4 at 85, 86, 91. In the second quarter of 2020, when COVID began and impacted Expensify's user numbers, the price increase had been in place for just one month. But Plaintiff admits the price impact would *not* impact users right away. ¶¶ 58, 79. Indeed, Plaintiff now claims (Opp. at 10) that impacts from the price increase would not have been seen "for months and/or years"—that is, well *after* the quarter in which paid users temporarily declined. Plaintiff's own allegations are irreconcilable with his theory of falsity. Plaintiff alleges no fact that existed as of the IPO rendering the robust disclosures in the Registration Statement

Page 7 –   **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE
            AMENDED CLASS ACTION COMPLAINT**

about (1) the May 2020 price increase, (2) Expensify's user numbers for every quarter between January 1, 2018 and June 30, 2021, and (3) the basis for the decline in paid members in the second quarter of 2020 inaccurate or materially misleading. And Plaintiff alleges no fact supporting his conclusory theory that the disclosed May 2020 price increase was causing undisclosed business harms as of the IPO. This falls far short of what is required by Rule 9(b) and would not even pass muster if this case were subject to Rule 8.

Plaintiff's cited cases are not applicable here and indeed demonstrate exactly what is missing from the Amended Complaint. Opp. at 15. In *In re Lucid Group, Inc. Securities Litigation*, 2024 WL 3745605 (N.D. Cal. Aug. 8, 2024), the plaintiffs adequately pled that statements attributing Lucid's production problems to industry-wide issues were misleading because the CEO received reports detailing how the company's specific production problems would cause it to miss targets. *Id.* at *12, 15-16. And in *In re The Honest Company Securities Litigation*, the court held that the plaintiff sufficiently pled Honest failed to disclose it was losing customers because of a defective product design at the time of the IPO where the complaint included allegations from specific customers who were refusing to buy products because of the defect. 615 F. Supp. 3d 1149, 1154-56 (C.D. Cal. 2022). Plaintiff here does not adequately plead any undisclosed facts. Expensify disclosed that it increased prices in May 2020 and disclosed its paid member numbers.

*Second*, Plaintiff argues that Expensify's risk disclosures that price changes could "adversely affect [Expensify's] business"—that is, risk disclosures about the very topic Plaintiff claims was omitted from the Registration Statement—were false or misleading because those risks had already materialized before the IPO in the form of supposedly lost customers. Opp. at 13; ¶¶ 124-25. But Plaintiff still does not identify any undisclosed fact suggesting Expensify had

Page 8 –   **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE
            AMENDED CLASS ACTION COMPLAINT**

already experienced any adverse effect from the May 2020 price increase at the time of the IPO.

Plaintiff points only to the decline in users and revenue in the three months ended June 30, 2020

that Expensify explained resulted from COVID-19 and its related lockdowns.  Ex. 4 at 85.  Plaintiff

has no response to Expensify's explanation other than to ask the Court to not believe it.  Plaintiff

also has no response to the fact that paid users and revenues *increased* year over year for the six

months ended June 30, 2021 compared to the same period in 2020.  Ex. 4 at 86, 91.[3]  Plaintiff's

allegation that the effect of the May 2020 price increase "lagged" is implausible where user and

revenue figures were both increasing in the lead-up to the IPO.  *See Rieckborn v. Jefferies LLC*,

81 F. Supp. 3d 902, 913 (N.D. Cal. 2015) ("[T]he court need not accept as true 'allegations that

contradict matters properly subject to judicial notice.'").

Plaintiff's cited cases (Opp. at 12-13) are inapposite because they involve plaintiffs who

sufficiently pled the existence of the adverse information known but omitted by defendants at the

time the statements were made.  *See Murphy v. Precision Castparts Corp.*, 2017 WL 3084274, at

\*2-3, \*8 (D. Or. June 27, 2017) (in Section 10(b) case, plaintiffs adequately alleged with

particularity that defendants knew "PCC's practice of pulling in sales did not generate sustainable

growth during the Class Period" when defendants "touted PCC's ability to generate sustainable

organic growth"); *Honest*, 615 F. Supp. 3d at 1156 (holding plaintiff adequately alleged facts

supporting that, contrary to the challenged statements, "COVID-19 related product demand was

declining at the time Defendants published the offering documents"); *In re Plantronics, Inc. Sec.*

*Litig.*, 2022 WL 3653333, at \*11 (N.D. Cal. Aug. 17, 2022) (in Section 10(b) case, plaintiff alleged

---

[3] As Plaintiff acknowledges (¶ 133), the Registration Statement also included preliminary results for the fiscal quarter ended September 30, 2021 that showed a revenue "***increase*** of approximately $14.9 million to $15.9 million compared to the fiscal quarter ended September 30, 2020" and "an increase of 27,000 to 37,000 from [Expensify's] average paid members as of September 30, 2020." Ex. 4 at 10-11 (emphasis added).

Page 9 –  **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE**
           **AMENDED CLASS ACTION COMPLAINT**

with particularity that undisclosed sales practice was knowingly adopted by defendants during the class period); *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1137 (N.D. Cal. 2017) (in Section 10(b) case, plaintiffs pled particularized facts demonstrating that negative user engagement trends were reported to employees by Twitter executives during the class period while executives' public statements suggested user engagement was improving).

