Michael B. Merchant, OSB No. 882680
**BLACK HELTERLINE LLP**
805 S.W. Broadway, Suite 1900
Portland, OR 97205
Tel.: (503) 224-5560
Fax: (503) 224-6148
Email: mike.merchant@bhlaw.com

Adam M. Apton (admitted *pro hac vice*)
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Counsel for Lead Plaintiff and the Class*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CODY WILHITE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> EXPENSIFY, INC., DAVID BARRETT, RYAN SCHAFFER, BLAKE BARTLETT, ROBERT LENT, ANU MURALIDHARAN, JASON MILLS, DANIEL VIDAL, TIMOTHY L. CHRISTEN, YING (VIVIAN) LIU, ELLEN PAO, J.P. MORGAN SECURITIES, LLC, CITIGROUP GLOBAL MARKETS INC., BofA SECURITIES, INC., PIPER SANDLER & CO., JMP SECURITIES LLC, and LOOP CAPITAL MARKETS LLC, <br><br> Defendants. | Case No.: 3:23-cv-01784-JR <br><br> **PLAINTIFF'S OBJECTION TO FINDINGS & RECOMMENDATION [62]** |

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ........................................................................................ 1

II.     LEGAL STANDARD.................................................................................................... 2

III.    ARGUMENT ............................................................................................................. 3

      A.      Even If Details of Barrett's Political Email Were Publicly Available, Expensify's Registration Statement Still Violated Section 11 of the Securities Act by Failing to Properly Disclose It. .................................................. 3

      B.      Defendants Are Still Liable for Failing to Disclose the *Non-Public* Fallout of the Political Email Regardless of Whether the Email Itself Was *Public*. ............... 6

IV.     CONCLUSION.......................................................................................................... 8

## TABLE OF AUTHORITIES

**Cases**

*In re Alphabet, Inc. Sec. Litig.*,
 1 F.4th 687 (9th Cir. 2021)............................................................................................ 7

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ...................................................................................................... 7

*Barilli v. Sky Solar Holdings, Ltd.*,
 389 F. Supp. 3d 232 (S.D.N.Y. 2019)........................................................................... 5

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
 No. 19-cv-06361-RS, 2020 U.S. Dist. LEXIS 141724 (N.D. Cal. Aug. 7, 2020) ...................... 4

*In re Facebook, Inc. Sec. Litig.*,
 87 F.4th 934 (9th Cir. 2023)........................................................................................... 7

*In re Gilead Scis. Sec. Litig.*,
 536 F.3d 1049 (9th Cir. 2008)........................................................................................ 7

*Glazer Capital Mgmt., L.P. v. Forescout Techs., Inc.*,
 63 F.4th 747 (9th Cir. 2023)........................................................................................... 2

*Hemmer Grp. v. Sw. Water Co.*,
 527 F. App'x 623 (9th Cir. 2013).................................................................................... 3

*Herman & Maclean v. Huddleston*,
 459 U.S. 375 (1983) ...................................................................................................... 3

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
 272 F. Supp. 2d 243 (S.D.N.Y. 2003)............................................................................ 5

*Miller v. Thane Int'l, Inc.*,
 519 F.3d 879 (9th Cir. 2008).......................................................................................... 5

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group, PLC*,
 709 F.3d 109 (2d Cir. 2013)........................................................................................... 6

*Rubke v. Capitol Bancorp*,
 No. C 05-4800 PJH, 2006 U.S. Dist. LEXIS 43745 (N.D. Cal. June 16, 2006)........................ 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007) ...................................................................................................... 7

*Va. Bankshares v. Sandberg*,
   501 U.S. 1083 (1991) ................................................................................................ 6

**Statutes**

28 U.S.C. §636 .............................................................................................................. 2

**Rules**

FED. R. CIV. P. 72 .......................................................................................................... 3

## I.    PRELIMINARY STATEMENT

Plaintiff alleges Defendants violated Sections 11 and 15 of the Securities Act of 1933 by making a series of false and/or materially misleading statements in Expensify's Registration Statement. Defendants moved to dismiss Plaintiff's complaint in its entirety. Magistrate Judge Russo largely denied Defendants' motion. In her Findings & Recommendation (ECF 62) (the "F&R"), Judge Russo carefully examined Plaintiff's allegations along with the parties' respective arguments for and against dismissal. Judge Russo's reasoning was correct in all instances, except one. Plaintiff objects to only that portion of the F&R.

