Michael B. Merchant, OSB No. 882680
**BLACK HELTERLINE LLP**
805 S.W. Broadway, Suite 1900
Portland, OR 97205
Tel.: (503) 224-5560
Fax: (503) 224-6148
Email: mike.merchant@bhlaw.com

Adam M. Apton (admitted *pro hac vice*)
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Counsel for Lead Plaintiff and the Class*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CODY WILHITE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPENSIFY, INC., DAVID BARRETT, RYAN SCHAFFER, BLAKE BARTLETT, ROBERT LENT, ANU MURALIDHARAN, JASON MILLS, DANIEL VIDAL, TIMOTHY L. CHRISTEN, YING (VIVIAN) LIU, ELLEN PAO, J.P. MORGAN SECURITIES, LLC, CITIGROUP GLOBAL MARKETS INC., BofA SECURITIES, INC., PIPER SANDLER & CO., JMP SECURITIES LLC, and LOOP CAPITAL MARKETS LLC,<br><br>Defendants. | Case No.: 3:23-cv-01784-JR<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION [67]** |

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ...................................................................................1

II.    ARGUMENT .............................................................................................................2

       A.  Rule 8(a)'s Notice Pleading Standard Applies to Plaintiff's Complaint. .....................2

           1.  The case law squarely supports the application of Rule 8(a). ................................3

           2.  Defendants' objection does not comply with Rule 72(b)........................................7

       B.  Defendants Rehash the Same Meritless Arguments about Expensify's Price
           Increase. ..............................................................................................................8

           1.  The Registration Statement disclosed a price increase but concealed its magnitude
               and the impact it had on Expensify's happy customer base..................................10

           2.  The price increase had already harmed Expensify's customer base by the time of
               the IPO...............................................................................................................15

       C.  Defendants Recycle the Same Arguments about Expensify's "Bottom-Up" Model
           Even Though Magistrate Judge Russo Already Rejected Them. ..............................21

       D.  Defendants Still Have Not Established the Affirmative Defense of Negative
           Causation.............................................................................................................27

       E.  Plaintiff Can Pursue Section 15 Control Person Liability. ......................................30

III.   CONCLUSION ........................................................................................................31

# TABLE OF AUTHORITIES

**Cases**

*In re Alphabet, Inc. Sec. Litig.*,
    1 F.4th 687 (9th Cir. 2021) ...............................................................................17

*In re Apple Sec. Litig.*,
    No. 19-cv-02033-YGR, 2020 U.S. Dist. LEXIS 96953 (N.D. Cal. June 2, 2020) ...................25

*Azar v. Yelp, Inc.*,
    No. 18-cv-00400-EMC, 2018 U.S. Dist. LEXIS 200769 (N.D. Cal. Nov. 27, 2018)...............25

*Barker v. Bank of Am., N.A.*,
    No. CV 17-21-BLG-SPW, 2018 U.S. Dist. LEXIS 24403 (D. Mont. Feb. 14, 2018) .. 10, 15, 21

*Berson v. Applied Signal Tech., Inc.*,
    527 F.3d 982 (9th Cir. 2008)...............................................................................20

*Brown v. Ambow Educ. Holding Ltd.*,
    No. CV 12-5062 PSG (AJWx), 2014 U.S. Dist. LEXIS 18809 (C.D. Cal. Feb. 6, 2014) .........9

*Brown v. China Integrated Energy, Inc.*,
    No. CV 11-02559 MMM (PLAx), 2012 U.S. Dist. LEXIS 47019 (C.D. Cal. Apr. 2, 2012)......4

*Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan*,
    806 F. Supp. 380 (W.D.N.Y. 1992)....................................................... 1, 10, 21, 27

*In re CarLotz, Inc. Securities Litigation*,
    No. 21-cv-5906 (AS), 2024 U.S. Dist. LEXIS 61722 (S.D.N.Y. Mar. 29, 2024) ...................26

*Charles Schwab Corp. Sec. Litig.*,
    257 F.R.D. 534 (N.D. Cal. 2009) .........................................................................31

*Citiline Holdings, Inc. v. iStar Fin. Inc.*,
    701 F.Supp.2d 506 (S.D.N.Y. 2010) .....................................................................6

*In re Cloudera, Inc. Securities Litigation*,
    121 F.4th 1180 (9th Cir. 2024).............................................................................6

*In re Countrywide Fin. Corp. Derivative Litig.*,
    554 F.Supp.2d 1044 (C.D. Cal. 2008)....................................................................18

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) ..................................................................4

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005)......................................................................................17

*Eugenia Song v. CIA*,
No. 3:24-cv-697-SB, 2024 U.S. Dist. LEXIS 89211 (D. Or. May 17, 2024)...........................7

*In re Facebook, Inc. Sec. Litig.*,
87 F.4th 934 (9th Cir. 2023)......................................................................................17

*Flynn v. Sientra, Inc.*,
No. CV 15-07548 SJO (RAOx), 2016 U.S. Dist. LEXIS 83409 (C.D. Cal. June 9, 2016).....3, 5

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
97 F.4th 1171 (9th Cir. 2024)...................................................................... 23, 29, 30

*Glazer Capital Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023)..............................................................................passim

*Hemmer Grp. v. Sw. Water Co.*,
527 F. App'x 623 (9th Cir. 2013)..................................................................................9

*Herman & Maclean v. Huddleston*,
459 U.S. 375 (1983) ........................................................................... 13, 14, 28

*Hildes v. Arthur Andersen LLP*,
734 F.3d 854 (9th Cir. 2013).......................................................................................2

*Hoang v. ContextLogic, Inc.*,
No. 21-cv-03930-BLF, 2023 U.S. Dist. LEXIS 228887 (N.D. Cal. Dec. 22, 2023)................24

*In re Honest Co. Sec. Litig.*,
615 F. Supp. 3d 1149 (C.D. Cal. July 18, 2022) ............................................................11, 21

*Hunt v. Bloom Energy Corp.*,
No. 19-cv-02935-HSG, 2021 U.S. Dist. LEXIS 187321 (N.D. Cal. Sep. 29, 2021) ...................5

*Jaeger v. Zillow Grp., Inc.*,
644 F.Supp.3d 857 (W.D. Wash. 2022).......................................................................17

*Jedrzejczyk v. Skillz Inc.*,
No. 21-cv-03450-RS, 2023 U.S. Dist. LEXIS 34282 (N.D. Cal. Mar. 1, 2023) ......................14

*Kerkering v. Nike, Inc.*,
No. 3:22-cv-1790-YY, 2023 U.S. Dist. LEXIS 131903 (D. Or. July 31, 2023).......................7

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018)...................................................................................11, 20

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
   416 F.3d 940 (9th Cir. 2005).........................................................................................9

*Lloyd v. CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016)..................................................................................12, 24

*In re Lucid Grp., Inc. Sec. Litig.*,
   No. 22-cv-02094-AMO, 2024 U.S. Dist. LEXIS 141372 (N.D. Cal. Aug. 8, 2024)................21

*Luong v. Subaru of Am., Inc.*,
   No. 17-cv-03160-YGR, 2018 U.S. Dist. LEXIS 74611 (N.D. Cal. May 2, 2018) ...................18

*Lyzer v. Caruso Produce, Inc.*,
   No. 3:17-cv-1335-SB, 2019 U.S. Dist. LEXIS 196619 (D. Or. Nov. 13, 2019) ........................8

*McCarthy v. Manson*,
   554 F. Supp. 1275 (D. Conn. 1982)...................................................................................1, 10

*Miller v. Thane Int'l, Inc.*,
   519 F.3d 879 (9th Cir. 2008)................................................................................ 12, 14, 24

*Mineworkers' Pension Scheme v. First Solar Inc.*,
   881 F.3d 750 (9th Cir. 2018).......................................................................................29

*Mingbo Cai v. Switch, Inc.*,
   No. 2:18-cv-01471-JCM-VCF, 2019 U.S. Dist. LEXIS 116702 (D. Nev. July 12, 2019)..........5

*Mulligan v. Impax Labs., Inc.*,
   36 F.Supp.3d 942 (N.D. Cal. 2014)....................................................................................17

*Murphy v. Precision Castparts Corp.*,
   No. 3:16-cv-00521-SB, 2017 U.S. Dist. LEXIS 99431 (D. Or. June 27, 2017).......................11

*Nepomuceno v. Cain*,
   No. 2:19-cv-920-AC, 2022 U.S. Dist. LEXIS 8915 (D. Or. Jan. 18, 2022)..............................8

*In re Netflix, Inc. Securities Litigation*,
   No. C04-2978 FMS, 2005 U.S. Dist. LEXIS 18765 (N.D. Cal. June 23, 2005) ......................14

*Okla. Police Pension & Ret. Sys. v. LifeLock, Inc.*,
   780 Fed. App'x 480 (9th Cir. 2019) ..................................................................................18

*Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt., LLC*,
  595 F.3d 86 (2d Cir. 2010)....................................................................................................12

