FOSTER GARVEY PC
Eryn Karpinski Hoerster, OSB #106126
121 SW Morrison Street, Eleventh Floor
Portland, Oregon 97204-3141
Telephone: +1.503.228.3939
Facsimile:  +1.503. 226.0259
*eryn.hoerster@foster.com*

LATHAM & WATKINS LLP
Melanie M. Blunschi (*pro hac vice*)
Daniel R. Gherardi (*pro hac vice*)
140 Scott Drive
Menlo Park, California 94025
Telephone:  +1.650.328.4600
Facsimile:  +1.650.463.2600
*melanie.blunschi@lw.com*
*daniel.gherardi@lw.com*

*Attorneys for Defendants Expensify, Inc., David
Barrett, Ryan Schaffer, Blake Bartlett, Robert Lent,
Anu Muralidharan, Jason Mills, Daniel Vidal,
Timothy L. Christen, Ying (Vivian) Liu, and Ellen Pao*

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| CODY WILHITE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> EXPENSIFY, INC., DAVID BARRETT, RYAN SCHAFFER, BLAKE BARTLETT, ROBERT LENT, ANU MURALIDHARAN, JASON MILLS, DANIEL VIDAL, TIMOTHY L. CHRISTEN, YING (VIVIAN) LIU, ELLEN PAO, J.P. MORGAN SECURITIES, LLC, CITIGROUP GLOBAL MARKETS INC., BofA SECURITIES, INC., PIPER SANDLER & CO., JMP SECURITIES LLC, and LOOP CAPITAL MARKETS LLC, <br> Defendants. | Case No. 3:23-cv-01784-JR <br><br> **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE RUSSO'S FINDINGS AND RECOMMENDATION** <br><br><br> <u>ORAL ARGUMENT REQUESTED</u> |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................3

II.     BACKGROUND ..................................................................................................4

        A.      Expensify's Values-Based Activities And Communication ...................................4

        B.      Expensify's IPO and Registration Statement Disclosures .....................................5

        C.      Magistrate Judge Russo's Findings And Recommendation ...................................6

III.    LEGAL STANDARDS .......................................................................................7

        A.      Standard of Review...........................................................................................7

        B.      Section 11 Claim...............................................................................................7

IV.     ARGUMENT.......................................................................................................9

        A.      Expensify Was Not Required To Disclose The Contents of the October
                2020 Email Because It Was Publicly Available .........................................................9

                1.      Judge Russo Correctly Applied Well-Established Law That A
                        Section 11 Claim Cannot Be Based On Omission Of Public
                        Information .........................................................................................10

                2.      Judge Russo Correctly Recognized That Defendants Are Not
                        Raising A Truth-On-The-Market Defense...................................................14

        B.      Plaintiff Does Not Plead Any Customer Fallout From The October 2020
                Email That Expensify Was Required To Disclose ..............................................17

        C.      Plaintiff Does Not Object To Judge Russo's Recommendation To Dismiss
                Plaintiff's Items 105 and 303 Claims...............................................................22

V.      CONCLUSION...................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Barilli v. Sky Solar Holdings, Ltd.*,
389 F. Supp. 3d 232 (S.D.N.Y. 2019)............................................................ 11, 16, 17

*Benak v. All. Cap. Mgmt. L.P.*,
435 F.3d 396 (3d Cir. 2006).......................................................................... 12

*Boston Ret. Sys. v. Uber Techs., Inc.*,
2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) ....................................................... 9, 15

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) ............................................................ 9, 14

*Conn. Ret. Plans & Tr. Funds v. Amgen Inc.*,
660 F.3d 1170 (9th Cir. 2011), *aff'd*, 568 U.S. 455 (2013)....................................... 9

*Curry v. Yelp, Inc.*,
2015 WL 7454137 (N.D. Cal. Nov. 24, 2015) ..................................................... 20

*Dawson v. Marshall*,
561 F.3d 930 (9th Cir. 2009) ....................................................................... 7

*DeBenedictis v. Merrill Lynch & Co., Inc.*,
492 F.3d 209 (3d Cir. 2007)......................................................................... 13

*Garcia v. J2 Glob., Inc.*,
2021 WL 1558331 (C.D. Cal. Mar. 5, 2021)........................................................ 9, 15

*Golubowski v. Robinhood Mkts., Inc.*,
2024 WL 269507 (N.D. Cal. Jan. 24, 2024) ....................................................... 9, 11

*Greenberg v. Sunrun Inc.*,
233 F. Supp. 3d 764 (N.D. Cal. 2017) ............................................................. 11

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
189 F.3d 971 (9th Cir. 1999) ....................................................................... 17

*Hemmer Grp. v. SouthWest Water Co.*,
527 F. App'x 623 (9th Cir. June 7, 2013)........................................................... 8

*Ikeda v. Baidu, Inc.*,
2021 WL 1299046 (N.D. Cal. Apr. 7, 2021) ....................................................... 8

*In re Am. Apparel, Inc. S'holder Litig.*,
    855 F. Supp. 2d 1043 (C.D. Cal. 2012) ................................................................. 12

*In re Atossa Genetics Inc. Sec. Litig.*,
    868 F.3d 784 (9th Cir. 2017) ................................................................................. 13

*In re Daou Sys., Inc.*,
    411 F.3d 1006 (9th Cir. 2005) ................................................................................. 8

*In re Fusion-io, Inc. Sec. Litig.*,
    2015 WL 661869 (N.D. Cal. Feb. 12, 2015) .......................................................... 21

*In re LexinFintech Holdings Ltd. Sec. Litig.*,
    2021 WL 5530949 (D. Or. Nov. 24, 2021).............................................................. 20

*In re Lyft Inc. Sec. Litig.*,
    484 F. Supp. 3d 758 (N.D. Cal. 2020) ............................................................. 13, 19

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) ................................................................. 13

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    272 F. Supp. 2d 243 (S.D.N.Y. 2003)......................................................... 15, 16, 17

*In re Nektar Therapeutics Sec. Litig.*,
    34 F.4th 828 (9th Cir. 2022) ................................................................................. 22

*In re Obalon Therapeutics, Inc.*,
    2019 WL 4729461 (S.D. Cal. Sept. 25, 2019)........................................................ 15

*In re ON24, Inc. Sec. Litig.*,
    2024 WL 979951 (N.D. Cal. Mar. 5, 2024), *appeal filed sub nom. Leadersel*
    *Innotech ESG v. ON24*, No. 24-2204 (9th Cir.)...................................................... 19

*In re Pivotal Sec. Litig.*,
    2020 WL 4193384 (N.D. Cal. July 21, 2020).......................................................... 21

*In re Rigel Pharms., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) ................................................................................... 8

*In re Snap Inc. Sec. Litig.*,
    2018 WL 2972528 (C.D. Cal. June 7, 2018) .......................................................... 14