*Third*, Plaintiff does not offer any fact in his Opposition supporting his claim that Expensify was negatively impacted by the May 2020 price increase at the time of the IPO as shown by subsequent actions by competitors. ¶ 61. Plaintiff argues that competitor offerings "prompted an immediate decline in customers . . . in advance of the IPO." Opp. at 4. But the only competitor offerings Plaintiff alleges are supposed free services offered by competitors *in 2023*—two years *after* the IPO. ¶¶ 61, 105, 122. Plaintiff's reference to competitor offerings is further insufficient given that Expensify offered a free option *at the time of the IPO*. Ex. 4 at 83, 124. And in any event, Expensify warned in the Registration Statement that "as competitors introduce new solutions . . . [Expensify] may be unable to attract new customers at the same prices or based on the same pricing models that we have used historically." ¶ 124; Ex. 4 at 28.

c.    *Plaintiff Has Not Rehabilitated His Deficient CW Allegations.*

Plaintiff dedicates significant space in his Opposition to trying to rehabilitate his confidential witnesses (Opp. at 15-18, 21, 25-26), but Plaintiff still does not meet the Ninth Circuit's standard for relying on CW allegations, nor does the Opposition explain how the CWs (even if reliable and with personal knowledge) have any bearing on the challenged statements. Mot. at 15-17 (citing *LexinFintech*, 2021 WL 5530949, at *7 (requiring plaintiff to plead CW allegations with the requisite "level of detail, . . . coherence and plausibility" necessary to render the CWs reliable)); *Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 995 (9th Cir. 2009)

(requiring sufficient detail about a CW's position "to provide a basis for attributing the facts reported by that witness to the witness' personal knowledge").

Plaintiff claims that "CW1, CW5, and CW7 speak to the customer dissatisfaction over Expensify's pricing model." Opp. at 16. But none of these CWs claims to have had visibility into Expensify's entire and extensive customer base, and none offers facts suggesting any specific customer departed by the time of the IPO because of the price change in May 2020, much less in a material amount. Mot. at 15-16. CW1 states vaguely that the price increase "cost the Company customers but the full extent of the resulting loss was lagged," ¶ 58, yet CW1 does not allege *when* Expensify lost customers, *how many* customers were lost, or that anyone other than CW1 was ever aware of customers leaving due to the May 2020 price increase. *See Wong v. Arlo Techs., Inc.*, 2019 WL 7834762 (N.D. Cal. Dec. 19, 2019), at *6-7 (dismissing Section 11 claim because complaint "contains no facts showing that Defendants knew at the time [of the IPO] that Arlo had a problem innovating new products"). CW5 claims only to have "forged partnerships with Oracle and NetSuite," ¶ 38, and that competitor offerings in 2023 "exacerbated" the effects of the price increase, ¶ 61, but CW5 says nothing about any customer being dissatisfied or leaving Expensify due to the May 2020 price increase at any time, much less before the IPO. Mot. at 17; *Zucco*, 552 F.3d at 995 (witnesses must have "personal knowledge of the events they report"). CW7 similarly alleges nothing about the May 2020 price increase, which occurred nearly a year before CW7 joined Expensify, and instead claims he answered customer complaints about implementation of Expensify's products. ¶¶ 41, 60.

Plaintiff does not meet the *Zucco* standard for relying on CW1, CW5, and CW7 to allege that the price increase caused "customer dissatisfaction." Opp. at 16, 17-18. But even if he had, nothing in these CWs' allegations suggests anything in the Registration Statement was false or

Page 11 – **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

misleading at the time of the IPO. *See In re Pivotal Sec. Litig.*, 2020 WL 4193384, at \*12 (N.D. Cal. July 21, 2020) (holding plaintiff failed to adequately allege a misstatement where "none of the CW reports sufficiently allege that any of Pivotal's statements were false or materially misleading at the time they were made").

Plaintiff's cited cases further demonstrate the deficiencies in his CW allegations. Opp. at 15-16, 21 n.3. For example, in *Oklahoma Police Pension & Retirement System v. LifeLock, Inc.*, the court found a CW's allegations reliable because the CW was "in a position to be personally knowledgeable" that defendants discussed reports containing the omitted information because the CW was responsible for generating those reports and sent them to a member of the management team who told the CW that defendants held meetings regarding the reports. 780 F. App'x 480, 485 n.5 (9th Cir. 2019); *see Avila v. LifeLock Inc.*, 2017 WL 3669615, at \*2 (D. Ariz. Aug. 21, 2017) (discussing the CW allegations). Unlike in *LifeLock*, none of the CWs here were "in a position to be personally knowledgeable" about whether customers were departing Expensify to any meaningful degree due to the May 2020 price increase, much less that Defendants knew about it at the time of the IPO. Similarly, the CWs in *Fitbit* "held positions that exposed them directly to data and consumer complaints" about inaccuracies in Fitbit's devices that undermined defendants' statements regarding the devices' accuracy and "reported directly to [defendant] COO." *Robb v. Fitbit Inc.*, 216 F. Supp. 3d 1017, 1028, 1032 (N.D. Cal. 2016). Plaintiff here does not allege that any of the CWs had direct contact with any of the Defendants.[4]

---

[4] Plaintiff's other cited cases involve factual allegations unlike the facts of this case. Opp. at 16, 21 n.3. In *Glazer Capital Management LP v. Forescout Technologies, Inc.*, 63 F.4th 747 (9th Cir. 2023), the court found that 20 CWs and the consistency between their opinions and verifiable facts were sufficient to establish their reliability. *Id.* at 772. In *Luong v. Subaru of America, Inc.*, 2018 WL 2047646 (N.D. Cal. May 2, 2018), there were no CW allegations at all, but the court found that consumer complaints to a federal agency were relevant to defendants' scienter. *Id.* at \*2, 6. And in *Countrywide*, the court found that CW allegations supported an inference of a company-

Page 12 – **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

### 2.    Plaintiff Still Alleges No Fact Suggesting The Registration Statement Was Misleading In Connection With The October 2020 Email.