Expensify held its IPO in November 2021. In its Registration Statement, Defendants touted Expensify's cost-effective "bottom-up" business model. These positive statements were false or, at least, materially misleading in light of recent events that had occurred just prior to the IPO. These events included:

1)    Implementation of a massive price increase for its expense management subscription services resulting in the loss of significant customer contracts and worsening revenue mix;

2)    CEO David Barrett's unsolicited divisive political email to the company's 10 million users threatening that a vote against President Joseph Biden in the 2020 election would be a vote "against democracy" causing irreparable damage to the company's reputation and brand; and

3)    Due to the customer losses and strained partnerships caused by its change in pricing and political solicitations, Expensify abandoned its historical "bottom-up" growth model in favor of a traditional "top-down" approach resulting in further revenue mix volatility and unprecedented marketing expenses.

Between the price increase and political email, many of Expensify's customers decided not to renew their subscriptions. Furthermore, these customers included accounting firms that were highly valuable to Expensify given their ability to easily recommend and implement the company's expense management software with their clients. The fallout that ensued within Expensify's customer base was damaging and, as customer contracts expired over the following quarters, the

1

company's growth and earnings suffered. Expensify's stock price followed the same path and investors who bought in during the IPO ultimately lost *nearly 95%* of their initial investments.

In response to Defendants' motion, Magistrate Judge Russo dismissed Plaintiff's claims concerning Barrett's political email only. This decision was incorrect and contrary to binding case law. Plaintiff did not know about Barrett's email when investing. While Defendants attempted to prove otherwise, their inclusion of just one news article was insufficient to establish as a matter of law that their non-disclosure of the email in the Registration Statement was immaterial. Courts rarely dismiss complaints simply because defendants say the omitted information was publicly available and, according to controlling Ninth Circuit case law, such a defense does not apply to Section 11 claims. In any event, even if Barrett's email was widely reported, the internal fallout it created within Expensify was not public knowledge. Defendants did not and cannot point to any news articles reporting on the customer losses caused by Barrett's email. Plaintiff's allegations in this regard should have been accepted as true and construed in the most favorable light. *See Glazer Capital Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 763 (9th Cir. 2023). If the Court applies the governing standard, this portion of Defendants' motion should be denied as well.

Respectfully, Plaintiff objects to the F&R in this limited capacity, *i.e.*, to the extent it grants Defendants' motion concerning Barrett's political email. The remainder of the F&R should be accepted and adopted.

## II.    LEGAL STANDARD

A court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. §636(b)(1). If a party objects to a magistrate judge's findings and recommendations, "the court shall make a de novo determination of those portions of the report

or specified proposed findings or recommendations to which objection is made." *Id*.; FED. R. CIV. P. 72(b)(3).

## III.    ARGUMENT

### A.    Even If Details of Barrett's Political Email Were Publicly Available, Expensify's Registration Statement Still Violated Section 11 of the Securities Act by Failing to Properly Disclose It.

Magistrate Judge Russo held that the Registration Statement did not violate Section 11 by failing to disclose the political email because "[d]etails of the email were publicly available." F&R at 18-19. The availability of information is ordinarily not a defense to a Section 11 claim at the motion to dismiss stage. Section 11 sounds in strict liability, meaning that liability exists so long as a registration statement contains a false statement or material omission. *See Herman & Maclean v. Huddleston*, 459 U.S. 375, 382 (1983); *Hemmer Grp. v. Sw. Water Co.*, 527 F. App'x 623, 625-26 (9th Cir. 2013) ("Section 11 is a strict liability statute . . . .").