*In re Orange 21 Securities Litigation*,
  No. 05 CV 0595 JM (BLM), 2006 U.S. Dist. LEXIS 104423 (S.D. Cal. Mar. 29, 2006) ..........6

*In re Orion Sec. Litig.*,
  No. 08 Civ. 1328 (RJS), 2009 U.S. Dist. LEXIS 81171 (S.D.N.Y. Aug. 20, 2009)...................6

*Pappas v. Qutoutiao Inc.*,
  No. 23-1233, 2024 U.S. App. LEXIS 27250 (2d Cir. Oct. 28, 2024) ................................3, 5, 6

*Plymouth County Retirement Association v. Array Technologies, Inc.*,
  No. 21-cv-04390 (VM), 2023 U.S. Dist. LEXIS 87744 (S.D.N.Y. May 19, 2023)..................14

*Police Retirement Systems of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014)................................................................................................14

*Rintoul v. Old Dominion Freight Line, Inc.*,
  No. 3:21-cv-1733-JR, 2024 U.S. Dist. LEXIS 105214 (D. Or. June 13, 2024)........................8

*Robb v. Fitbit Inc.*,
  216 F.Supp.3d 1017 (N.D. Cal. 2016) ..............................................................................18, 30

*San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos.*,
  75 F.3d 801 (2d Cir. 1996)....................................................................................................15

*Schueneman v. Arena Pharms., Inc.*,
  840 F.3d 698 (9th Cir. 2016)..................................................................................................23

*Shenwick v. Twitter, Inc.*,
  282 F. Supp. 3d 1115 (N.D. Cal. 2017) ..................................................................................11

*In re Shoretel Inc.*,
  No. C 08-00271 CRB, 2009 U.S. Dist. LEXIS 73316 (N.D. Cal. Aug. 18, 2009) ..................30

*In re Shoretel, Inc. Securities Litigation*,
  No. 08-cv-00271-CRB, 2009 U.S. Dist. LEXIS 11151 (N.D. Cal. Feb. 2, 2009) ...................29

*In re Stac Electronics Securities Litigation*,
  89 F.3d 1399 (9th Cir. 1996)....................................................................................................6

*In re Sterling Foster & Co., Inc., Sec. Litig.*,
  222 F. Supp. 2d 216 (E.D.N.Y. 2002) ......................................................................................9

v

*In re Textainer Partnership Securities Litigation*,
 No. C-05-0969 MMC, 2005 U.S. Dist. LEXIS 40974 (N.D. Cal. Dec. 12, 2005) .............12, 13

*United States v. One Parcel of Real Prop.*,
 73 F.3d 1057 (10th Cir. 1996)........................................................................................7

*Velez-Padro v. Thermo King de Puerto Rico, Inc.*,
 465 F.3d 31 (1st Cir. 2006) ..........................................................................................1, 7

*Vess v. Ciba-Geigy Corp. USA*,
 317 F.3d 1097 (9th Cir. 2003).......................................................................................3, 4

*Vicente v. Washburn*,
 No. 2:20-cv-1548-YY, 2021 U.S. Dist. LEXIS 141769 (D. Or. July 29, 2021)........................8

*In Re Violin Memory Sec. Litig.*,
 No. 13-CV-5486 YGR, 2014 U.S. Dist. LEXIS 155428 (N.D. Cal. Oct. 31, 2014)...................3

*In re Wash. Mut.*,
 259 F.R.D. 490 (W.D. Wash. 2009) .......................................................................30

*Wallace v. Intralinks*,
 No. 11 CV 8861 (TPG), 2013 U.S. Dist. LEXIS 65958 (S.D.N.Y. May 8, 2013) .....................6

*Waswick v. Torrid Holdings, Inc.*,
 No. 2:22-cv-08375-JLS-AS, 2023 U.S. Dist. LEXIS 232992 (C.D. Cal. Dec. 1, 2023)...........25

*Zell v. InterCapital Income Sec., Inc.*,
 675 F.2d 1041 (9th Cir. 1982).......................................................................................9

**Statutes**

15 U.S.C. §77z-1.........................................................................................................12

15 U.S.C. §78u-4 ........................................................................................................12

**Rules**

FED. R. CIV. P. 72.......................................................................................................1, 7

## I.    PRELIMINARY STATEMENT

Objections to Findings and Recommendations are supposed to be narrowly tailored, aimed only at potential errors appropriate for review by the District Court judge. "The goal of the federal statute providing for the assignment of cases to magistrates is to increase the overall efficiency of the federal judiciary." *McCarthy v. Manson*, 554 F. Supp. 1275, 1286 (D. Conn. 1982), *aff'd*, 714 F.2d 234 (2d Cir. 1983). "There is no increase in efficiency, and much extra work, when a party attempts to relitigate every argument which it presented to the Magistrate Judge." *Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992). Defendants take this exact approach and in violation of Federal Rule of Civil Procedure ("Rule") 72(b) attempt to relitigate every issue decided against them. Without anything new in the way of facts or law to justify a different outcome, their objection should be overruled.

Defendants first take issue with Magistrate Judge Jolie A. Russo's decision to evaluate Plaintiff's allegations under Rule 8(a)'s lenient notice pleading standard. Rule 8(a) ordinarily applies to claims under Section 11 of the Securities Act of 1933. Defendants do not dispute this point and, in fact, make no attempt at explaining why Magistrate Judge Russo was wrong or how the supposed error impacted her Honor's Findings & Recommendation (the "F&R"). Such general objections are not entitled to *de novo* review but instead are routinely rejected out of hand for failing to comply with Rule 72(b). *See Velez-Padro v. Thermo King de Puerto Rico, Inc.*, 465 F.3d 31, 32 (1st Cir. 2006) ("Conclusory objections that do not direct the reviewing court to the issues in controversy do not comply with Rule 72(b)").

Defendants next rehash the same arguments they made on the motion to dismiss concerning Plaintiff's price increase and business strategy allegations. Defendants' arguments do not deserve reconsideration and certainly do not warrant a different outcome than the one already decided by

Page 1 -    **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**

Magistrate Judge Russo. Plaintiff's confidential witnesses still demonstrate that Expensify suffered significant fallout from the May 2020 price increases amongst its "happy customer" base followed by a shift from its "bottom-up" business strategy to a "top-down" marketing plan. As Magistrate Judge Russo correctly held, the confidential witness allegations sufficiently support Plaintiff's claims at this stage of the litigation pursuant to the Ninth Circuit's holding in *Glazer Capital Management, L.P. v. Forescout Technologies, Inc.*, 63 F.4th 747, 772 (9th Cir. 2023).

Defendants also replay the same arguments on loss causation from the motion to dismiss. These arguments were not persuasive then and remain unpersuasive now. Loss causation is not even an element for a Section 11 claim. *See Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 859-60 (9th Cir. 2013). At most, Defendants can establish the affirmative defense of negative causation if they prove there is no cognizable set of facts under which they could have caused Plaintiff's damage. This is exceedingly difficult to do, extremely fact intensive, and rarely possible at the pleading stage. Besides simply restating their conclusions regarding Plaintiff's allegations, Defendants offer nothing in addition to what they previously submitted to Magistrate Judge Russo. Thus, there is no reason to reject the F&R's conclusion that Defendants failed to establish the affirmative defense.[1]

## II.    ARGUMENT

### A.    Rule 8(a)'s Notice Pleading Standard Applies to Plaintiff's Complaint.

Defendants claim in conclusory fashion that "it appears at least some of [Magistrate Judge Russo's] analysis is framed by the lower 'plausibility' standard rather than the heightened 'particularity' standard." Defs. Obj. at 14. Defendants' objection should be overruled. First,

---

[1] Citations to "¶__" refer to Plaintiff's Complaint for Violations of Federal Securities Laws (ECF No. 32). Citations to "Defs. Br." and "Defs. Reply Br." refer to Defendants' briefing on the motion to dismiss (ECF Nos. 53, 61). Citations to "Defs. Obj." refers to Defendants' objection to the F&R (ECF No. 67).

Page 2 -    **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**

Plaintiff's Section 11 claims are subject to Rule 8(a)'s notice pleading standard. The case law on this point makes clear that Plaintiff's allegations do not "sound in fraud" and should not be subject to Rule 9(b). Second, Defendants' objection is not "specific" because it does not specify which aspects of Magistrate Judge Russo's F&R applied an incorrect standard or explain why the standard Judge Russo applied should have been different. "General" objections are routinely rejected because they are evaluated under the demanding "clear error" standard. The "clear error" standard requires a definite and firm conviction that a mistake has been committed. Defendants do not meet this standard.