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) ............................................................................. 8, 11

*In re Talis Biomedical Corp. Sec. Litig.*,
    2022 WL 17551984 (N.D. Cal. Dec. 9, 2022)................................................... 19, 22

*In re Violin Memory Sec. Litig.*,
  2014 WL 5525946 (N.D. Cal. Oct. 31, 2014)................................................................ 13

*Kang v. PayPal Holdings, Inc.*,
  2023 WL 3166159 (N.D. Cal. Apr. 27, 2023) ........................................................... 21

*Kennedy Note, LLC v. Bank of N.Y.*,
  2020 WL 7775167 (D. Or. Dec. 30, 2020) ............................................................... 23

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ............................................................................ 19, 22

*Long Miao v. Fanhua, Inc.*,
  442 F. Supp. 3d 774 (S.D.N.Y. 2020)...................................................................... 20

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011)................................................................................... passim

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015)..................................................................................... 12

*Rubke v. Capitol Bancorp Ltd.*,
  2006 WL 1699569 (N.D. Cal. June 16, 2006) ....................................................... 15, 17

*Rubke v. Capitol Bancorp Ltd.*,
  551 F.3d 1156 (9th Cir. 2009) ......................................................................... passim

*Stadnick v. Vivint Solar, Inc.*,
  861 F.3d 31 (2d Cir. 2017)............................................................................... 11

*Vidor v. Am. Int'l Grp.*,
  2011 WL 2746848 (N.D. Cal. July 13, 2011)........................................................... 13

*Von Saher v. Norton Simon Museum of Art*,
  592 F.3d 954 (9th Cir. 2010) ........................................................................... 16

*Zee v. Green Dot Corp.*,
  2013 WL 12133841 (C.D. Cal. May 2, 2013) .......................................................... 11

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ........................................................................... 21

**STATUTES**

15 U.S.C. § 77k(a) .........................................................................................7

28 U.S.C. § 636(b)(1) .....................................................................................7

Page v – **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

**RULES**

Fed. R. Civ. P. 72(b)(3)..................................................................................................7

**REGULATIONS**

17 C.F.R. § 229.105 ....................................................................................................22

17 C.F.R. § 229.303(b)(2)(ii)........................................................................................23

**GLOSSARY**

| Term | Definition |
|---|---|
| Amended Complaint or AC | Amended Class Action Complaint for Violations of Federal Securities Laws (Dkt. No. 32) |
| ¶ | Refers to the paragraphs of the Amended Complaint |
| CEO | Expensify's Chief Executive Officer, David Barrett |
| CW | Confidential Witness |
| Defendants | Expensify Defendants and Underwriter Defendants |
| Expensify or the Company | Expensify, Inc. |
| Expensify Defendants | Defendants Expensify, Inc., David Barrett, Ryan Schaffer, Blake Bartlett, Robert Lent, Anu Muralidharan, Jason Mills, Daniel Vidal, Timothy Christen, Ying (Vivian) Liu, and Ellen Pao |
| Motion or Mot. | Expensify Defendants' Motion to Dismiss the Amended Complaint (Dkt. No. 53) |
| Ex. or Exhibits | Exhibits attached to the Declaration of Daniel R. Gherardi filed in support of Expensify Defendants' Motion to Dismiss the Amended Complaint (Dkt. Nos. 54-1 through 54-6) |
| F&R | Findings and Recommendation issued by Magistrate Judge Jolie A. Russo (Dkt. No. 62) |
| IPO | Expensify's November 2021 initial public offering |
| Obj. | Plaintiff's Objection to Findings & Recommendation (Dkt. No. 66) |
| Opp. | Plaintiff's Opposition to Defendants' Motion to Dismiss (Dkt. No. 59) |
| Plaintiff | Lead Plaintiff Aleem Kanji |
| Q2 | Second quarter |
| Q3 | Third quarter |
| Q4 | Fourth quarter |
| Registration Statement or RS | Expensify's registration statement on Form S-1 and prospectus on Form 424(b)(4), both as amended and filed with the SEC in October and November 2021 (Dkt. No. 54-4) |
| Reply | Expensify Defendants' Reply in Support of Motion (Dkt. No. 61) |

Page 1 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS
AND RECOMMENDATION**

| Securities Act | Securities Act of 1933, 15 U.S.C. § 77k *et seq.* |
|---|---|
| Underwriter Defendants | Defendants J.P. Morgan Securities LLC, Citigroup Global Markets Inc., BofA Securities, Inc., Piper Sandler & Co., Citizens JMP Securities, LLC, and Loop Capital Markets LLC |

## I.    INTRODUCTION

Judge Russo was correct to recommend dismissal of Plaintiff's claim to the extent that it was based on Expensify's CEO's October 23, 2020 email, urging users to "protect democracy" and support Joe Biden in the 2020 presidential election. Obj. at 1-2, 3. The first and most obvious reason this claim fails is that there was no concealment: as Judge Russo recognized, the email itself and customer responses to it were publicly available and widely reported in the media well before Expensify's November 2021 IPO (Exs. 1-3), and on top of that, the Registration Statement highlights that the CEO sent an "email on October 23, 2020 urging customers to protect democracy," that this email resulted in a "number of complaints," and that "[w]e cannot assure you that this matter will not result in further complaints, regulatory inquiries or future proceedings." Ex. 4 (RS) at 52. Second, Plaintiff's speculative and conclusory allegation that there was some undisclosed "fallout" among Expensify's customers that should have been disclosed cannot stand because the Registration Statement disclosed Expensify's user numbers and revenues—which are not challenged or alleged to be false or misleading in any respect—and that data showed that Expensify was *growing*. *See, e.g.*, *id.* at 10, 78, 80, 86, 90, 96. Plaintiff has pled the opposite of a "fallout" and has not come close to pleading a material omission on this topic.

Plaintiff's Objection raises no basis to reject Judge Russo's F&R with respect to the October 2020 email. Respectfully, this Court should reject Plaintiff's Objection and, for the reasons set forth in Defendants' Motion to Dismiss (Dkt. No. 53) and Defendants' Objections to Magistrate Judge Russo's Findings and Recommendation (Dkt. No. 67), dismiss the Amended Complaint in its entirety.

Page 3 –    **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

## II.    BACKGROUND

### A.    Expensify's Values-Based Activities And Communication

Expensify provides expense-management software to help employees and businesses track and process reimbursements.  ¶¶ 42, 45.  Since its inception in 2009 and as reflected in the Registration Statement, Expensify and its CEO, Mr. Barrett, have openly stated that "businesses cannot . . . sit on the sidelines for the most important social issues of this generation."  Ex. 4 (RS) at 128.  Expensify explained that "consumers are more likely to both use and recommend products from brands they admire" and that "[b]y consistently acting on and vocally promoting our values, [Expensify] ha[s] the ability to both drive positive change and create brand awareness that can add to the virality of our platform."  *Id.*  Expensify even created a non-profit organization in January 2020 to help raise donations for "community-based campaigns" and later launched a campaign to encourage COVID-19 vaccinations.  *Id.* at 129.