Plaintiff claims that Expensify misled investors in the Registration Statement by creating a "false impression" of a "happy customer base" and an "untarnished" reputation when Mr. Barrett's publicly known October 2020 email (from over a year before the IPO) created a "catastrophe" for Expensify requiring abandonment of its bottom-up marketing model. Opp. at 18-20. But again, Plaintiff has not alleged any statement false or misleading at the time of the IPO. Nor has Plaintiff adequately alleged any abandonment of Expensify's marketing model. *See infra* Section II.B.3. But more importantly, Plaintiff cannot avoid that he alleges no fact suggesting that there was any undisclosed material impact from the October 2020 email as of the IPO at all, much less one that was not publicly known or otherwise required to be disclosed. Mot. at 19-20. Nor can he ignore that the Registration Statement disclosed the October 2020 email and warned investors of the risks presented by Expensify's extensive "values-based activity and communications." *See, e.g.*, Ex. 4 at 34, 52.

#### a.    *Plaintiff Fails to Allege a Customer Fallout Caused by the October 2020 Email at the Time of the IPO.*

Plaintiff alleges that the October 2020 email "prompted an immediate, severe backlash within Expensify's customer base" involving supposed "mass cancellations," therefore rendering the Registration Statement's discussion of Expensify's customer base misleading. Opp. at 5, 7, 18. But Plaintiff has no meaningful rebuttal to the fact that the Registration Statement included detailed disclosures about Expensify's paid member numbers (*see, e.g.*, Ex. 4 at 86), and that his only allegations of a purported omission on this topic are publicly available and anonymous online

---

wide culture that encouraged deviation from underwriting standards and therefore were sufficient to plead defendants' scienter. *In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d 1044, 1058-59 (C.D. Cal. 2008).

Page 13 – **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

complaints and vague allegations from CWs without personal knowledge of Company-wide data. Mot. at 19-20.  Plaintiff claims the public information on Expensify's website was only found through counsel's "investigatory efforts" (Opp. at 20), and claims that investors are not required to know anything outside of the Registration Statement's four corners (*id.* at 21).  Plaintiff's claim fails for several independent reasons, including (1) the alleged omitted information was publicly available; (2) his CWs are unreliable and say nothing about any material Company-wide impact from the October 2020 email at the time of the IPO; (3) Expensify's user numbers *increased* after the October 2020 email—the opposite of an adverse impact; and (4) Plaintiff alleges no fact supporting the existence of an "internal fallout" at Expensify at the time of the IPO, much less one that relates in any way to the Registration Statement.

*First*, Plaintiff does not address Defendants' argument that vague online complaints from anonymous purported customers are not sufficient to allege falsity.  Mot. at 19-20.  Critically, Plaintiff does not identify the alleged customers, whether they cancelled their contracts with Expensify, or even whether Plaintiff's counsel has ever spoken to the commenters.  Courts have routinely rejected such allegations.  *LexinFintech*, 2021 WL 5530949, at *9 ("[F]our anonymous Internet complaints . . . without any additional corroborating facts, are not sufficient . . . to demonstrate falsity."); *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 800 (S.D.N.Y. 2020) ("[C]ourts have tended not to credit uncorroborated statements of CWs who are sourced secondhand—with whom plaintiffs' counsel have not themselves interacted").  Indeed, from the Amended Complaint, it is not even clear whether Plaintiff or his counsel knows who these customers are.  Plaintiff's reliance on secondhand internet reports falls far short of his pleading burdens and should not be credited.

Page 14 – **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

Even if the online complaints constituted a well-pled allegation, they do not support a finding of a material impact from the October 2020 email. Plaintiff cites 14 purported customer complaints without any allegation of how that number is meaningful in light of Expensify's tens of thousands of paid users and millions of dollars in revenue. ¶¶ 66-68, 70, 72-77, 80-83; *see LexinFintech*, 2021 WL 5530949, at *8 ("[E]ven if the Court were to credit the anonymous complaints, they are insufficient because they are purely anecdotal and come from only four people out of millions of borrowers."). Were the Court to indulge Plaintiff's unsourced allegations about unspecified customers, the most the complaints suggest is that a handful of purported customers disagreed with the October 2020 email, but Plaintiff has not alleged that any of the customers even actually cancelled their contracts with Expensify. *See In re Netflix, Inc. Sec. Litig.*, 2005 WL 1562858, at *7 (N.D. Cal. June 28, 2005) (mere existence of customer complaints about company's service do not support that the company was aware that its services were worse than represented and leading to customer loss); *see also* Mot. at 19 (citing cases).

*Second*, Plaintiff's vague CW allegations do not support the allegation that the October 2020 email caused any undisclosed material impact on the Company that was required to be disclosed. Mot. at 20. Plaintiff alleges that "CW1, CW4, CW5, and CW6 provide similar accounts [to those of the online commenters] of the grave negative reaction to Barrett's October 2020 email." Opp. at 16. But as with the May 2020 price increase (*supra* Section II.B.1), these CWs do not purport to have personal knowledge of any specific customer leaving Expensify because of the October 2020 email as of the IPO, much less personal knowledge of a material number of customers leaving for this reason. Mot. at 20. For example, CW1 "stated that Barrett's October 2020 political email offended many customers, causing a catastrophe and exodus from the Company's customer base." ¶ 71. CW1 also purportedly "estimated that Barrett's email offended

about 5 million of the 10 million recipients," but does not allege that any of the recipients actually cancelled their Expensify subscriptions. *Id.* The "vague and hyperbolic assertions" from CWs that Plaintiff relies on are insufficient to adequately plead that the Registration Statement was false or misleading when made. *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 837 (9th Cir. 2022); *Zucco*, 552 F.3d at 997.