Expensify's Registration Statement most certainly contained a false statement and/or material omission when it comes to the disclosure of Barrett's political email. On the eve of the 2020 election, Barrett told Expensify's nearly 10 million users that "anything less than a vote for Biden is a vote against democracy." ¶¶63-64. The email hit Expensify's "reputation" and "brand" immediately, causing tens of thousands of customers to cancel their contracts in response to what they perceived was a wildly inappropriate use of corporate messaging and betrayal of private data. ¶¶65-93 (listing customer complaints); *see also* ¶¶128, 130 (fallout caused by Barrett's email). Expensify's Registration Statement made no mention of this; instead, the Registration Statement contained a passing reference to "David Barrett's email on October 23, 2020 urging customers to protect democracy" in the context of a risk disclosure about complaints filed with the Federal

3

Election Commission. ¶148.

Magistrate Judge Russo should not have dismissed this claim simply because "[d]etails of the email were publicly available." F&R at 18-19. The record on the motion consisted of just one news article disclosing details of the email. *See id.* (citing ECF 54-1 containing CBS News article titled "CEO Emails 10 million customers to tell them to vote for Biden"). This is insufficient to support a defense of this nature at the pleading stage. Whether the defense is referred to as a "truth-on-the-market" defense or one of "immateriality" (*see* F&R at 19 n.7), the crux of the issues is "materiality." "[E]ven assuming the defense is available for Section 11 claims, it is not available at the motion to dismiss stage. This is because, 'as the Supreme Court and Ninth Circuit have explained, the truth-on-the-market defense is a method of refuting an alleged misrepresentation's materiality.' Materiality is a 'mixed question of law and fact,' and '[p]roof of that sort is a matter for trial.'" *Bos. Ret. Sys. v. Uber Techs., Inc.*, No. 19-cv-06361-RS, 2020 U.S. Dist. LEXIS 141724, at *19 (N.D. Cal. Aug. 7, 2020) (internal citations omitted).

The quote from *Uber Technologies* in the preceding paragraph is supported by cases from both the Ninth Circuit and the Supreme Court. Notwithstanding the binding effect of these cases, Magistrate Judge Russo held to the contrary and dismissed Plaintiff's political email allegations, effectively deciding at the pleading stage that the misleading statements were immaterial as a matter of law. This was error. "[E]ven if the truth-on-the-market defense were available at this juncture, defendants [did] not [meet] their heavy burden of demonstrating it is appropriate on these facts. '[I]nvestors are not generally required to look beyond a given document to discover what is true and what is not.' The volume of the judicially noticed articles might demonstrate that the alleged misstatements and omissions were known to the market, or it might demonstrate that investors like [Plaintiff] would have had to follow all press coverage about [Expensify] quite

4

closely to be on notice of all the alleged facts. At the present juncture, the plausible allegations must be construed in the light most favorable to [Plaintiff]; viewing the facts this way requires the latter inference." *Id*. at *19-20 (quoting *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 887 (9th Cir. 2008)).

The two cases relied upon by Magistrate Judge Russo do not support straying from the binding Ninth Circuit and Supreme Court precedent on this issue, as explained in *Uber Technologies*, *supra*. First, *Rubke v. Capital Bancorp* acknowledges that publicly available information ordinarily does not protect against Section 11 liability, yet applies the defense anyway based on an out-of-district decision from years earlier. *See Rubke v. Capitol Bancorp*, No. C 05-4800 PJH, 2006 U.S. Dist. LEXIS 43745, at *37-38 (N.D. Cal. June 16, 2006) (citing *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 249 (S.D.N.Y. 2003)). That case, *Merrill Lynch*, involved a scenario in which the plaintiff's own complaint demonstrated that the alleged omitted information was publicly available from a "variety of public sources, including SEC filings." *See In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 272 F. Supp. 2d at 249. Here, the contents of Barrett's political email were not disclosed by Expensify at any point and Plaintiff was not aware of it when investing. *See* ¶¶4, 173, 181 (alleging plaintiff unaware of adverse information).

Second, *Barilli v. Sky Solar Holdings, Ltd.* acknowledges that the defense should be applied narrowly and only under certain circumstances. *See Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 255 (S.D.N.Y. 2019). Specifically, the court in *Barilli* dismissed claims concerning the "state of the Japanese solar market" because the "general state of the Japanese solar market" was discussed in "several articles cited by Plaintiffs" and not "uniquely within Defendants' control." *Id*. Unlike the alleged omitted information in *Barilli*, Plaintiff did not possess or know

about Barrett's political email and did not have equal access to it. *Barilli* also notes that application of such a defense should be limited, stating that "mere sporadic media coverage that does not 'clarify or contextualize' an alleged misstatement may be inadequate to place relevant information into the public domain." *Id*. (quoting *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group, PLC*, 709 F.3d 109, 127 (2d Cir. 2013)).