### 1. The case law squarely supports the application of Rule 8(a).

Section 11 violations are subject to Rule 8(a)'s notice pleading standard. *See generally Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) ("Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)."); *see also In re Violin Memory Sec. Litig.*, No. 13-CV-5486 YGR, 2014 U.S. Dist. LEXIS 155428, at *27 (N.D. Cal. Oct. 31, 2014) (analyzing Section 11 claim under Rule 8(a) where, as here, "Plaintiffs have not expressly pleaded fraud, and have pleaded non-fraud bases for liability."). Applying Rule 9(b)'s heightened pleading standard to Plaintiff's allegations would have been improper, especially considering the absence of any fraud-based Exchange Act claims or allegations of scienter. *See Pappas v. Qutoutiao Inc.*, No. 23-1233, 2024 U.S. App. LEXIS 27250, at *7 (2d Cir. Oct. 28, 2024) ("Plaintiff made more than nominal efforts to distinguish the negligence-based claims from the fraud-based claims."); *Flynn v. Sientra, Inc.*, No. CV 15-07548 SJO (RAOx), 2016 U.S. Dist. LEXIS 83409, at *54-55 (C.D. Cal. June 9, 2016) (Rule 8 applied where, as here, plaintiff only "levie[d] fraud allegations against a select few defendants" based upon "specifie[d] unique, particularized facts as to those defendants"); *Brown v. China Integrated*

Page 3 -    **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**

*Energy, Inc.*, No. CV 11-02559 MMM (PLAx), 2012 U.S. Dist. LEXIS 47019, at *13-14 (C.D. Cal. Apr. 2, 2012) (applying Rule 8 where fraud alleged against different defendants); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1163 (C.D. Cal. 2008) (holding it would "eviscerate[] §11" to give Rule 9(b) protection to defendants against whom no fraud has been alleged).

Defendants argue that Magistrate Judge Russo should have applied Rule 9(b)'s heightened pleading standard. Defs. Obj. at 13-14. But like their motion to dismiss briefing, they do not explain why. Plaintiff pleaded *only* Section 11 claims, thereby eliminating any possibility of overlap with fraud-based Section 10(b) claims under the Exchange Act. Moreover, Plaintiff renounced "fraudulent intent" on the part of Defendants (*see* ¶¶163, 176) and relied on classic negligence-style allegations when stating his claim, such as that "[i]n the *exercise of reasonable care*, these Defendants *should have known* of the material misstatements and omissions in the Registration Statement" and that "each of the Underwriter Defendants and Individual Defendants had *a duty to make a reasonable investigation into the statements contained in the Registration Statement*, and other relevant offering materials, to ensure that said statements were true" (¶¶24, 171). *See also* ¶138 ("Defendants *failed to disclose* that at the time of the IPO, Expensify has already materially changed its business model . . . ."); ¶144 ("The Registration Statement *failed to disclose* . . . customers were choosing not [to] continue using Expensify").

Rule 8(a)'s application is supported by numerous cases. For example, the Second Circuit's decision in *Pappas v. Qutoutiao Inc.*, *supra*, is instructive. Citing the Ninth Circuit's decision in *Vess v. Ciba-Geigy Corp. USA*, *supra*, the *Pappas* court applied Rule 8(a) to the plaintiff's Section 11 claims because the "Securities Act claims [were] framed in the classic language of negligence and strict liability: Plaintiff claims that Defendants failed to satisfy their 'duty to make [a]

Page 4 -    **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**

reasonable and diligent investigation' to ensure that the offering documents did not contain misstatements or omissions." *Pappas*, 2024 U.S. App. LEXIS 27250, at *6. The *Pappas* court also relied on the plaintiff's other negligence-based allegations, including "that a 'reasonable investigation' by [the defendants] 'would have revealed that the Offering Documents contained false and/misleading statements and/or omissions.'" *Id*. Plaintiff makes the same allegations (and without any fraud-based allegations elsewhere). Consequently, there should be no question that Rule 8(a) applies. *Id*. at *6-7 ("Such allegations would be evaluated under Rule 8 if contained in a stand-alone complaint alleging violations only of the Securities Act . . . .").

Plaintiff's allegations—and not Defendants' characterization of them—are what controls the issue. There are no fraud-based claims under Section 10(b) in the Complaint. Further, as shown above, Plaintiff alleges that Defendants failed to "exercise reasonable care," that they had a "duty to make a reasonable investigation," and that they "failed to disclose" material information. *See*, *e.g.*, ¶¶24, 138, 144, 171. These are classic examples of negligence-based allegations. Moreover, Plaintiff explicitly renunciates "fraudulent intent." ¶¶163, 176. Accordingly, Plaintiff's allegations sound in negligence (not fraud) and therefore trigger Rule 8(a) (not Rule 9(b)). *See Hunt v. Bloom Energy Corp.*, No. 19-cv-02935-HSG, 2021 U.S. Dist. LEXIS 187321, at *10-11 (N.D. Cal. Sep. 29, 2021) (holding "Rule 8(a) pleading standard applies" because "Plaintiffs have explicitly disavowed 'any allegation that any Section 11 Defendant engaged in fraud'"); *Mingbo Cai v. Switch, Inc.*, No. 2:18-cv-01471-JCM-VCF, 2019 U.S. Dist. LEXIS 116702, at *14 (D. Nev. July 12, 2019) (applying "notice pleading standard under Rule 8(a)" because plaintiff alleged that "defendants negligently signed the registration statement, which contained material misrepresentations and omissions"); *Flynn*, 2016 U.S. Dist. LEXIS 83409, at *54-55 (holding Section 11 claims subject to "standards imposed by Rule 8" where "Plaintiffs allege that

Page 5 -    **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**

Underwriter Defendants failed to conduct a reasonable investigation or did not possess a reasonable basis for the belief that the statements contained in the Registration Statement were true").

Defendants tried to sidestep these allegations in their motion to dismiss briefing, focusing instead on Plaintiff's allegation that "undisclosed facts were known" by Defendants. Defs. Br. at 9-10 (citing ¶140). Defendants were incorrect. "'[T]hat a fact was known and not disclosed does not mean, as a matter of law, that the circumstances of the resulting omission sound in fraud.'" *Pappas*, 2024 U.S. App. LEXIS 27250, at *7-8 (quoting *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2009 U.S. Dist. LEXIS 81171, at *6 (S.D.N.Y. Aug. 20, 2009)); *see also Wallace v. Intralinks*, No. 11 CV 8861 (TPG), 2013 U.S. Dist. LEXIS 65958, at *33-34 (S.D.N.Y. May 8, 2013) ("[T]he allegations that [defendant] failed to disclose a *known* uncertainty supports the claim of Section 11 and 12(a)(2) liability pursuant to Regulation S-K, which plaintiffs are able to allege without requiring the application of Rule 9(b).") (emphasis in original); *Citiline Holdings, Inc. v. iStar Fin. Inc.*, 701 F. Supp. 2d 506, 513 (S.D.N.Y. 2010) ("'[T]hat a fact was known and not disclosed does not mean, as a matter of law, that the circumstances of the resulting omission sound in fraud.'").

Defendants' authority does not change the outcome on this issue. In *In re Orange 21 Securities Litigation*, No. 05 CV 0595 JM (BLM), 2006 U.S. Dist. LEXIS 104423 (S.D. Cal. Mar. 29, 2006), the plaintiffs alleged that the defendants knew adverse information and intentionally withheld it from investors in order to "complete the IPO because the company 'desperately' needed cash." *Id.* at *6. Plaintiff does not make any similar allegations of motive or intentional conduct. Defendants also cite *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1404-05 (9th Cir. 1996), and *In re Cloudera, Inc. Securities Litigation*, 121 F.4th 1180, 1186 (9th Cir. 2024), for the

Page 6 -    **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**

general proposition that Rule 9(b) applies to Section 11 claims that are "grounded in fraud." Plaintiff's claims are not "grounded in fraud" but instead, as shown above, sound in negligence and arise from Defendants' failure to exercise reasonable care in terms of the disclosures they made in the Registration Statement. *See*, *e.g.*, ¶¶24, 138, 144, 171.

### 2. Defendants' objection does not comply with Rule 72(b).

Defendants do not reassert the above arguments in their Objection or explain why Magistrate Judge Russo should have applied Rule 9(b). Instead, Defendants claim only that "it appears at least some of [Magistrate Judge Russo's] analysis is framed by the lower 'plausibility' standard rather than the heightened 'particularity' standard." Defs. Obj. at 14. Defendants do not identify which portions of Magistrate Judge Russo's analysis applied Rule 8(a) or otherwise explain why her Honor was incorrect to have done so. This does not qualify as a specific "objection" for the purposes of complying with Rule 72(b). *See Eugenia Song v. CIA*, No. 3:24-cv-697-SB, 2024 U.S. Dist. LEXIS 89211, at *2-3 (D. Or. May 17, 2024) ("A 'general' objection to a Findings and Recommendation does not meet the 'specific written objection[]' requirement of Rule 72(b) of the Federal Rules of Civil Procedure") (citing *Velez-Padro*, 465 F.3d at 32 ("Conclusory objections that do not direct the reviewing court to the issues in controversy do not comply with Rule 72(b)")); *see also United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996) ("only an objection that is sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute will advance the policies behind the Magistrate's Act"); *Kerkering v. Nike, Inc.*, No. 3:22-cv-1790-YY, 2023 U.S. Dist. LEXIS 131903, at *3 (D. Or. July 31, 2023) ("Plaintiffs offer no argument for several of their objections, instead simply identifying certain of Judge You's findings and conclusions and stating that they are legal error.").