Consistent with these well-publicized positions, Mr. Barrett sent an email to Expensify's users in October 2020 in support of Joe Biden's presidential campaign, urging customers to "[p]rotect democracy."  ¶ 64.  Mr. Barrett's email drew widespread attention, including media reporting that "[t]he email has been met with both support and condemnation" (Ex. 1 at 1), and some Expensify users expressed their dissatisfaction on Expensify's public website (*see* Exs. 2-3; ¶¶ 66-68, 70, 72-77, 80-83).  Mr. Barrett also participated in media interviews to talk about the email, saying that "Expensify's email was an extension of the company's work on social issues such as Black Lives Matter and anti-hunger initiatives."  Ex. 1 at 1.  Mr. Barrett noted that "he and his staff had discussed how to get involved in the November 3 election, and a majority of staff voted in favor of sending the email to their customers."  *Id.*

Page 4 –  **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS
       AND RECOMMENDATION**

During the quarter the email was sent (Q4 2020), Expensify's paid membership grew from 633,000 in the previous quarter to 645,000. *See* Ex. 4 (RS) at 86. Expensify estimated that paid membership would increase to between 660,000 and 670,000 in the quarter ended September 30, 2021—the last full quarter before Expensify's IPO in November 2021. *Id.* at 10.

## B.    Expensify's IPO and Registration Statement Disclosures

Expensify went public in November 2021. ¶ 101. In connection with its IPO, Expensify filed a Registration Statement with the SEC providing detailed information to potential investors about Expensify's business, its culture and values, and the risks to its business. ¶ 99; Ex. 4 (RS) at 1-10, 34-37, 52, 109-14, 123-30, 148-49. The Registration Statement emphasized Expensify's belief that "doing good is good for business." *See* Ex. 4 (RS) at 109-10, 129. It also included discussions of Expensify's values-based activities and communications, including its charitable wing, Expensify.org:

- "We believe that consumers are more likely to both use and recommend products from brands they admire. According to a proprietary research study conducted by Havas Group in 2019, 77% of consumers prefer to buy from companies who share their values. ***By consistently acting on and vocally promoting our values, we have the ability to both drive positive change and create brand awareness that can add to the virality of our platform.***" *Id.* at 128.[1]

- "***In these challenging times, we believe that businesses cannot turn a blind eye to the effects of their decisions, or sit on the sidelines for the most important social issues of this generation.*** There can be no sustainable, profitable growth without a market that is fair, inclusive and universal. Defending, improving and expanding this market is a core responsibility of any business that intends to last as long as we do." *Id.* at 8.

- "***We want to play an active role*** in unwinding the systemic bias that has prevented so many from living rich. We believe that even a small team with limited resources, given enough time and focus, can move the world. This is why we started Expensify.org, to 'create a just and generous world', and we are all totally committed to its mission." *Id.* at 125.

- "We started Expensify.org to 'create a just and generous world' ***with the belief that doing good is good for business***. . . . Everyone here knows that we cannot succeed as a business

---

[1] All emphases are added unless otherwise stated.

Page 5 –   **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

without also giving back and making the world a better place than we found it. Though Expensify.org launched in January 2020 and is now a 501(c)(3) non-profit, the concept was set into motion before Expensify was founded when David Barrett, Expensify's founder and CEO, had an idea of how to help feed unhoused neighbors he passed every day walking through San Francisco." *Id.* at 129; *see also id.* at 110 ("[Expensify] is a company that doesn't just generate value for shareholders, but also produces compounding social good for the world at large. We have fully melded our charity model directly into our business model, so each supports and grows the other.").

And Expensify specifically warned investors of the risks of its values-based activities and communications. The Registration Statement disclosed that "***there could be a negative reaction to certain advertising campaigns and values-based activity and communications***." *Id.* at 34.

The Registration Statement also specifically disclosed Mr. Barrett's October 2020 email and the risks associated with it:

> [I]n November 2020, the Federal Election Commission ("FEC") notified us of a number of complaints filed against us in connection with David Barrett's email on October 23, 2020 urging customers to protect democracy. We responded to the complaints in November and December 2020, requesting dismissal of all complaints, and have not received a decision from the FEC on the matter. ***We cannot assure you that this matter will not result in further complaints, regulatory inquiries or future proceedings***.

Ex. 4 (RS) at 52; *see also* ¶ 148.

## C.    Magistrate Judge Russo's Findings And Recommendation

This action was filed following a stock price decline that occurred two years after the IPO. *See* Dkt. No. 1. On May 10, 2024, Plaintiff filed the Amended Complaint alleging Expensify's November 2021 IPO Registration Statement contained materially misleading statements and omissions about Expensify's business. Dkt. No. 32. On July 9, 2024, the Expensify Defendants filed a Motion to Dismiss the Amended Complaint (Dkt. No. 53), which the Underwriter Defendants joined (Dkt. No. 57).

On December 30, 2024, Magistrate Judge Russo issued her F&R recommending that the District Court grant Defendants' Motion in part and deny it in part. F&R at 2. As relevant to

Page 6 –   **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

Plaintiff's Objection, Judge Russo recommended that the District Court grant the Motion to the extent Plaintiff's Securities Act claims rely on the alleged "failure to disclose the contents of an October 2020 political email or the actual repercussions of it" and "the claims asserting liability under SEC regulations S-K, items 105 and 303." *Id.* at 24.

Plaintiff objects to the F&R's recommendation that the District Court dismiss Plaintiff's Section 11 claim based on the allegations regarding Mr. Barrett's October 2020 email. Obj. at 2. Plaintiff does not object to Judge Russo's findings that Plaintiff failed to adequately allege a claim under Items 105 and 303 of Regulation S-K and her recommendation to dismiss those claims. *See generally id.* Plaintiff also does not object to the portions of the F&R granting Defendants' unopposed request for judicial notice and considering the judicially noticed Exhibits. *Id.*

## III.    LEGAL STANDARDS

### A.    Standard of Review

This Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Where a party objects to the magistrate judge's findings and recommendations, this Court must review those findings and recommendation de novo, meaning that "the reviewing court 'do[es] not defer to the [magistrate judge's] ruling but freely consider[s] the matter anew, as if no decision had been rendered below.'" *Dawson v. Marshall*, 561 F.3d 930, 933 (9th Cir. 2009).