*Third*, Plaintiff has no response to the fact that far from a fallout after the October 2020 email, Expensify's paid users ***increased*** from 630,000 paid members in the quarter ended September 30, 2020 to 645,000 in the quarter ended December 31, 2020, and Expensify estimated that they would increase further to between 660,000 and 670,000 by September 2021—two months before the IPO. Ex. 4 at 11, 19. Expensify's user numbers increased and decreased in the year between September 2020 and September 2021—changes that Plaintiff does not allege were caused by anything related to the October 2020 email (or May 2020 price increase for that matter). Ex. 4 at 19. Plaintiff does not challenge the accuracy of Expensify's disclosed user numbers, which are irreconcilable with an immediate mass departure supposedly triggered by the October 2020 email.

*Finally*, Plaintiff alleges for the first time in his Opposition that the October 2020 email caused an "internal fallout within the company." Opp. at 21. But nothing in the Amended Complaint alleges that the omission of a purported "internal fallout" rendered any statement false or misleading. And Plaintiff pleads no facts to allege what an "internal fallout" might have entailed, beyond two conclusory CW allegations. CW1 testified that "many employees, including CW1, felt alienated" by the email and CW4 stated that "Expensify circulated an internal brief and logic tree" on how to address customers "if the email came up." ¶ 78. These vague allegations are plainly inadequate to plead a Securities Act violation, especially because Plaintiff does not even attempt to relate them to anything in the Registration Statement whatsoever.

Page 16 – **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

b.      *The October 2020 Email and Customer Responses Were Publicly Available and Expensify Was Not Required to Copy the Email's Contents into the Registration Statement.*

Plaintiff argues that Expensify was required to copy and paste the contents of the October 2020 email and the supposed "damage it had caused" into the Registration Statement. Opp. at 20. But the Registration Statement specifically described the October 2020 email as "David Barrett's email . . . urging customers to protect democracy" and stated that there were "a number of complaints filed" with the Federal Election Commission in response to the email. Ex. 4 at 52. Defendants also disclosed that the email could lead to further complaints (*id.*) and that Expensify's values-based communication like the October 2020 email could result in additional "negative reaction" (¶ 129). Plaintiff cannot state a claim where the Registration Statement in fact disclosed exactly what Plaintiff claims was omitted.

Plaintiff cites no law in support of his position that Expensify was required to disclose the contents of the October 2020 email within the four corners of the Registration Statement, particularly where the email and the reactions to it were publicly available for over a year before the IPO. Opp. at 20-21; Mot. at 17-18. On the contrary, courts routinely hold that publicly available information cannot form the basis of a Section 11 claim. *See Rubke v. Capitol Bancorp*, 2006 WL 1699569, at *13 (N.D. Cal. June 16, 2006) (holding Section 11 "do[es] not require the disclosure of publicly available information."); *In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1173, 1181-82 (N.D. Cal. 2004) (dismissing Section 11 allegations because allegedly omitted "adverse information" was public); *see also Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 254-55 (S.D.N.Y. 2019) (dismissing Section 11 claim because Defendants "ha[ve] no duty to disclose information that is within the public domain through publication in the news media"); *In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*, 272 F. Supp. 2d 243, 249 (S.D.N.Y. 2003) (dismissing Section 11 claim because "Defendants cannot be held liable for failing to

Page 17 – **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

disclose that [] provided investment banking services to companies in the Fund's portfolio if that information was already public"). This is because Plaintiff must plead that an alleged "omission or misrepresentation was material," *Rubke*, 551 F.3d at 1161, and the materiality of an omission is assessed in light of the total mix of information in the public domain at the time of the IPO, *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 38 (2d Cir. 2017).

Plaintiff does not dispute that the email garnered widespread media attention (*e.g.*, Ex. 1), or that certain customers' disagreement with the email was publicly available on Expensify's website—the same place from which Plaintiff copied the customer complaints included in the Amended Complaint (Exs. 2, 3). That the Registration Statement told investors they should not rely on information on the Company's website, which included information like the customer complaints posted by third parties not verified or affiliated with Expensify, is of no moment. *See Haping v. 17 Educ. & Tech. Grp. Inc.*, 2023 WL 8716895, at *11-12 (S.D.N.Y. July 20, 2023) (dismissing Section 11 claim and rejecting plaintiffs' claim that public comments should not be considered information available to investors because registration statement told investors to "rely only on the information contained in this prospectus").

Plaintiff's cases do not hold otherwise. Opp. at 20-21. Plaintiff claims that *Daou*, 411 F.3d at 1027, supports his argument that investors need not review public information (Opp. at 21), but *Daou* does not discuss omitted information that was publicly available before an IPO. In *Miller v. Thane International, Inc.*, 519 F.3d 879 (9th Cir. 2008) (Opp. at 21), the court held that investors need not independently review prior versions of a prospectus that included information not contained in the final version filed with the SEC. *Id.* at 887. In *Schulein v. Petroleum Development Corporation*, 2012 WL 12884851 (C.D. Cal. June 25, 2012) (Opp. at 21), the court held the plaintiffs adequately pled that the defendants omitted material information where it

Page 18 – **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

appeared that only a subset of the information was publicly available. *Id.* at \*6. And in *In re Amgen Securities Litigation*, 2014 WL 12585809 (C.D. Cal. Aug. 4, 2014) (Opp. at 21), the court rejected defendants' "truth-on-the-market" defense in a Section 10(b) case because there were factual disputes as to whether the allegedly omitted information, which was made public two days before the alleged corrective disclosure, was transmitted to the public with a sufficient degree of intensity. *Id.* at \*15.