**B.      Defendants Are Still Liable for Failing to Disclose the *Non-Public* Fallout of the Political Email Regardless of Whether the Email Itself Was *Public*.**

By no means does Defendants' one article (the CBS News article) prove at the pleading stage that everyone knew the contents of Barrett's political email. *See Miller*, 519 F.3d at 887; *see also Va. Bankshares v. Sandberg*, 501 U.S. 1083, 1097 (1991) (requiring true statements to reduce risk of "real deception" to "nil"). Even if it did though, Defendants do not and cannot identify any public sources disclosing the immense fallout Expensify suffered internally as a result. *See* ¶¶126-30. Plaintiff cites scores of customer complaints not reported in the media. ¶¶67-68, 70, 73-77, 80-83. Confidential witness allegations further detail the customer fallout caused by the email. ¶¶69, 71, 78-79. This was not reported publicly. By failing to disclose the fallout created by Barrett's political email, the Registration Statement violated Section 11 because it created the false impression that Expensify's reputation, brand, and "happy customer" business model were wholly intact, even when Defendants knew that to be false. ¶¶126-30.

Magistrate Judge Russo dismissed this allegation. F&R at 17-18. In doing so, Magistrate Judge Russo accepted Defendants' argument that paid members increased following Barrett's political email from 630,000 in 3Q20 to 639,000 in 2Q21. F&R at 18 (citing ECF 54-4 at 33). Without conceding this increase is material, the numerical increase in paid members does not disprove Plaintiff's allegation. Paid members at that point in time were locked into non-cancelable

contracts. ¶¶55, 79-81. Thus, paid members who wanted to cancel in response to Barrett's email were unable to do so immediately, thereby keeping the number of Expensify's paid members at artificially inflated levels. Being unable to cancel should not be confused with wanting to cancel or planning to do so at the first opportunity. Furthermore, the *numerical* increase in paid members between 3Q20 and 2Q21 does not outweigh the reality that Expensify's *revenue growth* slowed dramatically beginning in 2Q21 and continued throughout the IPO (which occurred in 4Q21). ¶110. This decline coincides with the mass cancellations allegedly caused by Barrett's political email (as paid member contracts expired and were not renewed).

Section 11 allegations at the motion to dismiss stage must be accepted as true and construed in the light most favorable to plaintiff. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Allegations should not be dismissed if they contains "sufficient factual matter [that], accepted as true, 'state[s] a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008).

Magistrate Judge Russo did not adhere to these principles when dismissing Plaintiff's Section 11 allegations concerning Barrett's political email. Defendants' reference to the email in a risk disclosure did not adequately inform investors of the email's contents or otherwise notify them of the damage it caused and was continuing to cause. Instead, it "create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]." *See In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 949-50 (9th Cir. 2023) (risk warning misleading where user data had already been stolen); *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 702-05 (9th Cir. 2021) (privacy risk that "could" or "may" happen had already materialized).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully objects to the F&R to the extent Magistrate

Judge Russo dismissed Plaintiff's claims concerning Barrett's political email.

Dated: January 21, 2025                    Respectfully Submitted,

                                           **BLACK HELTERLINE LLP**

                                            */s/ Michael B. Merchant*
                                           Michael B. Merchant, OSB No. 882680
                                           805 S.W. Broadway, Suite 1900
                                           Portland, OR 97205
                                           Tel.: (503) 224-5560
                                           Fax: (503) 224-6148
                                           Email: mike.merchant@bhlaw.com

                                           *Liaison Counsel for Lead Plaintiff and the Class*

                                           **LEVI & KORSINSKY, LLP**
                                           Adam M. Apton (admitted *pro hac vice*)
                                           33 Whitehall Street, 17th Floor
                                           New York, NY 10004
                                           Tel.: (212) 363-7500
                                           Fax: (212) 363-7171
                                           Email: aapton@zlk.com

                                           *Lead Counsel for Lead Plaintiff and the Class*

8