Page 7 -   **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**

Without identifying the specific portions of the F&R applying the wrong pleading standard, Defendants' objection concerning the application of Rule 8(a) must be reviewed for "clear error." *Nepomuceno v. Cain*, No. 2:19-cv-920-AC, 2022 U.S. Dist. LEXIS 8915, at *3 (D. Or. Jan. 18, 2022); *accord Lyzer v. Caruso Produce, Inc.*, No. 3:17-cv-1335-SB, 2019 U.S. Dist. LEXIS 196619, at *2 (D. Or. Nov. 13, 2019); *Vicente v. Washburn*, No. 2:20-cv-1548-YY, 2021 U.S. Dist. LEXIS 141769, at *2-3 (D. Or. July 29, 2021). "[R]eview under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed. The reviewing court may not simply substitute its judgment for that of the deciding court." *Rintoul v. Old Dominion Freight Line, Inc.*, No. 3:21-cv-1733-JR, 2024 U.S. Dist. LEXIS 105214, at *3 (D. Or. June 13, 2024) (internal quotations and citations omitted). Magistrate Judge Russo did not commit "clear error" and Defendants have not shown otherwise. Consequently, Defendants' objection on this point should be overruled.

## B.     Defendants Rehash the Same Meritless Arguments about Expensify's Price Increase.

Magistrate Judge Russo correctly denied Defendants' motion to dismiss concerning statements about Expensify's May 2020 price increases. These price increases were in some cases as much as 300% and, as alleged, negatively impacted Expensify's ability to retain and grow its happy customer base. F&R at 13, 15; *see also* ¶¶54-62.[2] Defendants did not disclose in the Registration Statement the "substantial percentages" of the price increases or the adverse effects they had on Expensify's business. F&R at 15; *see also* ¶¶121-25. Magistrate Judge Russo held, in pertinent part, that: "At this stage of the litigation, the Court cannot find that the alleged omission

---

[2] Defendants claim that Plaintiff did not allege price increases of 300%. Defs. Obj. at 18. Defendants are wrong. Plaintiff alleged that pay-per-use member prices increased from $5 to $20 for *Collect* subscriptions and $9 to $36 for *Control* subscriptions. Thus, prices increased 300% for pay-per-use members. *See* ¶55.

Page 8 -    **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**

is not so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." F&R 15-16 & n.5 (citing *Brown v. Ambow Educ. Holding Ltd.*, No. CV 12-5062 PSG (AJWx), 2014 U.S. Dist. LEXIS 18809, at *38-39 (C.D. Cal. Feb. 6, 2014)). Magistrate Judge Russo also rejected Defendants' efforts to disprove Plaintiff's allegations based on a supposed "rebound" of subscribers after the IPO, reasoning that Plaintiff's allegations about the non-cancelability of Expensify's subscriber contracts adequately explained the "delay of the full impact of the increase." F&R at 16; *see also* ¶¶55, 79, 80, 122.

Magistrate Judge Russo's holding is consistent with binding precedent on the issue of materiality. "Although a court may dismiss a claim on the ground that a misstatement or omission was not material, the standard for doing so is high. In fact, 'a complaint may not properly be dismissed pursuant to Rule 12(b)(6) . . . on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.'" *Brown*, 2014 U.S. Dist. LEXIS 18809, at *38 (quoting *In re Sterling Foster & Co., Inc., Sec. Litig.*, 222 F. Supp. 2d 216, 262-63 (E.D.N.Y. 2002)). A defendant must make a "stringent showing" in this regard to obtain dismissal. *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 947 (9th Cir. 2005). Defendants did not carry their burden here and, as such, Magistrate Judge Russo correctly rejected their invitation to dismiss Plaintiff's complaint on immateriality. *See Hemmer Grp. v. Sw. Water Co.*, 527 F. App'x 623, 626 (9th Cir. 2013) ("Materiality should be resolved as a matter of law in the defendant's favor 'only if the omitted fact is so obviously unimportant that no reasonable shareholder could have viewed it as significantly altering the 'total mix' of information made available to stockholders.'" (quoting *Zell v. InterCapital Income Sec., Inc.*, 675 F.2d 1041, 1045 (9th Cir. 1982))). Contrary to Defendants' arguments, the misstatements alleged in the complaint

Page 9 -    **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**

were material and not obviously unimportant.

Defendants do not take issue with any specific aspect of Magistrate Judge Russo's holding but instead rehash virtually all the arguments they previously asserted on the motion to dismiss. "Objections to a magistrate's Findings and Recommendations are not a vehicle for the losing party to relitigate its case." *Barker v. Bank of Am., N.A.*, No. CV 17-21-BLG-SPW, 2018 U.S. Dist. LEXIS 24403, at *4 (D. Mont. Feb. 14, 2018). "The goal of the federal statute providing for the assignment of cases to magistrates is to increase the overall efficiency of the federal judiciary." *McCarthy*, 554 F. Supp. at 1286. "There is no increase in efficiency, and much extra work, when a party attempts to relitigate every argument which it presented to the Magistrate Judge." *Camardo*, 806 F. Supp. at 382. Defendants' arguments from the motion to dismiss do not warrant reconsideration let alone a different outcome, as explained below.

### 1. The Registration Statement disclosed a price increase but concealed its magnitude and the impact it had on Expensify's happy customer base.

Defendants argue that they adequately disclosed the May 2020 price increases and conveyed "the magnitude" of the price increases by describing them as a "primary driver of revenue growth." Defs. Obj. at 15-16. Defendants also claim they sufficiently warned investors that the price increases could negatively impact revenue and membership. *Id*. at 17. Defendants made these exact same arguments in the motion to dismiss briefing. *See* Defs. Br. at 11-13; Defs. Reply Br. at 4-6. These arguments were meritless on the motion to dismiss and continue to be meritless now.

The Registration Statement referenced the May 2020 price increase in passing when discussing Expensify's revenue at the time of the IPO. ¶121. It said nothing about the extent of the price increase (double and/or tripling of prices) or the negative effects it caused (canceled

Page 10 -   **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**

subscriptions leading to increased reliance on pay-per-use users). ¶¶122-23, 125. Instead, Defendants presented the price increase as a positive development in terms of its year-over-year revenue growth, thereby triggering a duty to disclose adverse information too, *i.e.*, the negative impact it had on customer retention. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1010 (9th Cir. 2018) ("once Orexigen chose to tout the apparently positive 25 percent interim results, [it] had the obligation also to disclose that they were likely unreliable"). Defendants' omission in this regard left investors with no way of assessing the true benefits (or weaknesses) of the price increase. *See Murphy v. Precision Castparts Corp.*, No. 3:16-cv-00521-SB, 2017 U.S. Dist. LEXIS 99431, at *23-28 (D. Or. June 27, 2017) (defendants misled investors when discussing ability to "generate sustainable organic growth" without also disclosing that recent growth was attributable to "pulling in sales to pursue its quarterly goals"); *see also In re Honest Co. Sec. Litig.*, 615 F. Supp. 3d 1149, 1156 (C.D. Cal. July 18, 2022) (denying motion to dismiss where defendants "touted increased consumer demand for Honest products due to COVID-19" without disclosing that "COVID-19 related product demand was declining" and "retailers were destocking COVID-19 products"); *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1135-40 (N.D. Cal. 2017) (defendants provided positive information about "monthly active users" while omitting adverse information about "daily active users").

By concealing the adverse effects caused by the price increases, Defendants omitted material adverse information that should have been disclosed. Defendants attempt to get around this point by arguing that, "[i]n quantifying increased revenues driven by the May 2020 price change, Expensify *in essence* quantified the magnitude of the price increase." Defs. Obj. at 16 (emphasis added). However, disclosing the "essence" of information is insufficient. "'The veracity of a statement or omission is measured not by its literal truth, but by its ability to accurately inform

Page 11 -  **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**

rather than mislead prospective buyers.'" *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016) (quoting *Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt., LLC*, 595 F.3d 86, 92 (2d Cir. 2010)). Indeed, Section 11 of the Securities Act gives investors a right to full disclosure and not just a chance to "connect the dots." *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 887 (9th Cir. 2008) ("[I]nvestors are not generally required to look beyond a given document to discover what is true and what is not.").

Defendants cite a handful of new cases in their objection but none supports changing the F&R. Defendants rely most heavily on *In re Textainer Partnership Securities Litigation*, No. C-05-0969 MMC, 2005 U.S. Dist. LEXIS 40974 (N.D. Cal. Dec. 12, 2005), because it involves a set of defendants that allegedly failed to disclose a "price increase." Defs. Obj. at 17. Aside from those two words though (*i.e.*, price increase), *Textainer* has very little in common with the case at bar. The plaintiff in *Textainer* sued the defendants under Section 14(a) of the Exchange Act (and not Section 11 of the Securities Act). Section 14(a) claims are subject to the PSLRA's "heightened pleading standard" unlike Section 11 claims which only need to satisfy Rule 8(a)'s notice pleading standard. *See In re Textainer P'ship Sec. Litig.*, 2005 U.S. Dist. LEXIS 40974, at \*16 ("the Court finds the heightened pleading standard applies to § 14(a) claims"). *Compare* 15 U.S.C. §77z-1 (governing Securities Act class actions) *with* 15 U.S.C. §78u-4(b) (governing Exchange Act class actions).