### B.    Section 11 Claim

To state a claim under Section 11 of the Securities Act, a plaintiff must adequately allege that the Registration Statement either "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). While claims under Section 11 involve strict liability, meaning

Page 7 –   **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS**
            **AND RECOMMENDATION**

that Plaintiff is not required to plead Defendants' fraudulent intent, *Hemmer Grp. v. SouthWest Water Co.*, 527 F. App'x 623, 625-26 (9th Cir. June 7, 2013), Plaintiff must adequately plead both that the Registration Statement contained a misstatement or omission and that the misstatement was material to survive dismissal. *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005).

Section 11 does not require companies to disclose every detail about their business, "even if investors would consider the omitted information significant." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 (9th Cir. 2012). Rather, an omitted fact is material only if "a reasonable investor would have viewed the nondisclosed information as having significantly altered the 'total mix' of the information made available." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). And the "total mix" of information available includes the "full text of the [Registration Statement], including portions which were not mentioned in the complaint," *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996), as well as information that was publicly available, *see Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1162-63 (9th Cir. 2009).[2]

Section 11 does not require companies to disclose publicly available information. *Id.* (holding it is "pointless and costly to compel firms to reprint information already in the public domain"); *Ikeda v. Baidu, Inc.*, 2021 WL 1299046, at *10 (N.D. Cal. Apr. 7, 2021) ("As the Ninth Circuit and other courts have held, the securities laws do not require the disclosure of publicly available information."). This is because restating information that is already public in a registration statement would not "significantly alter[] the 'total mix' of the information made

---

[2] The Court may also consider documents that are subject to judicial notice and/or incorporated by reference into the complaint on a motion to dismiss. F&R at 9-10. Judge Russo appropriately granted Expensify Defendants' Request for Judicial Notice, Dkt. No. 55, which Plaintiff did not oppose. *Id.* Plaintiff does not object to the portions of the F&R granting Expensify Defendants' Request for Judicial Notice or the portions where Judge Russo considered the judicially noticed Exhibits.

Page 8 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

available" to a reasonable investor. *Matrixx*, 563 U.S. at 44. As such, courts routinely dismiss Section 11 claims where the allegedly omitted information was publicly available. *See, e.g.*, *Golubowski v. Robinhood Mkts., Inc.*, 2024 WL 269507, at \*15 (N.D. Cal. Jan. 24, 2024) (dismissing Section 11 claim because allegedly undisclosed event was publicly reported); *see infra* § IV.A.1.

The Court can consider what information was publicly available when assessing whether a plaintiff has adequately pled a material omission; this is *not* the same as a "truth-on-the-market" affirmative defense, which does not apply to Section 11 claims and has no relevance here. Under Section 11, the relevant question is whether a company has a duty to disclose publicly available information so as to render a statement in the company's registration statement not misleading— a question courts readily resolve on a motion to dismiss. *See, e.g.*, *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1066 n.6 (N.D. Cal. 2012); *Garcia v. J2 Glob., Inc.*, 2021 WL 1558331, at \*17 n.4 (C.D. Cal. Mar. 5, 2021). On the other hand, the "truth-on-the-market" defense involves the argument that the "truth" of defendants' fraud was known by the market so an alleged misstatement did not impact a company's stock price at the time it was made. *See Conn. Ret. Plans & Tr. Funds v. Amgen Inc.*, 660 F.3d 1170, 1174 (9th Cir. 2011), *aff'd*, 568 U.S. 455 (2013). Because the stock price is set privately for public offerings, the "truth-on-the-market" defense does not apply to Section 11 claims, *Boston Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at \*6 (N.D. Cal. Aug. 7, 2020), and, contrary to Plaintiff's suggestions (Obj. at 4-5), Defendants did *not* raise it in the Motion to Dismiss and Judge Russo did not rely on it (F&R at 19 n.7).

## IV.    ARGUMENT

### A.    Expensify Was Not Required To Disclose The Contents of the October 2020 Email Because It Was Publicly Available

Page 9 –    **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

Plaintiff cannot dispute that the Registration Statement disclosed Mr. Barrett's October 2020 email, highlighting that it encouraged readers to protect democracy and that it resulted in complaints. *See* Ex. 4 (RS) at 52; ¶ 148. Instead, he argues that it was a material omission for Expensify not to reprint the full text of the email and detail the range of customer responses it received in the Registration Statement. But the email and customer reactions to it were publicly available to investors at the time of the IPO, and Expensify was, therefore, not required to disclose them in the Registration Statement. It is well-settled that a company is not required to "reprint information already in the public domain." *Rubke*, 551 F.3d at 1163. Judge Russo correctly recommended granting Defendants' unopposed request for judicial notice of a news article discussing the details of Mr. Barrett's email (Ex. 1) and the public customer complaints about the email that Plaintiff copies into the Amended Complaint without citing to the source (Exs. 2-3; ¶¶ 64, 66-83). Judge Russo then correctly recommended granting the Motion as it relates to the October 2020 email based, in part, on her consideration of this public information and her conclusion that "[d]etails of the email were publicly available," so Expensify did not have to re-disclose that public information. F&R at 18-19.

Plaintiff argues that Judge Russo erred in her findings because (1) the public "availability of information is ordinarily not a defense to a Section 11 claim at the motion to dismiss stage" (Obj. at 3) and "Plaintiff did not know about Barrett's email when investing" (*id.* at 2); and (2) "just one news article" is "insufficient to establish as a matter of law that the[] non-disclosure of the email in the Registration Statement was immaterial" (*id.*). Plaintiff's Objection mischaracterizes Judge Russo's findings and ignores well-settled law. It should be rejected.

1.    **Judge Russo Correctly Applied Well-Established Law That A Section 11 Claim Cannot Be Based On Omission Of Public Information**

Page 10 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

Plaintiff is wrong to characterize Judge Russo's recommendation that his allegations related to the October 2020 email should be dismissed as "contrary to binding case law." Obj. at 2; *see also id.* at 4-5. The Ninth Circuit and courts across the country have held that publicly available information cannot be the basis of a material omission to support a Section 11 claim at the pleading stage. *See Rubke*, 551 F.3d at 1162-63 (affirming dismissal of Section 11 claim because allegedly omitted fact was publicly available); *Golubowski*, 2024 WL 269507, at *15 (citing media reports and dismissing Section 11 claim because a reasonable investor would have been aware of an allegedly undisclosed but publicized event); *Zee v. Green Dot Corp.*, 2013 WL 12133841, at *9 n.11 (C.D. Cal. May 2, 2013) (dismissing Section 11 claim including because an "issuer is not obligated to disclose public information in its registration statement"); *Greenberg v. Sunrun Inc.*, 233 F. Supp. 3d 764, 772-73 (N.D. Cal. 2017) (dismissing Section 11 claim because "investors had publicly available information to assess [a] risk" disclosed in the registration statement); *see also Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 254-55 (S.D.N.Y. 2019) (dismissing Section 11 claim because Defendants "ha[ve] no duty to disclose information that is within the public domain through publication in the news media"); *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 38 (2d Cir. 2017) (affirming dismissal of Section 11 claim and holding that the "materiality of an omission must be assessed in light of the total mix of information in the public domain"). This is because Plaintiff must plead that an alleged omission is material, *i.e.*, that "a reasonable investor would have viewed the nondisclosed information as having significantly altered the ***total mix of the information made available***." *Matrixx*, 563 U.S. at 44. The "total mix of the information" includes the full context of the Registration Statement, *see Stac*, 89 F.3d at 1405 n.4, and any information that was public at the time of the Registration Statement, *see Rubke*, 551 F.3d at 1163.