Given the fact that the October 2020 email and responses to it were publicly available, Plaintiff tries to argue that Section 11 imposes "strict liability," as though that gives him an automatic pass through the pleadings stage. Opp. at 20. But that is not the law. Plaintiff must still plead a material omission or misrepresentation, meaning one that "would have misled a reasonable investor about the nature of his or her investment," *LexinFintech*, 2021 WL 5530949, at \*16 (quoting *Rubke*, 551 F.3d at 1161), and would have altered the total mix of *all* information available to investors *at the time of the IPO*, *Stadnick*, 861 F.3d at 38. Plaintiff has not done so.

Plaintiff's argument about "truth on the market" (Opp. at 22, 31) fails for similar reasons. "A truth-on-the-market defense is based on the theory that, if an alleged misstatement or omission of fact is already known to the market, then the fact will already be reflected in the stock price, and the market has not been misled. Thus, the defense is less applicable to registration statements, IPOs, and Section 11 claims, where the stock price has been set privately." *Uber*, 2020 WL 4569846, at \*6.[5] Defendants point to the public availability of the October 2020 email and responses to it to show how Plaintiff's claim that contents of the email were required to be included

---

[5] Plaintiff's cited cases (Opp. at 22, 31) are inapposite because none involves a Section 11 claim. *Provenz v. Miller*, 102 F.3d 1478, 1492 (9th Cir. 1996) (discussing "truth-on-the-market" defense for a Section 10(b) claim); *Sgarlata v. PayPal Holdings, Inc.*, 2018 WL 6592771, at \*7 (N.D. Cal. Dec. 13, 2018) (same); *Conn. Ret. Plans & Tr. Funds v. Amgen Inc.*, 660 F.3d 1170, 1172 (9th Cir. 2011), *aff'd*, 568 U.S. 455 (2013) (motion for class certification in Section 10(b) case).

Page 19 – **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

within the four corners of the Registration Statement is insufficient to state a claim for an omission

of material fact, not for whether that information was supposedly fraudulently incorporated into

Expensify's IPO stock price.  That is, Plaintiff's argument that the Registration Statement omitted

the October 2020 email and its impact on Expensify is irreconcilable with the fact that the October

2020 email and reactions to it were publicly available for over a year before the IPO.

### 3. Plaintiff Still Fails to Allege That Statements About Expensify's Business Model Were False or Misleading.

Plaintiff alleges that the May 2020 price increase and the October 2020 email harmed the

Company's reputation and brand so much that Expensify's bottom-up business model "was broken

and already replaced by a traditional 'top down' marketing strategy" at the time of the IPO.  Opp.

at 22-24.  But Plaintiff still does not identify any fact in his Opposition that would suggest that

Expensify had "abandoned" its bottom-up marketing model.  Nor does he explain why Expensify's

investment in marketing campaigns, which the Registration Statement discloses occurred for years,

is irreconcilable with a bottom-up business model.  Once again, Plaintiff has failed to identify any

undisclosed material fact in existence at the time of the IPO that would render the Registration

Statement materially misleading.

#### a. *Plaintiff Pleads No Facts Demonstrating That Expensify Abandoned Its Bottom-Up Business Model at the Time of the IPO.*

Plaintiff challenges Expensify's discussion of its bottom-up business model in the

Registration Statement because Expensify had supposedly shifted to a top-down marketing

strategy.[6]  Opp. at 24-25.  But the only allegation this claim is based on is the mere fact that

---

[6] Plaintiff attempts to quibble with whether "bottom-up" refers to a business model or marketing strategy (Opp. at 24), but Plaintiff himself claims that Expensify's bottom-up business model was abandoned in favor of a top-down marketing strategy, ¶¶ 91-98.  That is, Plaintiff is who equates the two.  But whether a business model or a marketing strategy, Plaintiff's claims are insufficient.

Expensify hired sales representatives before its IPO and continued its historic practice of using paid advertising. *Id.* Plaintiff alleges no fact showing that either of those points means Expensify abandoned a bottom-up model. Plaintiff again ignores that the Registration Statement expressly disclosed that Expensify used "direct marketing and advertising" and that such paid advertising ***supports*** Expensify's "word-of-mouth" adoption model. *See, e.g.*, Ex. 4 at 145 ("Our marketing efforts are designed to support the bottom-up viral nature of our platform"); *id.* at 124 ("We support this powerful word-of-mouth marketing with large-scale brand advertising to build market consensus that Expensify is the software of choice for expense management."); Mot. at 21-22.

Plaintiff also again tries to use his deficient CW allegations to save his insufficient claims. Opp. at 25-26. But in response to Defendants' challenges to these CW allegations (Mot. at 23-24), Plaintiff merely states that "[e]ach witness is described adequately to provide a basis for their respective allegations" without any explanation. Opp. at 25. That conclusory assertion is insufficient to meet Plaintiff's burden. But even if the CWs were considered reliable, at most they allege that Expensify hired some sales representatives months before the IPO (CW4, ¶ 92), that the job performance measurement for customer support changed at some point between 2021 and 2023 (CW7, ¶ 93), and that there was a push for advertising leading up to the IPO (CW3, ¶ 94).[7] Plaintiff does not explain in his Opposition how any of these allegations, alone or combined, say anything about whether or not Expensify abandoned a bottom-up business model.

### C.    Regulation S-K Does Not Salvage Plaintiff's Deficient Section 11 Claims.

Plaintiff tries to save his Section 11 claims through allegations of violations of Items 101, 105, and 303 of Regulation S-K. But Plaintiff's Regulation S-K allegations are the same as those

---

[7] Plaintiff does not respond to, and therefore concedes, Defendants' argument that CW2's allegations are irrelevant and unreliable. Mot. at 23.