In addition to the different pleading standards, the facts in *Textainer* are also distinguishable. The plaintiff's Section 14(a) claims focused on allegedly false and misleading omissions in a proxy statement concerning the sale of company assets (shipping containers) to another entity. Shareholder approval was necessary for the sale, which led to the issuance of the proxy statement. The plaintiff argued that the market value of the shipping containers increased

Page 12 -   **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**

by 18%-20% from the initial date of the sale to the time of the proxy statement yet the proxy statement did not disclose the increase in value (thereby misrepresenting the benefits and/or terms of the asset sale). *See In re Textainer P'ship Sec. Litig.*, 2005 U.S. Dist. LEXIS 40974, at *17-19.

Applying the "heightened pleading standard [applicable] to §14(a) claims" (*id*. at *16), the court held that the plaintiff failed to identify "with the particularity required by the PSLRA" why the defendants' "omission of the degree of increase in the price of containers" caused the proxy statement to be materially misleading (*id*. at *20). The court noted that the plaintiff "fail[ed] to allege that the market prices for containers were not readily publicly available" and that it was "expect[ed] that investors in a limited partnership whose sole assets were shipping containers would be aware of general trends in the market for such containers." *Id*. at *20-21. Further, the court held that the plaintiff "fail[ed] to allege that the alleged price increase applie[d] to the particular type of containers owned by [the defendants]." *Id*. at *21-22. Given the heightened pleading standard applicable to the plaintiff's claim, the court declined to "assume that general market prices for new and/or used containers necessarily would apply to containers encumbered by long-term leases" owned by the defendants. *Id*. at *23-24.

The facts in *Textainer* are not analogous to what is presently before the Court. Expensify increased its pricing not by 18%-20% but by as much as 300%. The amount and magnitude of the price increases was not publicly available. The fallout created by the price increases was also not publicly available. *See* ¶¶121-25. Moreover, as stated earlier, even if Expensify disclosed the "essence" of the price increase magnitude through year-over-year revenue figures (Defs. Obj. at 16), the Securities Act requires more. Congress designed the Securities Act as a form of consumer protection "to assure compliance with the disclosure provisions . . . by imposing a stringent standard of liability on the parties who play a direct role in a registered offering." *Herman &*

Page 13 -  **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**

*Maclean v. Huddleston*, 459 U.S. 375, 381-82 (1983). The Securities Act purposefully replaces the rule of *caveat emptor* with a strict duty on the part of the issuer to accurately disclose relevant financial and operational information. *See Miller*, 519 F.3d at 887. Accordingly, claims under the Securities Act are very different from claims made pursuant to the Exchange Act and, as the Supreme Court has observed, pleading Securities Act claims "places a relatively minimal burden on a plaintiff." *Herman & Maclean*, 459 U.S. at 381-82.

Defendants' other new cases are also meritless. *See* Defs. Obj. at 15-16. They generally stand for the noncontroversial premise that defendants are "not obligated to disclose any and all metrics relevant to their business – just those that, if omitted, would 'create an impression of a state of affairs that differs in a material way from the one that actually exists.'" *Jedrzejczyk v. Skillz Inc.*, No. 21-cv-03450-RS, 2023 U.S. Dist. LEXIS 34282, at *13 (N.D. Cal. Mar. 1, 2023). In *Jedrzejczyk*, the court held that the plaintiff failed to adequately explain why the defendants were obligated to disclose "average revenue per paying user" in addition to the company's existing disclosures about "average revenue per user" and "monthly average users." *Id.* at *13-14. Similarly, in *In re Netflix, Inc. Securities Litigation*, No. C04-2978 FMS, 2005 U.S. Dist. LEXIS 18765, at *18-19 (N.D. Cal. June 23, 2005), the court held that the defendants did not need to disclose "the number of subscriber cancellations" because it "could be easily calculated" using other "accurately disclosed" information. In *Plymouth County Retirement Association v. Array Technologies, Inc.*, No. 21-cv-04390 (VM), 2023 U.S. Dist. LEXIS 87744, at *53-55 (S.D.N.Y. May 19, 2023), omissions concerning the "minutiae of steel futures trends" were immaterial as a matter of law because the plaintiffs already had access to relevant "public information" and defendants adequately disclosed "uncertainties and trends" relating to the steel market. *Police Retirement Systems of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014),

Page 14 -   **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**

and *San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 810 (2d Cir. 1996), are no different; in both cases, the defendants were not obligated to disclose information beyond what was already in their public statements because their public statements did not create a false or misleading impression.

These cases involve allegations markedly different than those in Plaintiff's complaint. As Magistrate Judge Russo held, "the alleged price increase in some cases was as much as 300% and while exact numbers may not need to be provided, the substantial percentages allegedly should have been. At this stage of the litigation, the Court cannot find that the alleged omission is not so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." F&R at 15-16 & n.5 (noting that "the plausibility of materiality increases" in light of the fact that "Expensify highlighted the [price] increase as positively impacting profits"). Accepting that the price increase negatively impacted Expensify's ability to retain and grow its happy customer base (¶¶54-62, 121-25), Magistrate Judge Russo was correct in holding that Plaintiff adequately alleged a Section 11 violation under Rule 8(a)'s notice pleading standard (F&R at 15-16).

> **2. The price increase had already harmed Expensify's customer base by the time of the IPO.**

Defendants' argument on this point is no different than the argument they raised initially on the motion to dismiss. *Compare* Defs. Obj. at 18-25 *with* Defs. Br. at 12-17. They have not added anything new in the way of facts or law to justify *de novo* reconsideration let alone a different outcome. *See*, *e.g.*, *Barker*, 2018 U.S. Dist. LEXIS 24403, at *4 ("Objections to a magistrate's Findings and Recommendations are not a vehicle for the losing party to relitigate its case."). The crux of their argument is that Plaintiff did not adequately allege that the price increases

Page 15 -  **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**

had negatively impacted Expensify by the time of the IPO. Defendants are wrong.

As alleged, on May 1, 2020, Expensify doubled (and in some cases tripled) its prices. ¶¶54-56, 59. Expensify also made its annual contracts non-cancelable. ¶55. This caused many customers to stop using Expensify, and as a result, Expensify's revenue bottomed out in 2Q20. ¶¶58, 110. Paid members declined by more than 15% in 2Q20, as compared to the previous quarter ended March 31, 2020. ¶58. Expensify tried to retain these customers by offering pricing promotions, but the promotions were contingent upon customers registering for the company's new "Expensify Card," which many customers rejected. ¶59. Customer retention issues worsened as Expensify reduced customer support following the price increases and competitors such as Ramp, Brex, Divvy introduced expense management platforms of their own that did not charge a subscription fee. ¶¶60-61. Consequently, Expensify's price increases prompted immediate declines in customers and negatively impacted growth in advance of the IPO. ¶62.

Defendants downplayed these allegations on the motion to dismiss by characterizing them as conclusory because Plaintiff's confidential witnesses were unreliable and contradicted by data showing that the price increases led to an increase in subscribers. Magistrate Judge Russo correctly rejected Defendants' arguments, holding that "[P]laintiff alleged, and the [Registration Statement] noted, that contracts became non-cancelable at the time of the price increase allowing for the plausible inference of a delay of the full impact of the increase. . . . While the [Registration Statement] also notes somewhat of a rebound following the initial dip in subscribers, the Court is not in a position to weigh the materiality of the alleged omission at this stage." F&R at 16. With respect to Expensify's supposed "increase" in subscribers and Plaintiff's confidential witnesses, Magistrate Judge Russo held that "the locked in contracts plausibly had the effect of delaying defections" and Plaintiff's confidential witnesses sufficiently alleged that Expensify's decline in

Page 16 -   **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS &**
            **RECOMMENDATION**

subscribers was caused at least in part by the May 2020 price increases. *Id.* at 16 n.6.

Defendants raise the same arguments in their objection but do not provide any basis for upsetting Magistrate Judge Russo's holding. Defendants portrayed the price increase as a positive when discussing Expensify's year-over-year revenue growth. ¶121. However, Defendants misled investors by omitting adverse information concerning its effect on the company's ability to retain and grow its "happy customer" base. *See* ¶¶122-23, 125. Although Defendants warned investors that "[w]e recently increased our subscription prices" (Defs. Obj. at 17, 19, 21), they claimed to be unaware "if these price increases will adversely affect our business." ¶124. This was false because fallout from the price increases had already materialized. ¶125; *see also* ¶¶146-47 (Regulation S-K violation). "[A] company may make a materially misleading statement when it 'speaks entirely of as-yet-unrealized risks' when the risks have 'already come to fruition.'" *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 950 (9th Cir. 2023) (risk warning misleading where user data had already been stolen); *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 702-05 (9th Cir. 2021) (privacy risk that "could" or "may" happen had already materialized).