Page 11 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

Plaintiff is also wrong to argue that the public availability of the October 2020 email and customer reactions to it is an affirmative defense for which Defendants have the burden of proof. *See* Obj. at 3-4 ("[D]efendants [did] not [meet] their heavy burden of demonstrating [their defense] is appropriate on these facts."). To be clear, *Plaintiff* had the burden to adequately plead that the allegedly omitted contents of the October 2020 email and customer reactions "significantly altered the total mix of the information made available." *Matrixx*, 563 U.S. at 44. Plaintiff did not oppose Defendants' request for judicial notice (*see* Opp. at 14-15; Reply at 7) and does not object to Judge Russo's judicial notice of the Exhibits. Because the October 2020 email and customer reactions were publicly available for over a year before the IPO, Judge Russo correctly found that not recopying them in the Registration Statement did not "significantly alter[] the total mix of information made available." F&R at 11, 18-19; *see In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1062 (C.D. Cal. 2012) ("Taking judicial notice of news reports and press releases is appropriate [to] show that the market was aware of the information contained in news articles.").

Plaintiff complains that he personally "did not know about Barrett's email when investing." Obj. at 2; *id.* at 5-6 ("Plaintiff did not possess or know about Barrett's political email . . . ."). But that is irrelevant. The question is whether "a **reasonable investor** would have viewed the nondisclosed information as having significantly altered the 'total mix' of the information made available" to all investors. *See Matrixx*, 563 U.S. at 44; *Benak v. All. Cap. Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006) (affirming judicial notice of news articles and explaining that "[w]hether appellants read the articles or were aware of them is immaterial") (cited in F&R at 11); *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186-87 (2015) (for an omission-based Section 11 claim, "whether a statement is 'misleading' depends on the perspective of a reasonable investor: The inquiry (like the one into materiality) is objective.").

Page 12 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

And of course, Mr. Barrett's October 2020 email was discussed in the Registration Statement, which reasonable investors (and Plaintiff) are assumed to have read before investing.  *See* Ex. 4 (RS) at 52; *Vidor v. Am. Int'l Grp.*, 2011 WL 2746848, at \*3 (N.D. Cal. July 13, 2011) ("[K]nowledge of information contained in a prospectus or an equivalent document authorized by statute or regulation, should be imputed to investors who fail to read such documents."); *see also DeBenedictis v. Merrill Lynch & Co., Inc.*, 492 F.3d 209, 216 (3d Cir. 2007) ("[I]nvestors are presumed to have read prospectuses, quarterly reports, and other information related to their investments.").

Plaintiff also claims that "deciding at the pleading stage that the misleading statements were immaterial as a matter of law . . . was error" because materiality is a "mixed question of law and fact."  Obj. at 4.  But Plaintiff ignores the many courts that routinely dismiss Section 11 claims on materiality grounds.  *See, e.g.*, *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 794 (9th Cir. 2017) ("Where a complaint contains only conclusory allegations of law and unwarranted inferences, dismissal of the complaint on materiality grounds is appropriate."); *In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at \*16-17 (N.D. Cal. Oct. 31, 2014) (dismissing Section 11 claim where plaintiff alleged no facts suggesting disclosure of specific number of orders "would have materially altered the 'total mix' of information available"); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1260-61 (N.D. Cal. 2000) (dismissing Section 11 claim because alleged misstatements "could not have been material" given context of registration statement); *In re Lyft Inc. Sec. Litig.*, 484 F. Supp. 3d 758, 772 (N.D. Cal. 2020) (dismissing Section 11 claim "for failure to plead material falsity" where company disclosed what plaintiff claimed was omitted).  Plaintiff cannot plead that omission of the full text of the October 2020 email from the Registration Statement was material because including the email and customer reactions would

Page 13 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

not have "significantly altered the total mix of information available" in the public domain to investors. *Matrixx*, 563 U.S. at 44; *see* Mot. at 17-19; Reply at 17-20.

### 2. Judge Russo Correctly Recognized That Defendants Are Not Raising A Truth-On-The-Market Defense

Plaintiff's argument that "just one news article" is "insufficient to establish as a matter of law that the[] non-disclosure of the email in the Registration Statement was immaterial" also misses the mark. Obj. at 2. This is a red herring that depends on Plaintiff's mischaracterization of Defendants' arguments as a "truth-on-the-market" defense, which would require a showing "that the [truth] was transmitted to the public with a degree of intensity and credibility sufficient to effectively counterbalance any misleading impression created by the alleged false or misleading statements." *In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at *7 (C.D. Cal. June 7, 2018). But Defendants never raised a "truth-on-the-market" defense (*see* Reply at 17-20), and Judge Russo did not base her recommendation on a truth-on-the-market defense. F&R at 19 n.7 ("Defendants are not asserting such a defense; they assert only that the publicly available information negates the materiality of the purported omission.").

Because Defendants have not raised the "truth-on-the-market" defense, Plaintiff's objection that the defense is not available on a motion to dismiss is inapposite. *See* Obj. at 3-5. Plaintiff appears to be confusing the "truth-on-the-market" defense with the well-settled law that Plaintiff cannot plead a material omission when the allegedly omitted information was publicly available. *See Juniper*, 880 F. Supp. 2d at 1066 n.6 ("Plaintiffs' 'truth-on-the-market' arguments, however, are inapposite. Defendants argue that they disclosed all required information, not that they failed to make required disclosures but should be excused because other sources have already made the same information available."). The "truth-on-the-market" defense concerns whether a stock price already incorporated publicly known facts about the alleged fraud. *See supra* § III.B.

Page 14 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

But Defendants' argument—with which Judge Russo agreed (*see* F&R at 18-19)—is that the Registration Statement was not misleading because the allegedly omitted information (*i.e.*, the contents of the October 2020 email and the customer complaints) was publicly available. *See* Mot. at 17-20. That is not a "truth-on-the-market" defense. *See In re Obalon Therapeutics, Inc.*, 2019 WL 4729461, at *6 (S.D. Cal. Sept. 25, 2019) ("Defendants *are not* contending they failed to make required disclosures but should be excused because other sources have already made the same information available. As such, [Defendants] are not raising an inappropriate 'truth-on-the-market' defense.'") (emphasis in original); *J2 Glob.*, 2021 WL 1558331, at *17 n.4 (holding argument that defendant need not disclose public information was not truth-on-the-market defense). And in any event, as the case Plaintiff relies on points out, the "truth-on-the-market" defense is not applicable to Section 11 claims because the stock price is set privately. *See Uber*, 2020 WL 4569846, at *6 (cited in Obj. at 4-5).