Page 21 – **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

under Section 11 and fail for the same reasons. Regulation S-K sets out certain information companies must disclose in offering materials, but Plaintiff still does not allege any fact suggesting Expensify (1) omitted a material change to its business model from the Registration Statement (Item 101); (2) failed to warn of any material risk known as of the IPO (Item 105); or (3) omitted a known, material, and adverse trend that existed or was reasonably certain to occur at the time of the IPO.

### 1. Plaintiff Does Not Plead Any Omitted Material Change to Expensify's Business Model at the Time of the IPO.

Plaintiff fails to plead an Item 101 violation because he has not alleged any fact demonstrating that Expensify made any material change to its business model that it failed to disclose in the Registration Statement. Mot. at 25-26. In his Opposition, Plaintiff claims Expensify's replacement of its bottom-up model is shown through "uncharacteristically high advertising costs typically associated with more traditional 'top-down' approaches" beginning in the quarters leading up to the IPO. Opp. at 26. But Plaintiff continues to ignore that Expensify explained its sales and marketing expenses in the Registration Statement and told investors that its sales and marketing expenses increased in 2019 because of a costly Super Bowl advertisement (precisely the sort of "outbound" marketing Plaintiff claims Expensify suddenly pivoted to two years later in 2021 (Opp. at 25)), and then those expenses decreased in 2020 compared to 2019 because of the impact of the COVID-19 pandemic. Ex. 4 at 94. Expensify then disclosed that prepaid marketing expenses increased again in 2021 due to "increased spending on sales and marketing as the business ramps up for future advertising with expected increased demand for business travel" following the easing of pandemic restrictions and the Company's increased brand awareness from its IPO. *Id.* at 99-100; *see also* Mot. at 22. Plaintiff does not allege that these

explanations were false or misleading and he fails to offer any other factual support for any purported undisclosed material change in Expensify's business model.  Mot. at 21-22, 25-26.

Contrary to Plaintiff's characterization (Opp. at 26), *Lau v. Opera Limited.*, 527 F. Supp. 3d 537 (S.D.N.Y. 2021), is directly relevant here.  In *Opera*, the plaintiffs claimed that Opera failed to disclose that it had shifted its business to enter the fintech market at the time of the IPO, as demonstrated by Opera's pre-IPO relationship with Opay, an online payment services provider. *Id.* at 554-55.  The *Opera* court dismissed the plaintiffs' Item 101 claim because Opera's pre-IPO relationship with Opay did not support that Opera had materially shifted its business and entered the fintech market.  *Id.*  Plaintiff's allegations here are even more deficient than those in *Opera* because the only factual support Plaintiff alleges for the purported change in Expensify's business model is a return to pre-pandemic marketing and sales expenses in the quarters leading up to the IPO and the hiring of sales representatives, neither of which Plaintiff plausibly pleads is mutually exclusive with a bottom-up business model.[8]  Plaintiff has not pled any "material changes to a previously disclosed business strategy" that were required to be disclosed under Item 101.

   **2.**  **Plaintiff Fails to Plead Any Known But Omitted Risk at the Time of the IPO.**

---

[8] The cases Plaintiff cites (Opp. at 26) do not apply here.  *In re CarLotz, Inc. Securities Litigation*, 2024 WL 1348749 (S.D.N.Y. Mar. 29, 2024), is inapposite because the plaintiffs pled with particularity that most of CarLotz's business was not being conducted according to the publicly touted "consignment-to-retail" business model, including specific allegations about the company's vehicle purchasing system and inventory that "meant that in practice, CarLotz, Inc. operated not on a consignment model but on the traditional model of buying and reselling cars."  *Id.* at *10. Here, Plaintiff does not—and cannot—plead that Expensify's marketing strategies are exclusive to a "bottom-up" business model.  *Hawaii Structural Ironworkers Pension Trust Fund v. AMC Entertainment Holdings, Inc.*, 422 F. Supp. 3d 821 (S.D.N.Y. 2019), is also not applicable because the court held that the "seasonality of AMC's international business" had to be disclosed under Item 101(c)(1)(v), which required AMC to describe "[t]he extent to which the business of the segment is or may be seasonal"—a provision not at issue in this case.  *Id.* at 841-42.

Page 23 – **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

Plaintiff fails to plead any known risk at the time of the IPO that Expensify was required to, but did not, disclose under Item 105. *See* Mot. at 26-27. Indeed, the Registration Statement included robust risk disclosures, including about each of the purported misrepresentations. Recognizing this, Plaintiff's Opposition mentions Item 105 in passing, but then cites only cases dealing with Item 303. Opp. at 26-28. Plaintiff repeats his refrain that Expensify omitted that the May 2020 price increase and political email (both occurring over a year before the IPO) damaged Expensify's "reputation," "brand," and "happy customer" base. Opp. at 27. But Plaintiff does not tie that assertion to any risk factor, and the Opposition has no response to the numerous risk warnings in the Registration Statement specific to both the price increase and the email. Ex. 4 at 22, 27, 28 (warning about potential harms from pricing strategies); *id.* at 34, 52 (warning of potential harms from October 2020 email and values-based communications). Plaintiff also ignores that Expensify even warned about a return to pre-pandemic marketing investments and a plan to increase marketing expenses in the future. *Id.* at 124, 145. Equally fatal is the fact that Plaintiff does not even try to allege in his Opposition that any Defendant *knew* of a purportedly materialized but undisclosed risk at the time of the IPO. Plaintiff effectively concedes his Item 105 claim by not substantively addressing it. *LexinFintech*, 2021 WL 5530949, at *2.