Plaintiff's confidential witness allegations establish (at least at the pleading stage) that the negative effects of the price increases had already begun at the time of the IPO, contrary to what Defendants argue. Relying on "confidential witnesses" is routine practice. Allegations from confidential sources are perfectly acceptable where, as here, the complaint describes them "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005). This is not a high standard. In *Daou*, the plaintiffs met their burden by "number[ing] each witness and describ[ing] his or her job description and responsibilities." *Id.* at 1016; *Jaeger v. Zillow Grp., Inc.*, 644 F. Supp. 3d 857, 866 n.5 (W.D. Wash. 2022); *Mulligan v. Impax Labs.,*

*Inc.*, 36 F. Supp. 3d 942, 963 (N.D. Cal. 2014).

As demonstrated previously before Magistrate Judge Russo, Plaintiff easily meets this standard. Each confidential witness is numbered and described with sufficient detail to provide a reliable basis for crediting his/her allegations by, for example, providing dates of employment and job responsibilities. *See* ¶¶29-41 (providing foundation for confidential witness allegations). Moreover, Plaintiff's confidential witnesses corroborate one another and collectively tell a "plausible and coherent narrative." *Okla. Police Pension & Ret. Sys. v. LifeLock, Inc*., 780 Fed. App'x 480, 484 n.5 (9th Cir. 2019); *see also Forescout*, 63 F.4th at 772 (crediting CW allegations where there was "consistency between the [CW's] statements"). To be sure, CW3, CW4, and CW7 describe material changes in the way Expensify conducted business in the lead up to the IPO. ¶¶92-94. CW1, CW5, and CW7 speak to the customer dissatisfaction over Expensify's pricing model. ¶¶58, 60-61. CW1, CW4, CW5, and CW6 provide similar accounts of the grave negative reaction to Barrett's October 2020 email. ¶¶69, 71, 78-79. Their accounts are also corroborated by customer complaints. ¶¶66-68, 70, 72-77, 80-83. This level of corroboration by, between, and among Plaintiff's confidential witness allegations proves Defendants' argument is meritless. *See* F&R at 16 n.6; *see also Luong v. Subaru of Am., Inc.*, No. 17-cv-03160-YGR, 2018 U.S. Dist. LEXIS 74611, at *13 (N.D. Cal. May 2, 2018) (finding "prior testing, analysis, and consumer complaints" supportive of the allegation that "Subaru had knowledge of the falsity of its representations"); *Robb v. Fitbit Inc.*, 216 F. Supp. 3d 1017, 1029 (N.D. Cal. 2016) (finding "the customer complaints, studies, and confidential witness statements in the Amended Complaint" supportive of falsity); *In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1058-59 (C.D. Cal. 2008) ("numerous confidential witnesses . . . span[ning] different levels of the Company hierarchy . . . remain consistent across different time periods . . . [and] tell what is essentially the

Page 18 -  **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS &
RECOMMENDATION**

same story").

Defendants also raise the same arguments with respect to CW1 and CW7 that they raised on the motion to dismiss. *Compare* Defs. Obj. at 24-25 *with* Defs. Br. at 15-17. Defendants claim these witnesses were not in positions to know the information they provided, *i.e.*, customer reaction to the price increases and the effect it had on retention rates. Yet CW1 worked in the "strategic sales lead & lead department" from March 2018 to June 2020 and as a "sales manager and channel partner manager" until April 2023. ¶29. During his tenure, he managed a team of sales representatives responsible for customer onboarding and was responsible for relationships with some of Expensify's top 100 accounting clients. ¶30. Accordingly, CW1 undoubtably communicated with existing customers and can plausibly speak to customers being "outraged" about the price change and the residual impact on retention rates and seat expansion. ¶¶30, 58. Likewise, CW7 joined Expensify in March 2021 and was therefore at the company prior to, during, and after the IPO and witnessed how Expensify's customer support operations changed over that time as the company's customer base shifted. ¶¶41, 60, 93. Thus, Magistrate Judge Russo correctly held that Plaintiff described the witnesses with sufficient particularity to establish their reliability and knowledge at the pleading stage when discussing customer retention. *See* F&R at 16 n.6.

The confidential witness allegations are also corroborated by Expensify's own user information. From a high of 742,000 in the quarter ended March 31, 2020, paid members dropped significantly to 630,000 in the following quarter ended June 30, 2020 (*i.e.*, the quarter in which the May 2020 price increases went into effect). *See* Registration Statement, ECF No. 54-4 at 100. Paid members remained depressed through the IPO without any disclosure that the May 2020 price increases were to blame. *See*, *e.g.*, ¶¶122-23, 125. Defendants try to create inconsistencies in Plaintiff's allegations by noting that some of Expensify's contracts became non-cancelable. Defs.

Page 19 -    **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS &
            RECOMMENDATION**

Obj. at 21-22. However, the non-cancelable status of these contracts explains why the effects of the May 2020 price increases "lagged" and, in turn, kept Expensify's paid members roughly 15% below the levels that existed before the price increases went into effect. *See* ¶¶55, 58-62. Defendants' argument also ignores that Expensify's growth started to slow dramatically before, during, and after the IPO, which further substantiates Plaintiff's allegations and corroborates the confidential witnesses. *See* ¶¶110 (chart illustrating slowing revenue growth beginning 2Q21 and continuing to present). Defendants make no attempt at rebutting this claim or otherwise trying to show that the May 2020 price increases did *not* impede Expensify's growth once the non-cancelable contracts expired.

Plaintiff's allegations were, and are, entitled to be accepted as true at the pleading stage. *See Forescout*, 63 F.4th at 763. Nevertheless, Defendants insert their own narrative into the mix by claiming that "the COVID-19 pandemic" and not the May 2020 price increases was what truly caused Expensify's subscribers to cancel contracts. Defs. Obj. at 20; *see also* Defs. Br. at 14-15. Defendants made the same argument on the motion to dismiss and, once again, no reason exists to upset Magistrate Judge Russo's holding. F&R at 16 n.6 ("To what extent the initial drop was from the pandemic, or the [May] 2020 price increase is not for the Court to weigh at this stage."). These arguments are improper. Alternative sets of facts cannot be introduced at the pleading stage. *See Khoja*, 899 F.3d at 998 (". . . the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery."); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (factual "disputes must at least await discovery"). Plaintiff's allegations show that the May 2020 price increases negatively affected Expensify's business by *inter alia* losing customers and slowing the rate of growth until eventually turning negative, proving that the company's historical

Page 20 -   **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS &**
            **RECOMMENDATION**

"bottom up" strategy was no longer working. *See* ¶¶58-62 (price increases negatively impacted customer retention after Q3 and Q4 2020). As such, Defendants misled investors by omitting these facts from the Registration Statement. *See In re Lucid Grp., Inc. Sec. Litig.*, No. 22-cv-02094-AMO, 2024 U.S. Dist. LEXIS 141372, at *45-46 (N.D. Cal. Aug. 8, 2024) (statements attributing production problems to "supply chain and logistics issues" actionable because they "concealed that Lucid's own internal operational failings had materialized, which was something instead unique to Lucid and unrelated to the pandemic"); *In re Honest*, 615 F. Supp. 3d at 1155 (rejecting defendants' proposed counter-factual narrative where "online reviews excerpted in the Consolidated Complaint suggests that customer canceled subscriptions and stopped purchasing Honest products after the first quarter of 2021").

C.    **Defendants Recycle the Same Arguments about Expensify's "Bottom-Up" Model Even Though Magistrate Judge Russo Already Rejected Them.**

Once again, Defendants raise the same arguments from their motion to dismiss in an attempt to relitigate the issues. "Objections to a magistrate's Findings and Recommendations are not a vehicle for the losing party to relitigate its case." *Barker*, 2018 U.S. Dist. LEXIS 24403, at *4; *see also Camardo*, 806 F. Supp. at 382. A cursory review shows easily that Defendants' current arguments are nothing more than mere repackaging of the arguments they previously raised before Magistrate Judge Russo. *Compare* Defs. Obj. at 25 ("Plaintiff does not plead facts indicating that Expensify 'abandoned' its 'bottom-up' business model before the IPO") *with* Defs. Br. at 20 ("Plaintiff claims the Registration Statement's discussion of Expensify's business model was misleading because Expensify had "abandoned its 'bottom-up' marketing strategy at the time of the IPO and transitioned to a traditional top-down marketing strategy." *E.g.*, ¶ 132. But Plaintiff cannot point to any factual allegation to support that conclusory assertion"). Defendants do not

provide any justification for rejecting Magistrate Judge Russo's holding.