Plaintiff takes issue with two cases cited in Judge Russo's F&R. *See* Obj. at 5-6. But these cases do not involve the "truth-on-the-market" defense. Instead, they simply embrace the well-settled principle that omission of public information cannot support a Section 11 claim. First, the court in *Rubke v. Capitol Bancorp Ltd.*, 2006 WL 1699569 (N.D. Cal. June 16, 2006) (cited in F&R at 18-19), dismissed a Section 11 claim based on failure to disclose fairness opinions because "the opinions were within the public market." *Id.* at *12. The *Rubke* court cited *In re Merrill Lynch & Co. Research Reports Securities Litigation*, 272 F. Supp. 2d 243 (S.D.N.Y. 2003), which also dismissed a Section 11 claim because the information allegedly omitted from the registration statement was publicly available. *Id.* at 249-50. Plaintiff tries to distinguish the facts in *Merrill Lynch* on the basis that there, "the plaintiff's own complaint demonstrated that the alleged omitted information was publicly available from a 'variety of public sources.'" Obj. at 5 (quoting *Merrill*

Page 15 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

*Lynch*, 272 F. Supp. 2d at 249).  But the same is true here—Plaintiff's Amended Complaint quotes the October 2020 email (¶ 64) and copies customer complaints from Expensify's public website that had been publicly available long before the IPO (¶¶ 66-83).

*Second*, the court in *Barilli* (cited in F&R at 19), dismissed a Section 11 claim based on defendants' failure to "convey accurate information about the state of the Japanese solar market" because "information regarding the conditions and regulatory actions Plaintiffs allege were not disclosed was publicly available at the time the Prospectus was filed."  389 F. Supp. 3d. at 254. Again, Plaintiff tries to distinguish *Barilli* because the "'general state of the Japanese solar market' was discussed in 'several articles cited by Plaintiffs.'"  Obj. at 5 (quoting *Barilli*, 389 F. Supp. 3d at 255).  But the fact that Plaintiff chose not to cite the public articles discussing the October 2020 email in the Amended Complaint does not mean the Court must ignore reality, including the exemplar article that Plaintiff has conceded is judicially noticeable.   The news article and Expensify's public website, both of which were judicially noticed (Exs. 1-3), demonstrate that the October 2020 email and customer reactions were public information.  *See Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 960 (9th Cir. 2010) (taking judicial notice of newspapers and magazines because "Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time'") (citation omitted).

In seeking to avoid the application of well-settled case law, Plaintiff mischaracterizes these cases as improperly considering the "truth-on-the-market" defense.  Obj. at 5 (stating that *Rubke* "applies the defense anyway based on an out-of-district decision from years earlier"); *id.* (describing *Barilli* as "acknowledg[ing] that the defense should be applied narrowly and only under certain circumstances").  But these cases do not even mention the truth-on-the-market defense.  Each, consistent with Ninth Circuit precedent, holds only that omission of public

Page 16 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

information cannot form the basis of a Section 11 claim because companies "ha[ve] no duty to disclose information that is within the public domain through publication in the news media." *Barilli*, 389 F. Supp. 3d at 254-55; *Merrill Lynch*, 272 F. Supp. 2d at 249 (same); *Rubke*, 2006 WL 1699569, at *12 (same); *see also supra* § III.B.

*Finally*, that Defendants submitted just one exemplar article discussing the October 2020 email (Obj. at 2, 6) is no basis to reject Judge Russo's F&R.  Judge Russo properly took judicial notice of the article (Ex. 1) and customer reactions (Exs. 2-3) to "indicate what was in the public realm at the time."  *Von Saher*, 592 F.3d at 960; *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) ("We take judicial notice that the market was aware of the information contained in news articles submitted by the defendants.").   Judge Russo then appropriately considered the judicially noticed Exhibits to find that the October 2020 email and customer reactions were publicly available information that cannot be the basis of a Section 11 omission claim.  *See Rubke*, 551 F.3d at 1162-63.

### B.      Plaintiff Does Not Plead Any Customer Fallout From The October 2020 Email That Expensify Was Required To Disclose

Plaintiff claims that the Registration Statement was false or misleading because it failed to disclose the "immense fallout Expensify suffered" in the form of supposed reputational harm and customer loss as a result of the October 2020 email.  Obj. at 6; ¶¶ 65, 84, 128, 130.  But as Judge Russo correctly determined (*see* F&R at 18-19), Plaintiff does not allege any facts demonstrating an "immense fallout"—or any "fallout" for that matter.  Plaintiff's Objection does not support rejecting Judge Russo's findings.

*First*, Expensify's Registration Statement disclosed the October 2020 email itself (Ex. 4 (RS) at 52) and the importance and risks of such "values-based activities and communications" (*id.* at 34, 128).  The Registration Statement also disclosed that a "number of complaints [were]

Page 17 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

filed" related to the email and warned that "[w]e cannot assure you that this matter will not result in further complaints, regulatory inquiries or future proceedings." *Id.* at 52. In addition, the fact that some customers may have been upset by the email was publicly known before the IPO: purported customers posted their opinions about the email on Expensify's public website (*see* Exs. 2-3; ¶¶ 66-83), and the media reported that "[t]he email has been met with both support and condemnation" (Ex. 1 at 1). Because the October 2020 email and reactions to it were publicly available information, Expensify was not required to disclose such information. *See supra* § IV.A.

*Second*, Plaintiff does not adequately allege facts supporting the existence of any customer fallout due to the October 2020 email at the time of the IPO. In fact, as Judge Russo appropriately noted, "following the October 2020 email paid users actually ***increased***" during the quarter in which it was sent. F&R at 18; Ex. 4 (RS) at 19. Expensify also disclosed in the Registration Statement that it expected a continued increase in users at the time of the IPO. *See* Ex. 4 (RS) at 10. This membership growth trajectory after the October 2020 email is irreconcilable with Plaintiff's theory of a material loss of customers because of the email.