### 3. Plaintiff Fails to Plead a Known, Material, and Adverse Trend That Existed as of the IPO.

Item 303 requires Plaintiff to plead that Defendants knew of material adverse trends that existed at the time of the IPO. Mot. at 28-29; *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1297 (9th Cir. 1998) (Item 303 "mandates . . . knowledge of an adverse trend"). Plaintiff still fails at each element of that claim: he does not allege the existence of an adverse trend, much less a material one, nor one that was known to any Defendant as of the IPO. Mot. at 28-29.

Page 24 – **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

Plaintiff argues that the single-quarter decrease of paid members in the quarter ended June 30, 2020 was a material adverse trend over a year later at the time of the IPO in November 2021. Opp. at 27. But Plaintiff conveniently ignores that paid members *increased* over the next two quarters in 2020, then temporarily declined, and was again increasing at the time of the IPO. Ex. 4 at 19. Plaintiff cites no authority for the idea that a single-quarter decline in user numbers *18 months before the IPO* and followed by increase, then decrease, then increase again constitutes a material adverse trend at the time of the IPO required to be disclosed under Item 303—particularly when the specific user numbers and their fluctuations were themselves disclosed. Indeed, such a sequence of user numbers is irreconcilable with a known or knowable material adverse trend at the time of the IPO. "[N]othing in the [Amended Complaint] creates a plausible inference that this was a trend rather than an isolated event" due to the pandemic. *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1263-64 (N.D. Cal. 2019). Plaintiff's cases, all but one of which are out-of-circuit, only highlight the Amended Complaint's deficiencies. *See Sundaram v. Freshworks, Inc.* 2023 WL 6390622, at *7-8 (N.D. Cal. Sept. 28, 2023) ("Q3 2021 financial deceleration" was an adverse trend known by defendants at the time of IPO in September 2021).[9]

---

[9] Plaintiff's cases (Opp. at 27-28) involve adverse trends that existed in the same timeframe as the IPO. *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 116, 121-22 (2d Cir. 2012) (allegations sufficient to claim known material adverse trend where chips sold to clients representing 72% of revenue were 100% defective at the time of the IPO); *Franchi v. SmileDirectClub, Inc.*, 633 F. Supp. 3d 1046, 1057, 1066-67 (M.D. Tenn. 2022) (holding plaintiffs adequately alleged a "dramatic decline" in financial metrics that was known to defendants at time of IPO); *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 986 F. Supp. 2d 487, 513 (S.D.N.Y. 2013) (holding "Facebook was aware of the material negative impact on Facebook's revenues . . . ten days before the IPO"); *Schuh v. HCA Holdings, Inc.*, 947 F. Supp. 2d 882, 890-91 (M.D. Tenn. 2013) (allegation of "[s]teep decline" in a key metric that began nine weeks before IPO was sufficient to plead Item 303 claim); *Milman v. Box Hill Sys. Corp.*, 72 F. Supp. 2d 220, 231 (S.D.N.Y. 1999) (holding plaintiffs alleged violation of Item 303 because "sales were in material decline *at the time of the Offering*") (emphasis added).

Page 25 – **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

Plaintiff also tries to avoid having to meet the heavy burden of pleading a knowing omission of a material adverse trend by claiming that "fraudulent intent" is not an element of an Item 303 claim. Opp. at 28-29. But pleading *knowledge* is an essential element to any Item 303 claim. *Restoration Robotics*, 417 F. Supp. 3d at 1264 ("Plaintiff must establish knowledge on the part of Defendants regarding any alleged trend . . . ."). Plaintiff's conclusory assertions that "Defendants knew" of alleged trends are clearly inadequate to plead Defendants' knowledge under Item 303. Opp. at 8; *see In re Coty Inc. Sec. Litig.*, 2016 WL 1271065, at *7 (S.D.N.Y. Mar. 29, 2016) (rejecting allegation that defendants knew of an alleged trend because "negative trends were discussed within the Company at senior levels" as conclusory and insufficient to plead defendants' knowledge for Item 303); *Rubenstein v. Credit Suisse Grp. AG*, 457 F. Supp. 3d 289, 300 (S.D.N.Y. 2020) (rejecting allegation that because Credit Suisse was "a major participant in the VIX Futures market," it can be "presumed to have known the relevant facts" concerning alleged trends in that market as "conclusory and insufficient" to plead the "*actual* knowledge" required to for Item 303 claim) (emphasis in original).[10]

---

[10] Because Plaintiff does not plead any fact suggesting any Defendant had *actual knowledge* of a material adverse trend at the time of the IPO, his cited cases (Opp. at 27-28) are inapplicable. *See Pirani v. Slack Tech., Inc.*, 445 F. Supp. 3d 367, 386 (N.D. Cal. 2020) (holding that plaintiff adequately "pled that Slack was aware of [service] outages at the time of its [risk] disclosures" because "Slack's reliability problem was not simply hypothetical but a known issue to defendants"), *vacated and remanded sub nom. Slack Techs., LLC v. Pirani*, 598 U.S. 759 (2023); *Cai v. Switch, Inc.*, 2019 WL 3065591, at *2, *5 (D. Nev. July 12, 2019) (plaintiff adequately pled Item 303 claim based on defendant's failure to disclose that Switch had changed its sales strategy to focus on hybrid cloud solutions when defendants admitted after IPO that the company "had been working on hybrid cloud solutions for a while"); *Facebook*, 986 F. Supp. 2d at 513 (plaintiff adequately alleged defendants' knowledge of material adverse trends because the trends were reflected in Facebook's internal financial projections before IPO).