When addressing these arguments in the first instance, Magistrate Judge Russo considered Plaintiff's allegations and correctly held that, "[P]laintiff alleges, prior to the IPO, Expensify abandoned this model when it hired 60 sales development representatives, shifted focus from promoting existing customer retention and expansion to the number of people it could onboard per month, and made a big push in new advertising. Amended Class Action Complaint (ECF 32) at ¶¶ 92, 93, 94. Plaintiff asserts according to confidential witness 3, 'there was a notable downward shift in demand for brand content after the Company went public.' *Id*. at ¶ 94. Indeed, plaintiff notes the shift as nearly doubling from pre-IPO advertising expenditures and continuing through the quarter ending September 30, 2023. *Id*. at ¶ 96. . . . These expenses plausibly allege a change in the business model and strategy. While development of the record may demonstrate Expensify continued its bottom-up model, at this stage of the proceedings, the Court takes the allegations as true, and the allegations allow for a plausible inference in a shift in strategy." F&R at 19-20.

Magistrate Judge Russo also rejected Defendants' argument concerning Plaintiff's confidential witnesses. Similar to her Honor's holding in the context of the price increases, Magistrate Judge Russo rejected Defendants' efforts to discredit the confidential witnesses. In pertinent part, Magistrate Judge Russo held: "Defendants again take issue with the credibility and knowledge of the confidential witnesses. However, [P]laintiff sufficiently alleges the witnesses have knowledge over the matters they address. *E.g.*, Amended Class Action Complaint (ECF 32) at ¶¶ 33-34 (witness worked as marketing designer from April 2019 to May 2022 on advertising campaigns). The adequacy of the allegations does not depend on each CW possessing inside knowledge about corporate-level trends; [P]laintiff need only provide a basis for each witness's knowledge about the specific statements made." F&R at 20 n.7 (citing *Forescout*, 63 F.4th at 771).

Page 22 -   **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**

To be certain, Expensify repeatedly lauded its "bottom-up" business model throughout the Registration Statement while at the same time failing to disclose that it was broken and already replaced by a traditional "top down" marketing strategy. ¶¶85, 89-98. The "bottom-up" model depended on Expensify's ability to maintain its strong "reputation" and "brand" among its "happy customer" base. ¶¶2, 47-48, 52. Following the May 2020 price increase and October 2020 political email, those levers had all but vanished leaving Expensify in need of a new growth strategy. ¶¶3-4, 62,84, 89. The Registration Statement did not disclose this but instead created the false impression that the "bottom-up" strategy was intact and remained the cornerstone of Expensify's historical and future success. ¶¶131, 135. Defendants were required to discuss these items "in a manner that [would not] mislead investors." *Schueneman v. Arena Pharms., Inc*., 840 F.3d 698, 705-06 (9th Cir. 2016) (defendants required to disclose negative information about "Rat Study" once they told public that "animal studies supported [drug's] safety"); *see also In re Genius Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1181-83 (9th Cir. 2024) (finding statements materially misleading because Genius affirmatively represented "it had not hired anyone to solicit its securities, when, in reality, it had compensated PennyStocks to publish favorable articles."); *Forescout*, 63 F.4th at 771 (concluding that "[w]hen Defendants 'repeatedly reassured investors during the class period that the number … of prospective sales in the pipeline was unchanged … and reassured them that the pipeline was full and growing,' they 'affirmatively create[d] an impression of a state of affairs.'").

Defendants argue that these allegations are not inconsistent with any shift in strategy and that, in any event, they adequately disclosed the changes they instituted prior to the IPO. Defs. Obj. at 25-27. Notably absent from these "disclosures" is Expensify's shift to outbound marketing tactics, including *inter alia* the hiring of 60 SDRs before the IPO. ¶¶88, 91-97. Plaintiff's theory

Page 23 -  **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**

of liability does not hinge on the allegation that Expensify *never* spent money on marketing, but instead that Expensify materially changed marketing in the lead up to the IPO, thereby signaling a shift in strategy away from its historical "bottom up" model. Accordingly, Defendants' reliance on *Hoang v. ContextLogic, Inc.*, No. 21-cv-03930-BLF, 2023 U.S. Dist. LEXIS 228887, at *23-24 (N.D. Cal. Dec. 22, 2023), remains misplaced. Defs. Obj. at 28. In that case, the defendants did not mislead investors when stating they were "focused on growing our user base around the world" because temporarily reducing advertising spend in a limited number of countries was not inconsistent with their public disclosures. *Id.* By comparison, Defendants materially altered the business strategy they touted in the Registration Statement, thereby creating a material contradiction between what was told to investors and what was actually in effect at the time of the IPO. *See* F&R at 19-21.

Defendants' argument suffers from a misconception as to the purpose behind the Securities Act and where this action presently is, procedurally. Investors in IPOs are entitled to receive full disclosure and not just a chance to "connect the dots." *Miller*, 519 F.3d at 887; *Lloyd*, 811 F.3d at 1209 ("The veracity of a statement or omission is measured not by its literal truth, but by its ability to accurately inform rather than mislead prospective buyers." (internal quotations omitted)). Plaintiff's allegations establish for the purposes of the pleadings that Defendants failed to accurately describe the then-existing status of Expensify's "bottom-up" business model and its shift to a "top-down" marketing strategy. Expensify hired 60 sales development representatives, shifted focus to increasing the number of people it could onboard per month, and launched a massive push in advertising. *See* ¶¶92-94. Whereas Expensify had traditionally relied on its "happy customer" model (*i.e.*, "bottom-up" strategy) for marketing its platform, the model had changed by the time of the IPO to a "top-down" strategy that was not disclosed in the Registration

Page 24 -  **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**

Statement. *See* ¶¶88-98. Plaintiff's allegations at this stage are to be accepted as true and, as such, state a claim for relief under the applicable pleading standard. *See* F&R at 20; *see also In re Apple Sec. Litig.*, No. 19-cv-02033-YGR, 2020 U.S. Dist. LEXIS 96953, at \*31-32 (N.D. Cal. June 2, 2020) (denying motion to dismiss where defendants provided investors with "specific factors—such as high upgrade rates—that seem[ed] to require disclosure" of adverse information relating to revenue factors identified); *Azar v. Yelp, Inc.*, No. 18-cv-00400-EMC, 2018 U.S. Dist. LEXIS 200769, at \*39-40 (N.D. Cal. Nov. 27, 2018) (denying motion to dismiss where defendants "chose to tout Yelp's local advertising model as 'fairly proven'" while "omitting any mention of the churn issues that would likely significantly and negatively impact revenue").

Defendants cite *Waswick v. Torrid Holdings, Inc.*, No. 2:22-cv-08375-JLS-AS, 2023 U.S. Dist. LEXIS 232992 (C.D. Cal. Dec. 1, 2023), in an attempt to support their argument on this point. Defs. Obj. at 31. The case is distinguishable though. In *Waswick*, the defendants told investors that they "source[d]" merchandise using a "data-driven approach" which allowed the company to avoid purchasing excess inventory. The court held that, "to adequately allege falsity, Plaintiffs must plead that Torrid, in fact, did not use a data-driven approach—in Plaintiffs' words, that Torrid 'abandoned' such an approach sometime before the IPO." *Waswick*, 2023 U.S. Dist. LEXIS 232992, at \*11. The plaintiffs failed to meet this threshold. The facts they alleged fell short of showing that the defendants did not use a "data-driven approach." The plaintiffs' reliance on statements concerning shipment delays, loss of discipline, and rising inventory did not plausibly establish that defendants "abandoned its data-driven model." *Id.* at \*13. The allegations in *Waswick* are much more general than those in Plaintiff's complaint, which show that Expensify had implemented a change to the company's fundamental business strategy prior to the IPO yet said nothing of it in the Registration Statement. *See* ¶¶88-98.

Page 25 -  **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**

Defendants also still refuse to accept Plaintiff's confidential witness allegations. They raise the same arguments concerning their credibility and reliability that they raised initially in the motion to dismiss. *Compare* Defs. Obj. at 30-31 *with* Defs. Br. at 23-24. Each witness is described adequately to provide a basis for their respective allegations. *See* ¶¶31-32 (CW2), ¶¶33-34 (CW3), ¶¶35-36 (CW4), ¶¶37-38 (CW5), ¶41 (CW7). Further, as the Ninth Circuit recently stated, confidential witnesses do not need to possess "inside knowledge about corporate-level trends" only "knowledge about the specific statements he made." *Forescout*, 63 F.4th at 771 ("[t]hough the CWs, as individuals, might not have known about corporate-level trends, their statements combine to tell a plausible story"). This directly cuts against Defendants' main complaint with Plaintiff's confidential witnesses, *i.e.*, that they were not in positions to "know anything about Expensify's Company-wide growth strategy." Defs. Obj. 30. Magistrate Judge Russo was correct in rejecting the argument, especially in light of the Ninth Circuit's holding in *Forescout*. *See* F&R at 20 n.8 (citing *Forescout*, 63 F.4th at 771).