Plaintiff argues that the email's negative effects on customer retention were "delayed" (¶¶ 55, 79) because "[p]aid members at that point in time were locked into non-cancelable contracts." Obj. at 6-7. But that argument directly contradicts Plaintiff's repeated allegation that "[t]he fallout from Barrett's political email was ***immediate***." ¶ 3; *see also* Obj. at 3 ("The email hit Expensify's 'reputation' and 'brand' immediately[.]"); Opp. at 5. Plaintiff cannot have it both ways. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"); *In re ON24, Inc. Sec. Litig.*, 2024 WL 979951, at *6 (N.D. Cal. Mar. 5, 2024) (dismissing Section 11 claim where complaint was "'internally inconsistent' and itself

Page 18 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

undermine[d] plaintiff's theory of the case, rendering it implausible"), *appeal filed sub nom. Leadersel Innotech ESG v. ON24*, No. 24-2204 (9th Cir.).  Moreover, Plaintiff's allegation of a "delayed" customer fallout is irreconcilable with the fact that the number of paid users not only increased at the time of the October 2020 email, but was still increasing a year later at the time of the IPO.  F&R at 18; Ex 4 (RS) at 19, 86; *see In re Talis Biomedical Corp. Sec. Litig.*, 2022 WL 17551984, at *12 (N.D. Cal. Dec. 9, 2022) (holding that to state a Section 11 claim "plaintiffs must show that the challenged statement was false at the time of the offering").

Plaintiff next claims that "the *numerical* increase in paid members between [Q3 2020] and [Q2 2021] does not outweigh the reality that Expensify's revenue growth slowed dramatically beginning in [Q2 2021] and continued throughout the IPO."  Obj. at 7 (emphasis in original) (citing ¶ 110).  But Plaintiff's own allegations show that Expensify's revenue growth rates ***increased*** from 17% during the quarter in which the October 2020 email was sent to 36% in the next quarter, and kept increasing to 88% in the quarter after that.  ¶ 110.  And in any event, the Registration Statement disclosed Expensify's revenues and any changes in revenue for the quarters between the October 2020 email and the IPO.  *See, e.g.*, Ex. 4 (RS) at 96-97 (discussing Expensify's "[q]uarterly revenue trends"); *see also id.* at 10, 87, 90-91, 93.  Plaintiff cannot base his Section 11 claim on allegations that Expensify concealed slowing revenue growth rates after the October 2020 email because Expensify disclosed the changes in revenue growth.  *See Lyft*, 484 F. Supp. 3d at 772 (dismissing Section 11 claim because defendant "disclosed precisely the issue Plaintiff claim was obscured").

*Third*, Judge Russo correctly found that the anonymous online complaints from purported Expensify customers do not plead that Expensify had experienced material harm to its reputation or customer base by the time of the IPO.  F&R at 18; ¶¶ 66-83.  Judge Russo noted that "[c]ourts

Page 19 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

typically reject the argument that 'customer complaints alleging circumstances that are contrary to defendant's representations independently suffice to establish the falsity of those representations'" and did not give weight to Plaintiff's allegations based on online complaints. F&R at 18 (quoting *Curry v. Yelp, Inc.*, 2015 WL 7454137, at *7 (N.D. Cal. Nov. 24, 2015)); *see also In re LexinFintech Holdings Ltd. Sec. Litig.*, 2021 WL 5530949, at *8 (D. Or. Nov. 24, 2021) (same); *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 800 (S.D.N.Y. 2020) ("[C]ourts have tended not to credit uncorroborated statements of CWs who are sourced secondhand—with whom plaintiffs' counsel have not themselves interacted.").

Even if Judge Russo had considered Plaintiff's anonymous online complaint allegations, they do not support a finding of a material customer fallout from the October 2020 email. Plaintiff cites fourteen purported customer complaints without providing any allegation to support that fourteen is meaningful in light of Expensify's hundreds of thousands of paid users and millions of dollars in revenue. *See, e.g.*, Ex. 4 (RS) at 86 (paid member numbers); *id.* at 90-91 (revenue); *see LexinFintech*, 2021 WL 5530949, at *8 ("[E]ven if the Court were to credit the anonymous complaints, they are insufficient because they are purely anecdotal and come from only four people out of millions of borrowers."). Further, Plaintiff does not allege that any of the customers who complained actually cancelled their Expensify contracts either "immediately" (Obj. at 3) or at a later time because they "were unable to do so immediately" (*id.* at 7).

*Fourth*, Judge Russo properly disregarded allegations from Plaintiff's CWs. F&R at 18. Plaintiff alleges that CW1, CW4, CW5, and CW6 "detail the customer fallout caused by the email." Obj. 6 (citing ¶¶ 69, 71, 78-79). But for CW allegations to be reliable, the CWs "must be described with sufficient particularity to establish their reliability and personal knowledge," and their allegations must support the challenged statements' falsity. *Zucco Partners, LLC v. Digimarc*

Page 20 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

*Corp.*, 552 F.3d 981, 995 (9th Cir. 2009). Plaintiff's CW allegations do not meet this standard.

They do not support that any statements in the Registration Statement, particularly those about the

October 2020 email, were false or misleading at the time of the IPO.

- CW1: CW1 was a "sales manager and channel partner manager" who managed relationships with some of Expensify's accounting firm partners. ¶ 29. CW1 claims that the email "offended many customers," estimating that it "offended about 5 million of the 10 million recipients" (¶ 71), but CW1 does not allege that any customer cancelled their contract. *In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at *19 (N.D. Cal. Feb. 12, 2015) (rejecting vague and general CW allegations, noting that the court "must evaluate [CWs'] account based on, inter alia, 'the level of detail provided by the confidential sources'" (quoting *Zucco*, 552 F.3d at 995)). *Plaintiff* claims that accounting firms cancelled their Expensify contracts because of the email. Obj. at 1. But nowhere does *CW1*, the only CW that allegedly interacted with any accounting firm (*see* ¶ 30), allege that any accounting firm left Expensify because of the October 2020 email.

- CW4: CW4 "worked as the events marketing and operations project lead, organizing conferences and advertising campaigns." ¶¶ 35-36. CW4 is not alleged to have interacted with customers or accounting firms, but claims nevertheless that "Expensify's accounting partners found Barrett's political email especially offensive" and "that the impact of Barrett's email dragged on for years." ¶ 69. Plaintiff fails to explain how CW4 would be in a position to have personal knowledge of Expensify customers' or partners' reactions to the October 2020 email. *See In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *13 (N.D. Cal. July 21, 2020) ("When confidential witnesses report only unreliable hearsay or allege conclusory assertions, these allegations are insufficient.").

- CW5: CW5 "worked as the head of sales and sales enablement," including working on "partnerships with Oracle and NetSuite." ¶¶ 37-38. All that CW5 alleges is that "managing the angry aftermath of the email was a real headache." ¶ 78. CW5 is not alleged to have any "personal knowledge" of any purported customer loss caused by the email. *Zucco*, 552 F.3d at 995; *see Kang v. PayPal Holdings, Inc.*, 2023 WL 3166159, at *3 (N.D. Cal. Apr. 27, 2023) (rejecting CW allegations about "unsubstantiated and vague customer complaints").