Page 26 – **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

**D.      Plaintiff's Claims Fail Because He Has Not Rebutted That Any Purported Losses In 2023 Were Not Caused By The Challenged Statements.**

Independently, Plaintiff's Section 11 claim must be dismissed because the allegations in the Amended Complaint and documents incorporated into it by reference demonstrate as a matter of law that Plaintiff's claimed losses are not caused by any challenged statement. *Brown v. Ambow Educ. Holding Ltd.*, 2014 WL 523166, at *14-15 (C.D. Cal. Feb. 6, 2014) (dismissing Section 11 claim where plaintiffs' allegations demonstrated that alleged corrective disclosures "do not reasonably reveal anything about the purported misrepresentations" and therefore support a negative causation affirmative defense); *see also In re Shoretel Inc. Sec. Litig.*, 2009 WL 248326, at *4-5 (N.D. Cal. Feb. 2, 2009) (dismissing Section 11 claim on negative causation grounds) (citing *McCalden v. Cal. Libr. Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990) (affirmative defenses may be established at motion-to-dismiss stage)). Although corrective disclosures "need not 'precisely mirror' the misrepresentation" (Opp. at 30), the disclosure must "reveal[] new facts that, taken as true, render some aspect of the defendant's prior statement false or misleading." *In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1184 (9th Cir. 2024) (Opp. at 30); *see also Hoang v. ContextLogic, Inc.*, 2024 WL 4471316, at *13 (N.D. Cal. Aug. 22, 2024) (dismissing Section 11 claim with prejudice on negative causation defense where nothing in the purported corrective disclosure "relate[d] to the charged omission" in the registration statement).

Plaintiff's Opposition still does not identify anything to tie disclosures about the macroeconomic environment, analyst opinions, or competitor offerings that developed *in 2023* to any challenged statement about May 2020 price increases, the October 2020 email, or marketing strategies in *November 2021*. *See* Mot. at 29-32. In fact, Plaintiff's corrective disclosures bear no connection to these allegedly omitted topics. *Id.* at 31. For example, Morgan Stanley's June 12, 2023 analyst report stated that Expensify "face[d] challenges *near-term* as the core business works

Page 27 – **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

through structural and ***macro-related*** headwinds." ¶ 103 (emphasis added). J.P. Morgan stated that "the industry is inherently affected by ***macro*** headwinds" and that "[*t*]*ougher macro* creates lower visibility into revenue . . . and reduces the efficiency of the word-of-mouth, bottom-up customer acquisition model." Ex. 5 at 1 (emphasis added). And Piper Sandler spoke of "internal missteps" in November 2023 (*i.e.*, two years after the IPO) related to challenges from Expensify's "esoteric pricing policy," which required businesses to pay for only "active" users that accounted for only a third of their employees. Ex. 6 at 1.

Plaintiff's own cited case, *In re Lyft Inc. Securities Litigation*, 484 F. Supp. 3d 758 (N.D. Cal. 2020) (Opp. at 31), is instructive about what is lacking in Plaintiff's allegations. In *Lyft*, the plaintiffs alleged the Registration Statement omitted risks related to purported sexual assaults by drivers that were "rampant" at the time of the IPO. *Id.* at 763. The court rejected defendants' negative causation defense because the corrective disclosures at issue were news articles that reported allegations of sexual assaults that had occurred prior to the IPO. *Id.* at 770 n.5, 778. That is, the corrective disclosure directly revealed the very topic that plaintiffs claimed were omitted from the registration statement. Plaintiff alleges no such link here.

Plaintiff cannot rebut Defendants' negative causation argument by asking the Court to ignore information contained in documents that *Plaintiff* incorporated by reference into his complaint. Opp. at 31-32. Defendants can argue (and the Court can consider) a negative causation defense based on allegations in the Amended Complaint, as well as in documents *Plaintiff* chose to incorporate by reference. *Shoretel*, 2009 WL 248326, at *4-5; *see also Hoang*, 2024 WL 4471316, at *7 (holding that the court may consider "the facts as alleged by plaintiffs, and documents which the court may take judicial notice of" in considering a negative causation defense). The very same analyst reports that Plaintiff claims "corrected" the Registration

Statement can be considered by the Court for the fact that they make no mention of the May 2020 price increase, the October 2020 email, or Expensify's marketing strategies at the time of the IPO, and in fact, point to new facts and circumstances that existed only in 2023 as the basis for their report. *See* Mot. at 31; ¶ 103; Exs. 5, 6.  Plaintiff has not rebutted Defendants' showing that Plaintiff cannot plead loss causation.

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully seek dismissal of Plaintiff's Amended Complaint.

October 18, 2024

FOSTER GARVEY PC

By: */s/ Eryn Karpinski Hoerster*
Eryn Karpinski Hoerster, OSB #106126
121 SW Morrison Street, Eleventh Floor
Portland, Oregon 97204-3141
Telephone: +1.503.228.3939
Facsimile: +1.503. 226.0259
eryn.hoerster@foster.com

LATHAM & WATKINS LLP
Matthew Rawlinson (*pro hac vice*)
Melanie M. Blunschi (*pro hac vice*)
Daniel R. Gherardi (*pro hac vice*)
140 Scott Drive
Menlo Park, California 94025
Telephone:  +1.650.328.4600
Facsimile:  +1.650.463.2600
matt.rawlinson@lw.com
melanie.blunschi@lw.com
daniel.gherardi@lw.com

*Attorneys for Expensify Defendants*

**CERTIFICATE OF COMPLIANCE**

This Reply complies with the applicable word-count limitation under LR 7-2(b) because it contains 9,947 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, motion, signature block, exhibits, and any certificates of counsel.

/s/ Eryn Karpinski Hoerster
Eryn Karpinski Hoerster, OSB #106126

Page 30 – **EXPENSIFY DEFENDANTS' REPLY ISO MOTION TO DISMISS THE
AMENDED CLASS ACTION COMPLAINT**