Magistrate Judge Russo held that Plaintiff's allegations adequately stated a claim for relief under Section 11 of the Securities Act. Defendants disagree but simply saying that a different conclusion should have been reached does not make it so or otherwise give rise to a meritorious objection. Defendants' so-called objection to Magistrate Judge Russo's holding on Plaintiff's Item 101 claim exemplifies the point. Defendants argue that Plaintiff's allegations do not show a change in business strategy (*i.e.*, from "bottom-up" to "top-down") and that even if a change occurred, Expensify adequately disclosed it in the Registration Statement. Defs. Obj. at 31-32. Defendants then distinguish *In re CarLotz, Inc. Securities Litigation*, No. 21-cv-5906 (AS), 2024 U.S. Dist. LEXIS 61722, at *29-30 (S.D.N.Y. Mar. 29, 2024), which Magistrate Judge Russo relied upon, by simply stating that Plaintiff failed to allege a change in strategy. Defs. Obj. at 32 (arguing that

Page 26 -  **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**

the plaintiff in *CarLotz* demonstrated a change in strategy compared to Plaintiff who "offers no allegations suggesting that Expensify abandoned its bottom-up business model . . . .").

This does not make for a meritorious objection. Magistrate Judge Russo already considered the argument as well as the case (*i.e.*, *CarLotz*) and disagreed with Defendants. *See* F&R at 20-21. Like all of Defendants' arguments on the objection, they simply repackage their arguments from the motion to dismiss and ask for a different result. Defendants' objection should be overruled. *See Camardo*, 806 F. Supp. at 382 ("There is no increase in efficiency, and much extra work, when a party attempts to relitigate every argument which it presented to the Magistrate Judge.").

**D.      Defendants Still Have Not Established the Affirmative Defense of Negative Causation.**

True to form, Defendants once again repackage their arguments over "loss causation" from the motion to dismiss. The following excerpts from the motion to dismiss and objection show that Defendants' arguments are nearly identical:

> Plaintiff suggests Expensify's stock price decline was caused by (1) analyst reports downgrading Expensify's stock, primarily based on concerns about Expensify's ability to weather adverse macroeconomic conditions that arose after the IPO, *see* ¶¶ 104, 109-11, 113, 117; (2) new competing products in 2023, ¶ 105; and (3) Expensify post-IPO quarterly earnings announcements and earnings calls that referenced financial losses and decreases in paid membership in the second and third quarters of *2023, not 2021*, ¶¶ 107-108, 115-116.  None of these "corrective disclosures" mentions Expensify's pricing, the October 2020 email, or Expensify's marketing strategy as of the IPO.

Defs. Br. at 31.

Page 27 -   **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**

> Plaintiff points to (1) 2023 analyst reports about Expensify (¶¶ 104, 109-11, 113, 117); (2) a competitor's 2023 new product launch (¶ 105); and (3) Expensify's Q2 and Q3 2023 financial results (¶¶ 107-08, 115-16) as corrective disclosures—but none even mentions Expensify's May 2020 price increase or suggests that Expensify "abandoned" its "bottom-up" business model.

Defs. Obj. at 33.

Magistrate Judge Russo did not agree with Defendants' arguments in the first instance and Defendants have not provided any basis for changing her Honor's F&R. In pertinent part, Magistrate Judge Russo held that "Plaintiff alleges disclosure of the realized risks of the [Registration Statement] failure to properly disclose the purported response to the price increases and change in marketing strategy underway at the time of the IPO. The complaint does not, as a matter of law, establish another case of the loss. Such inquiry is indeed fact intensive necessitating further development of the record beyond the pleading stage." F&R at 23. Thus, in line with the rest of the F&R, Magistrate Judge Russo provided a measured holding that accounted for the appropriate pleading standards and procedural posture of the case.

Defendants attempt to undo Magistrate Judge Russo's holding by focusing myopically on Plaintiff's corrective disclosure allegations while also ignoring the demanding standards that apply to the affirmative defense of negative causation. Importantly, Plaintiff is not obligated to plead loss causation to establish his *prima facie* case. *Herman & Maclean*, 459 U.S. at 382. But even so, Expensify's May 2020 price increase (and, as alleged, Barrett's October 2020 political email) ruined the company's "brand" and "reputation" amongst its "happy customer" base, prompting an exodus of customers and effectively breaking the company's historical "bottom-up" growth model. ¶¶3-4, 102. The damage caused by these events came to light over subsequent quarters as customer contracts expired (and were not renewed), growth slowed, and analysts downgraded the stock

Page 28 -  **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**

before reaching its all-time low of less than $2/share. ¶¶103-19. These allegations more than suffice to defeat Defendants' negative causation defense, given that disclosures "need not 'precisely mirror' the misrepresentation." *Genius Brands*, 97 F.4th at 1184; *Mineworkers' Pension Scheme v. First Solar Inc*., 881 F.3d 750, 753 (9th Cir. 2018) ("plaintiffs need only show a 'casual connection between the [misconduct] and the loss").

Defendants' cases are not to the contrary. In *In re Shoretel, Inc. Securities Litigation*, No. 08-cv-00271-CRB, 2009 U.S. Dist. LEXIS 11151, at *15-16 (N.D. Cal. Feb. 2, 2009), the plaintiffs relied on disclosures that bore no relation to the misstatements or omissions in the registration statement. Similarly, unlike here, the plaintiffs in *Brown*, 2014 U.S. Dist. LEXIS 18809, at *42-43, relied on corrective disclosures that did not mention the alleged accounting misconduct at issue in the case. Plaintiffs' corrective disclosures are materially different than the ones in these cases, given that they concern analyst downgrades arising from and/or concerning the omitted information. *See*, *e.g.*, ¶103 (Morgan Stanley downgrade over "structural headwinds"); ¶113 (J.P. Morgan downgrade in response to Expensify's "word-of-mouth model"); ¶117 (Piper Sandler downgrade following "Ninth straight quarter of eroding growth" and "Internal missteps"). "Accordingly, it is not clear on the face of the pleading that Plaintiff cannot show damages." *Lyft*, 484 F.Supp.3d at 778 (rejecting negative causation defense where reports of safety concerns caused stock price to decline).

Defendants take issue with Magistrate Judge Russo's interpretation of the analyst reports cited by Plaintiff, essentially arguing that her Honor misunderstood them or read them incorrectly. Defs. Obj. at 33-34. But Magistrate Judge Russo was not mistaken. The analyst reports say exactly what Magistrate Judge Russo say they said, which was that Expensify was facing adverse conditions arguably created by the price increase and change in business strategy that occurred

Page 29 -   **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**

prior to the IPO. *See* F&R at 22-23. The analyst reports do not identify or discuss *future* business changes but instead ongoing fallout from *prior* business changes. Plaintiff plausibly identifies these prior business changes as the price increase and changes to the "bottom-up" strategy (as well as the political email). *See* ¶¶103-18 (alleging various analyst reports and company announcements).

Furthermore, while Defendants argue that Magistrate Judge Russo "erred" in rejecting their "negative causation defense" (Defs. Obj. at 35), they failed to carry their burden. The defendant "bears a 'heavy burden'" to establish the defense and must "show 'that the depreciation in value' of a plaintiff's stock 'resulted from factors other than the alleged material misstatement.'" *Hildes*, 734 F.3d at 860. Plaintiff's complaint did not "foreclose the possibility that [D]efendants caused [P]laintiffs' losses." *In re Shoretel Inc.*, No. C 08-00271 CRB, 2009 U.S. Dist. LEXIS 73316, at *11 (N.D. Cal. Aug. 18, 2009) (citing *In re Wash. Mut.*, 259 F.R.D. 490, 507-08 (W.D. Wash. 2009)). While Defendants offer an alternative explanation for the decline in Expensify's stock price involving the COVID-19 pandemic and/or macroeconomic downturns (Defs. Obj. at 20, 34-35), it has no bearing at the pleading stage where "loss causation" is not even an element of the claim alleged. Indeed, even if it were, "[t]he plaintiff need not show 'that a misrepresentation was the *sole* reason' for a price decline, but rather that it was 'one substantial cause.'" *Genius Brands*, 97 F.4th at 1183 (emphasis in original); *see also Fitbit*, 216 F. Supp. 3d at 1033 ("Whether the stock drop was due to other factors is a factual inquiry better suited for determination on summary judgment or trial . . . .").

### E.    Plaintiff Can Pursue Section 15 Control Person Liability.

For the same reason Plaintiff argued on the motion to dismiss, Defendants' objection concerning the Section 15 claim should be overruled. Plaintiff adequately pleaded a primary

violation under Section 11, and therefore has rebutted Defendants' only argument against Section 15 secondary liability. *See*, *e.g.*, *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 555 (N.D. Cal. 2009).

## III.    CONCLUSION

For the foregoing reasons, Defendants' objection to the F&R should be overruled and the matter set for an initial pretrial conference.

Dated: February 4, 2025                    Respectfully Submitted,

**BLACK HELTERLINE LLP**

 */s/ Michael B. Merchant*
Michael B. Merchant, OSB No. 882680
805 S.W. Broadway, Suite 1900
Portland, OR 97205
Tel.: (503) 224-5560
Fax: (503) 224-6148
Email: mike.merchant@bhlaw.com

*Liaison Counsel for Lead Plaintiff and the Class*

**LEVI & KORSINSKY, LLP**
Adam M. Apton (admitted *pro hac vice*)
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Lead Counsel for Lead Plaintiff and the Class*

Page 31 -  **PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO FINDINGS & RECOMMENDATION**