- CW6: CW6 was a "customer success manager" and "spearheaded an 'Unhappy Customers' project." ¶ 40. Plaintiff alleges that "CW6 echoed CW4 and CW1 stating, Barrett's email hurt the business" and "said [Expensify] lost quite a bit of customers, in the small and midmarket group, because of it." ¶ 71. But CW6's allegations are "conclusory," "vague or silent as to time period," and do not "show[] that the challenged statements were false or misleading at the time of the IPO." *Talis*, 2022 WL 17551984, at *12; *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 837 (9th Cir. 2022).

Page 21 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS
AND RECOMMENDATION**

All that Plaintiff's online customer complaints and CWs plead is that some purported Expensify customers were "offended" or "outraged" by Mr. Barrett's email. *E.g.*, ¶¶ 53, 71, 78. But Plaintiff asks the Court to infer from a handful of anonymous complaints about the email that "tens of thousands of customers [] cancel[led] their contracts" (Obj. at 3), all in the face of the increasing paid user and revenue figures as reported in the Registration Statement (*see, e.g.*, Ex. 4 (RS) at 86, 91). Judge Russo correctly rejected these "unwarranted deductions of fact" and "unreasonable inferences," and this Court should do the same. *Khoja*, 899 F.3d at 1008.

*Fifth*, Plaintiff's claim that Judge Russo did not apply the pleading standard correctly is wrong. Obj. at 7. Plaintiff suggests that "Section 11 allegations at the motion to dismiss stage must be accepted as true" and that "Judge Russo did not adhere to these principles." *Id.* Plaintiff conveniently ignores that courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Khoja*, 899 F.3d at 1008. Plaintiff has not pled any "factual matter" or brought "well-pleaded" allegations (Obj. at 7) that Mr. Barrett's October 2020 email caused an "immediate and severe" customer fallout (¶ 3) and that Expensify lost "tens of thousands of customers" (Obj. at 3) before the IPO. Further, Plaintiff's inconsistent allegations that the customer fallout was "immediate" (¶ 3) but also "delayed" (¶ 79) and his vague and unreliable anonymous online complaints and CW allegations cannot support Plaintiff's claims. Judge Russo properly applied the standard for reviewing Plaintiff's pleadings on a motion to dismiss and correctly found that "the complaint fails to allege [Expensify] made a misstatement in the [Registration Statement]." F&R at 18.

### C. Plaintiff Does Not Object To Judge Russo's Recommendation To Dismiss Plaintiff's Items 105 and 303 Claims

Judge Russo correctly found that Plaintiff failed to plead claims under Items 105 and 303 of Regulation S-K and appropriately recommended dismissal of those claims. F&R at 21. Plaintiff

Page 22 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

makes no mention of these claims in his Objection, and indeed, he expressly limits his Objection to Judge Russo's recommendation to grant "Defendants' motion concerning [Mr.] Barrett's political email," asserting that the "remainder of the F&R should be accepted and adopted." Obj. at 1-2. The Court should therefore dismiss Plaintiff's claims under Items 105 and 303. *See Kennedy Note, LLC v. Bank of N.Y.*, 2020 WL 7775167, at *1 (D. Or. Dec. 30, 2020) (courts need not review portions of a F&R "to which no objections are addressed").

As Plaintiff acknowledges by not objecting to these portions of Judge Russo's F&R, his Items 105 and 303 claims are not adequately pled. Item 105 requires companies to disclose "the material factors that make an investment in the registrant or offering speculative or risky." 17 C.F.R. § 229.105. Judge Russo properly found that the Registration Statement contained robust risk disclosures. F&R at 21. Indeed, the Registration Statement includes dozens of pages of risk disclosures about Expensify's business, including specific warnings about the potential for adverse impacts from the October 2020 email and similar values-based communication. *See* Ex. 4 (RS) at 21-65; 84-85. Plaintiff cannot state a claim for failure to warn of the risks involved in investing in Expensify's IPO in the face of these risk disclosures.

Item 303 requires disclosure of "any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303(b)(2)(ii). Judge Russo appropriately found that "Plaintiff does not plausibly allege a trend." F&R at 21. Plaintiff alleges in the Amended Complaint that Expensify experienced an immediate "fallout" after the October 2020 email in the form of customer loss (*e.g.*, ¶¶ 3, 65, 71), but Plaintiff cannot establish a "trend" of customer loss in the face of *increasing* user numbers in the quarter in which the email was sent, and indeed again during the period leading up to the IPO. Moreover, Plaintiff makes no effort to

Page 23 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

allege any fact suggesting any such fallout was "known" or "reasonably likely to have a material . . . impact on net sales or revenues."  17 C.F.R. § 229.303(b)(2)(ii).

## V.    CONCLUSION

Defendants respectfully request that this Court adopt the Findings and Recommendation to dismiss Plaintiff's Section 11 claim based on allegations related to the October 2020 election email and Plaintiff's claims under Items 105 and 303 of Regulation S-K.

Feburary 4, 2025

FOSTER GARVEY PC

By: */s/ Eryn Karpinski Hoerster*
Eryn Karpinski Hoerster, OSB #106126
121 SW Morrison Street, Eleventh Floor
Portland, Oregon 97204-3141
Telephone: +1.503.228.3939
Facsimile:  +1.503. 226.0259
eryn.hoerster@foster.com

LATHAM & WATKINS LLP
Melanie M. Blunschi (*pro hac vice*)
Daniel R. Gherardi (*pro hac vice*)
140 Scott Drive
Menlo Park, California 94025
Telephone:  +1.650.328.4600
Facsimile:  +1.650.463.2600
matt.rawlinson@lw.com
melanie.blunschi@lw.com
daniel.gherardi@lw.com

*Attorneys for Expensify Defendants*

February 4, 2025

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Damon C. Elder*
Damon C. Elder, OSB No. 085313
MORGAN, LEWIS & BOCKIUS LLP
1301 Second Avenue, Suite 3000
Seattle, WA 98101-3808
Telephone:  +1.206.274.6400
Facsimile:  +1.206.274.6401
damon.elder@morganlewis.com

Charlene S. Shimada (*pro hac vice*)
Kevin M. Papay (*pro hac vice*)
Robert H. O'Leary (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone:  +1.415.442.1000
Facsimile:  +1.415.442.1001
charlene.shimada@morganlewis.com
kevin.papay@morganlewis.com
bob.oleary@morganlewis.com

*Attorneys for Underwriter Defendants*

Page 25 – **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO FINDINGS AND RECOMMENDATION**

**CERTIFICATE OF COMPLIANCE**

Defendants' Response to Plaintiff's Objection to Findings and Recommendation complies with the applicable word-count limitation under LR 7-2(b) because it is under 35 pages, excluding the caption, table of contents, table of cases and authorities, motion, signature block, exhibits, and any certificates of counsel.

*/s/ Eryn Karpinski Hoerster*
Eryn Karpinski Hoerster, OSB #106126